Alex R. Straus (SBN 321366)
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
T: 917-471-1894
alex@gregcolemanlaw.com

*Attorneys for Plaintiff*

*[Names and addresses of additional Counsel for Plaintiff on Signature Page]*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

VENUS YAMASAKI, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

ZICAM LLC, and MATRIXX
INITIATIVES, INC.,

    Defendants.

CASE NO.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Venus Yamasaki ("Plaintiff") brings this Class Action Complaint against Defendants Zicam LLC and Matrixx Initiatives, Inc. (collectively, "Defendants" or "Zicam"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experience and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1.     This is a class action brought by Plaintiff on behalf of himself and all similarly situated consumers who purchased Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®, Zicam® Elderberry Citrus RapidMelts®, Zicam® Nasal Swabs, Zicam® Nasal

1

Spray, Zicam® Wild Cherry Lozenges, and/or Zicam® Oral Mist™ (collectively, the "Zicam Products" or "Products") for personal or household use and not for resale.

2.      Defendants manufacture, advertise, market, label, distribute, and sell the Zicam Products as homeopathic cold remedies, which are supposedly capable of shortening the duration of the common cold. The Zicam Products are categorically labeled as "The Pre-Cold Medicine" and the front of the Products' packaging and labels uniformly direct consumers to "take at the first sign of a cold."

3.      Each of the Zicam Products, with the exception of Zicam® Nasal Swabs and Zicam® Nasal Spray, contains the active ingredients zincum aceticum and zincum gluconicum for the alleged purpose of "reduc[ing] [the] duration and severity of the common cold."[1]

4.      Defendants misrepresent on the Products' packaging and labels, in their advertising and marketing, and on their website that each of the Zicam Products has been "clinically proven to shorten colds" ("the Claim").  This Claim is consistently and prominently presented on the front of each Zicam Product's packaging and label in a bold, all-caps font in order to capture the attention of trusting consumers.

5.      Defendants fail to disclose to unsuspecting consumers that the Zicam Products have *never* been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds."  Nor do Defendants disclose that the Claim is based upon a single study performed in 2012 by Dr. Michelle Science, M.D., *et al.*, which did not specifically test the Zicam Products and, in fact, concluded that there is uncertainty regarding the clinical benefit of using zinc to reduce the duration of the common cold (the "Science Study").[2]  Rather, the Science Study, upon which Defendants rely, analyzed the use of zinc for the treatment of the common cold, in general, and

---

[1] https://www.zicam.com/our-products/cold-shortening/rapid-melts-citrus/ (last visited March 22, 2021).
[2] https://www.zicam.com/faqs/zinc-and-colds/ (last visited March 22, 2021).

concluded that "[t]he moderate quality of evidence suggested that orally administered zinc reduced the duration of symptoms of the common cold. However, the evidence of benefit was limited to adults, and even in this patient group, uncertainty remained about its clinical benefit."[3]

6.   If there are levels of falsity, then Defendants' misrepresentation regarding the Zicam® Nasal Swabs and Zicam® Nasal Spray is the pinnacle.  Neither product has included zinc as an ingredient since Defendants recalled and reformulated both products in response to the Food and Drug Administration's ("FDA") June 2009 warning letter, which was prompted by hundreds of consumers having their sense of smell damaged by certain Zicam® products.[4]  Notwithstanding the fact that Zicam® Nasal Swabs and Zicam® Nasal Spray have not contained zinc as an ingredient for several years, Defendants uniformly and falsely label both products as "clinically proven to shorten colds."  As discussed above, this Claim is based upon the Science Study, which exclusively focused on the use of zinc to shorten the duration of the common cold.  Given the fact that neither product contains zinc, the Science Study provides absolutely no scientific support for Defendants' Claim in connection with Zicam® Nasal Swabs and Zicam® Nasal Spray.

7.   Since the Science Study upon which Defendants rely had uncertain results and no testing has been performed regarding the Zicam Products in particular, there is no legitimate basis for Defendants' Claim that the Products are "clinically proven to shorten colds."  Nevertheless, Defendants consistently and uniformly use this Claim as the cornerstone of their labeling, advertising, and marketing efforts across the entire Zicam Product line.

8.   In short, in an effort to achieve maximum profits, Defendants have used deceptive labeling and marketing tactics to prey upon consumers desperate to reduce the duration of

---

[3] https://www.ncbi.nlm.nih.gov/books/NBK99972/ (last visited March 22, 2021).
[4] https://wayback.archiveit.org/7993/20170112195553/http://www.fda.gov/ICECI/EnforcementActions/ WarningLetters/ 2009/ucm166909.htm (last visited March 22, 2021).

thecommon cold through the use of products represented as having been clinically proven to be effective.

9.     As a direct and proximate result of Defendants' false and misleading advertising claims and marketing tactics, Plaintiff and Class Members, as defined below, purchased Defendants' Zicam Products. Plaintiff and Class Members reasonably relied upon Defendants' representations and were misled to believe that the Zicam Products had been clinically proven to shorten colds. As a result, Plaintiff and Class Members purchased Zicam Products that have *not* been clinically proven to shorten colds and have been injured in fact. Plaintiff and Class Members seek monetary relief in the form of actual damages, injunctive relief, and all further equitable relief available under the applicable law.

## **PARTIES**

10.     Plaintiff Venus Yamasaki is and was at all times relevant to this complaint a resident of Daly City, San Mateo County, California.

11.     Defendant Zicam LLC is an Arizona Limited Liability Corporation with its principal place of business located at 8515 E. Anderson Drive, Scottsdale, Arizona 85255. Zicam LLC manufactures, advertises, markets, labels, distributes, and sells the Zicam Products. It is a wholly-owned subsidiary of Defendant Matrixx Initiatives, Inc. At all times relevant to this complaint, Zicam LLC has transacted business in this judicial district and throughout the United States, including in California.

12.     Defendant Matrixx Initiatives, Inc. is a privately-held Delaware corporation with its principal place of business located at 440 Route 22 East, 1 Grande Commons, Suite 130, Bridgewater, New Jersey 08807. Matrixx Initiatives, Inc. manufactures, advertises, markets, labels, distributes, and sells the Zicam Products. It wholly owns Defendant Zicam LLC. At all times relevant to this complaint, Matrixx Initiatives, Inc. has transacted business in this judicial district and throughout the United States, including in California.

4

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Defendants in this matter.  The acts and omissions giving rise to this action occurred in the state of California, Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation with this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of California, during the relevant time period, at which time Defendants were engaged in business activities in the state of California.

14.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

15.     Under 28 U.S.C. § 1391, venue is proper in the Northern District of California because Plaintiff resides in this District, Defendants conduct business in this District, and both Defendants have intentionally availed themselves of the laws and markets within this District.

## INTRADISTRICT ASSIGNMENT

16.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims herein arose in San Mateo County, California and this action should be assigned to the San Francisco Division or the Oakland Division.

**FACTS COMMON TO ALL CLASS MEMBERS**

16.     The Zicam Products are a line of homeopathic products sold over-the-counter as supposed cold remedies capable of shortening the duration of symptoms of the common cold.

17.     Zicam was developed in the mid-1990s, and Defendants began manufacturing, marketing, advertising, distributing and selling the products shortly thereafter.

18.     Since the inception of Zicam, Defendants have been the exclusive manufacturers, marketers, advertisers, distributers, and sellers of Zicam-branded products.

19.     Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®, Zicam® Elderberry Citrus RapidMelts®, Zicam® Wild Cherry Lozenges, and Zicam® Oral Mist™ contain the active ingredients zincum aceticum ("zinc acetate") and zincum gluconicum ("zinc gluconate").[5]

20.     Zicam® Nasal Swabs and Zicam® Nasal Spray do not contain zinc acetate or zinc gluconate.  Instead, the active ingredients in these two products are galphimia glauca, luffa operculata, and sabadilla.[6]

21.     Unlike traditional medicines, the Zicam Products are not approved by the FDA.  In fact, there are no FDA-approved products labeled as "homeopathic."[7]  Any product labeled as "homeopathic" in the United States is being marketing without FDA evaluation for safety or effectiveness to diagnose, treat, cure, prevent or mitigate any diseases or conditions.[8]

22.     The front of the packaging and labels for each of the Zicam Products includes the word "homeopathic."

---

[5] https://www.zicam.com/our-products/cold-shortening/rapid-melts-citrus/; https://www.zicam.com/our-products/cold-shortening/wild-cherry-lozenges/; https://www.zicam.com/our-products/cold-shortening/ultra-rapid-melts-orange-cream/; https://www.zicam.com/our-products/cold-shortening/oral-mist-arctic-mint/; and https://www.zicam.com/our-products/elderberry/rapid-melts-citrus-elderberry/. (last visited March 22, 2021).
[6] https://www.zicam.com/our-products/cold-shortening/nasal-swabs/; https://www.zicam.com/our-products/cold-shortening/nasal-spray/ (last visited March 22, 2021).
[7] https://www.fda.gov/drugs/information-drug-class/homeopathic-products (last visited March 22, 2021).
[8] *Id.*

23.     Additionally, the front of the packaging and labels for each of the Zicam Products includes the Claim that the Products are "clinically proven to shorten colds."  The Claim is consistently and prominently presented in a bold, all-caps font in order to capture the attention of trusting consumers.  As seen below, the majority of the Zicam Products place the Claim in white text on a blue banner that ensures it pops and catches the eye.  The two Products that do not feature this banner treatment (Zicam® Nasal Swabs and Zicam® Nasal Spray) emphasize the Claim by highlighting the words "clinically proven" in yellow and increasing the font size of these two words in comparison to the surrounding words.

  

1
2
3
4
5
6
7
8
9
10
11

  

12
13
14
15
16
17
18
19
20
21
22



Above: Front of packaging for Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®, Zicam® Elderberry Citrus RapidMelts®, Zicam® Wild Cherry Lozenges, Zicam® Oral Mist™, Zicam® Nasal Swabs, and Zicam® Nasal Spray, respectively, each of which prominently features the Claim.

23
24
25        24.    Defendants' website expands on their "cold shortening" representations, claiming

26   that, "[o]ur homeopathic Zicam® Cold Remedy products are clinically proven to shorten colds

27   when taken at the first sign, so you can get back to the fun stuff faster."[9]  Defendants also state on

28

---

[9] https://www.zicam.com/our-products/cold-shortening/ (last visited March 22, 2021).

their website that "Zicam® is clinically proven to shorten colds.  Don't just treat the symptoms of a cold, shorten your cold with Zicam® Cold Remedy."[10]  These representations are followed by a tiny asterisk, which references an equally tiny footnote vaguely stating, "For zinc cold remedies and homeopathic cold products."  At the bottom of the Cold Shortening products page of their website, Defendants include the following representations:

- Clinical results have been shown for Zicam® Cold Remedy RapidMelts®, ULTRA RapidMelts®, ULTRA Crystals, Medicated Fruit Drops, Lozenges, Oral Mist™, Nasal Spray and Nasal Swabs;

- These statements are based upon traditional homeopathic practice; and

- Claims based on traditional homeopathic practice, not accepted medical evidence. Not FDA evaluated.[11]

25.	The misrepresentations and omissions identified in this complaint are virtually identical across all of the Zicam Products, and the Claim that forms the basis of this action is the same for each Product.  In other words, the means of deception is the same for all of the Zicam Products.

26.	Defendants' representations are designed to induce consumers to believe that the Zicam Products have been scientifically evaluated and proven to shorten the duration of the common cold.  This representation is material to consumers and the primary factor motivating consumer purchases of the Zicam Products.

27.	Defendants' representations on their packaging and website convey to reasonable consumers and reasonable consumers would believe that the state of the science regarding the Zicam Products and their ingredients have reached a level of scientific consensus such that Defendants' claims that the Products are "clinically proven to shorten colds" is an established truth and statement of fact.

---

[10] *Id.*
[11] *Id.* Notably, Zicam ULTRA Crystals and Medicated Fruit Drops are not at issue in this action.

9

28.     It is reasonable for consumers to rely upon Defendants' representations concerning the Zicam Products when deciding to purchase the Products. The one and only reason that consumers purchase the Zicam Products is the desire to receive the advertised benefit of shortening the duration of a cold.

29.     Defendants' representations concerning the Zicam Products being "clinically proven to shorten colds" were developed with the intent to generate sales of the Products and capture a substantial percentage of the cold remedy market.

30.     Defendants have made uniform, express, and implied representations concerning the Zicam Products, including that each Product has been "clinically proven to shorten colds." This representation pervades Defendants' labeling and marketing of the Zicam Products.

31.     Unfortunately for consumers, there is no scientific evidence validating Defendants' bold Claim that the Zicam Products have been "clinically proven to shorten colds." What Defendants fail to disclose to unsuspecting consumers on the Product packaging, their websites, and marketing and advertising is that the Zicam Products have *never* been clinically tested to determine whether or not they have any impact on the duration of the common cold. Since the Zicam Products have never been clinically studied, nothing has been proven regarding their ability to shorten colds.

32.     Defendants also fail to disclose that the single zinc study they rely upon provides no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds." This Claim is solely based upon the Science Study performed in 2012, which did not specifically test the Zicam Products and, in fact, concluded that there is uncertainty regarding the clinical benefit of using zinc to reduce the duration of the common cold (the "Science Study").[12] Rather, the Science Study, upon which Defendants rely, analyzed the use of zinc for the treatment of the

---

[12] https://www.zicam.com/faqs/zinc-and-colds/ (last visited March 22, 2021).

common cold, in general, and concluded that "[t]he moderate quality of evidence suggested that orally administered zinc reduced the duration of symptoms of the common cold. However, the evidence of benefit was limited to adults, and even in this patient group, uncertainty remained about its clinical benefit."[13]

33.    In fact, recent studies have indicated that the use of over-the-counter cold remedies containing zinc, including zinc acetate lozenges, do *not* shorten the duration of the common cold.[14] In 2019, a randomized, double-blinded, placebo-controlled trial conducted in Finland determined that "[t]here was no difference in the recovery rate between zinc and placebo participants during the 10-day follow-up."[15]  And while the "recovery rate for the two groups was similar during the 5-day intervention," for 2 days after the end of zinc and placebo use, "the zinc participants recovered significantly *slower* compared with the placebo participants..."[16]  The study concluded that "[a] commercially available zinc acetate lozenge was not effective in treating the common cold when instructed to be used for 5 days after the first symptoms."[17]

34.    Defendants' use of the Claim in connection with the Zicam® Nasal Swabs and Zicam® Nasal Spray is particularly egregious and offensive.  Both products were reformulated so as to not include zinc as an ingredient after the FDA issued a warning letter in June 2009 regarding these products due to hundreds of consumers having their sense of smell damaged by the products.[18] Yet, Defendants have continued to market, advertise, and label Zicam® Nasal Swabs and Zicam® Nasal Spray as "clinically proven to shorten colds" despite the fact that this Claim is based on a study of zinc, which has not been an ingredient in either product for several years.  It is a false and deceptive misrepresentation to claim that either product has been clinically proven to shorten colds

---

[13] https://www.ncbi.nlm.nih.gov/books/NBK99972/ (last visited March 22, 2021).
[14] https://bmjopen.bmj.com/content/10/1/e031662 (last visited March 22, 2021).
[15] *Id*.
[16] *Id* (emphasis added).
[17] *Id*.
[18] https://wayback.archiveit.org/7993/20170112195553/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ 2009/ucm166909.htm (last visited March 22, 2021).

when that Claim is exclusively premised upon the study of an active ingredient which neither product includes.

35.    Further, since the Science Study upon which Defendants rely had uncertain results regarding the ability of zinc to shorten the duration of the common cold, and no testing has been performed specifically regarding the Zicam Products in particular, there is no legitimate basis for Defendants' Claim that the Products are "clinically proven to shorten colds."   Nevertheless, Defendants consistently and uniformly use this Claim as the cornerstone of their advertising, marketing, and labeling efforts across the entire Zicam Product line.  Defendants' continued use of the Claim is fraudulent or, at a minimum, disturbingly misleading.

## PLAINTIFF'S FACTUAL ALLEGATIONS

36.    After reviewing information about Zicam® Nasal Spray online and in-store via the Products' packaging and labels regarding it supposedly being "clinically proven to shorten colds," Plaintiff purchased Zicam® Nasal Spray at a drugstore in Daly City, California in or around 2019, and began using the Product.

37.    As a result of Defendants' material misrepresentations and omissions, Plaintiff purchased Zicam® Nasal Spray because she reasonably believed that it had been "clinically proven to shorten colds," as marketed, advertised, packaged, and labeled.  Plaintiff would not have purchased Zicam® Nasal Spray, or would have paid less for it, had she known that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds."

38.    Plaintiff had not previously purchased or used any Zicam Products.

39.    Plaintiff followed the instructions on the Zicam Product packaging, as directed by Defendants.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

40.     Defendants had actual knowledge for years that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for their Claim that the Zicam Products are "clinically proven to shorten colds."

41.     Although Defendants were aware that the Claim is a false and deceptive misrepresentation, they took no steps to disclose the truth to Plaintiff or Class Members.

42.     At least by 2009, Defendants knew that the reformulated Zicam® Nasal Swabs and Zicam® Nasal Spray did not contain zinc and, therefore, are not supported by any study or claim regarding the potential for zinc to shorten the duration of the common cold.

43.     At least by 2012, Defendants knew that the Science Study does not support the Claim that the Zicam Products are "clinically proven to shorten colds."

44.     At least by 2012, Defendants knew that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold.

45.     Despite its knowledge, Defendants have fraudulently concealed the fact that the Claim is a misrepresentation and that Zicam Products have not been clinically proven to shorten colds.

46.     Defendants made affirmative misrepresentations to consumers during the sales of the Zicam Products.

47.     Defendants concealed material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Zicam Products. Defendants' concealment was knowing, and they intended to deceive Plaintiff and Class Members to rely upon it. Accordingly, Plaintiff and Class Members reasonably relied upon Defendants' concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

48.     The falsity of the Claim was not reasonably detectible to Plaintiff and Class Members.

49.     Defendants actively and intentionally concealed the falsity of the Claim and failed to inform Plaintiff or Class Members of its falsity at all times.  Accordingly, Plaintiff and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

50.     Defendants' statements, words, and acts were made for the purpose of suppressing the truth that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds."

51.     Defendants concealed the falsity of the Claim for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

52.     As a result of Defendants' active concealment of the truth and/or failure to inform Plaintiff and Class Members of the falsity of the Claim, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendants are estopped from relying on any statutes of limitations in light of its active concealment of the falsity of the Claim.

53.     Further, the causes of action alleged herein did not occur until Plaintiff and Class Members discovered that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds."  Plaintiff and Class Members had no realistic ability to determine the falsity of the Claim.  In either event, Plaintiff and Class Members were hampered in their ability to discover their causes of action because of Defendants' active concealment of the fact that the Claim is unsubstantiated by any scientific evidence.

## FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

54.    Although Defendants are in the best position to know what content they placed on the Product packaging and labels, in advertising and marketing materials, and on their website(s) during the relevant timeframe, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

55.    **WHO**:  Defendants made material misrepresentations and/or omissions of fact through their Product packaging and labeling, advertising and marketing, website representations, and warranties, all of which include the Claim that the Zicam Products are "clinically proven to shorten colds."

56.    **WHAT**:  Defendants' conduct here was, and continues to be, fraudulent because it omitted and concealed that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds."  Further, Defendants' conduct deceived Plaintiff and Class Members into believing that the Zicam Products have actually been "clinically proven to shorten colds."  Defendants knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet they omit any disclosure of the fact that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds."

57.    **WHEN**:  The material misrepresentations and/or omissions detailed herein were made prior to and available at the time Plaintiff and Class Members surveyed the field of available cold remedies in order to gather information that would aid them in selecting the best product, prior

15

to and at the time Plaintiff and Class Members purchased the Zicam Products, and continuously throughout the applicable class period.

58. **WHERE**: Defendants' material misrepresentations and/or omissions were made on the Product packaging and labels, in advertising and marketing materials, and on their website(s).

59. **HOW**: Defendants made misrepresentations and/or failed to disclose material facts regarding the fact that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds" in written form, electronic form, or conventional hardcopy form.

60. **WHY**: Defendants made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Zicam Products, the effect of which was that Defendants profited by selling the Zicam Products to many hundreds of thousands of consumers.

61. **INJURY**: Plaintiff and Class Members purchased or paid more for the Zicam Products when they otherwise would not have absent Defendants' misrepresentations and/or omissions. Further, the Zicam Products continue to be sold via material misrepresentations and/or omissions on the Product packaging and labels, in advertising and marketing materials, and on Defendants' website(s), causing additional consumers to purchase the Products for more than they would be willing to pay if they knew that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds."

## **CLASS ACTION ALLEGATIONS**

62.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3).  Plaintiff brings this action on behalf of a proposed National Class, Multi-State Class, and California Subclass, defined as follows:

**National Class**

During the fullest period allowed by law, all persons residing in the United States who purchased Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®, Zicam® Elderberry Citrus RapidMelts®, Zicam® Nasal Swabs, Zicam® Nasal Spray, Zicam® Wild Cherry Lozenges, and/or Zicam® Oral Mist™.

**Multi-State Class**

During the fullest period allowed by law, all persons residing in the states listed below who purchased Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®, Zicam® Elderberry Citrus RapidMelts®, Zicam® Nasal Swabs, Zicam® Nasal Spray, Zicam® Wild Cherry Lozenges, and/or Zicam® Oral Mist™.

**California Subclass**

During the fullest period allowed by law, all persons residing in the state of California who purchased Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®, Zicam® Elderberry Citrus RapidMelts®, Zicam® Nasal Swabs, Zicam® Nasal Spray, Zicam® Wild Cherry Lozenges, and/or Zicam® Oral Mist™.

63.     Excluded from the Classes are (a) any person who purchased the Zicam Products for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

64.     Plaintiff reserves the right to amend the definitions of the Classes if discovery or further investigation reveals that the Subclass should be expanded or otherwise modified.

65.   **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members.  Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

66.   **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

   a.   Whether the Zicam Products have been clinically tested;

   b.   Whether any clinical test has proven that the Zicam Products shorten colds;

   c.   Whether Defendants violated the Magnuson-Moss Act, 15 U.S.C. §§ 2301, *et seq.*;

   d.   Whether Defendants' packaging, labeling, marketing, advertising, and/or other promotional materials for the Zicam Products are deceptive, unfair, or misleading;

   e.   Whether Defendants' acts, omissions, or misrepresentations of material facts violate certain state deceptive practice acts, including those of California;

   f.   Whether Defendants breached express warranties in connection with the Products;

   g.   Whether Defendants breached implied warranties in connection with the Products;

   h.   Whether Defendants' acts, omissions or misrepresentations of material facts constitute fraud;

i. Whether Defendants' acts, omissions or misrepresentations of material facts constitute a breach of contract or common law warranty;

j. Whether Plaintiff and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of Defendants' acts, omissions or misrepresentations of material facts;

k. Whether Defendants were unjustly enriched at the expense of Plaintiff and putative Class Members in connection with the Products;

l. Whether Plaintiffs and putative Class Members are entitled to monetary damages and, if so, the nature of such relief; and

m. Whether Plaintiff and putative Class Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

67.     Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class as a whole.   In particular, Defendants have manufactured, packaged, labeled, marketed, advertised, distributed and sold the Zicam Products, which are deceptively misrepresented as "clinically proven to shorten colds."

68.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the claims of the Members of the Class, as each putative Class Member was subject to the same uniform deceptive misrepresentation regarding the Claim that the Zicam Products have been "clinically proven to shorten colds."  Plaintiff shares the aforementioned facts and legal claims or questions with putative Class Members, and Plaintiff and all putative Class Members have been similarly affected by Defendants' common course of conduct alleged herein. Plaintiff and all putative Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' deceptive misrepresentations regarding the false Claim that the Zicam Products have been "clinically proven to shorten colds," as alleged herein.

69.     **Adequacy – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff will fairly and adequately represent and protect the interests of the putative Class.

70.     Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation.  Further, Plaintiff and his counsel are committed to the vigorous prosecution of this action.  Plaintiff does not have any conflicts of interest or interests adverse to those of putative Class Members.

71.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. Accordingly, the proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

72.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class Members as a whole.

73.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a.   The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

b.   Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.   The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

d.   Individual joinder of all putative Class Members is impracticable;

e.   Absent a Class, Plaintiff and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

f.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and putative Class a Members can seek redress for the harm caused by Defendants.

74.   In the alternative, the Class may be certified for the following reasons:

a.   The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

b.   Adjudications of individual Class Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

c.   Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

**COUNT I**
**Violation of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of Plaintiff individually and on behalf of the California Subclass)**

75.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

76.     Plaintiff brings this claim individually and on behalf of all similarly situated California Subclass Members.

77.     Plaintiff, California Subclass Members, and Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

78.     Defendants are subject to California's UCL, Cal Bus. Prof. Code §§ 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

79.     Defendants' business practices, described above, violated the "unlawful" prong of the UCL.   Because Defendants' representations about the Zicam Products were false and misleading, Defendants have committed unlawful business practices by violating California's Sherman Food, Drug and Cosmetic Law. Cal. Health & Safety Code §§ 109875, *et seq*., and the Food Drug and Cosmetic Act, 21 U.S.C. §§ 301, *et seq*.

80.     Defendants violated the "unfair" prong of the UCL by making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the Zicam Products on the packaging and labels and on their website, as set forth above. There is no societal benefit from false advertising—only harm.

81.     Plaintiff and California Subclass Members paid for valueless Products that are not capable of conferring the benefits promised. While Plaintiff and California Subclass Members were harmed, Defendants were unjustly enriched by their false representations and omissions.   As a result, Defendants' conduct is "unfair," as it offended an established public policy.   Defendants

22

engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

82.   Further, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers.  Defendants' acts and omissions violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers.   This conduct constitutes violations of the unfair prong of the Business & Professions Code §§ 17200, *et seq*.

83.   Defendants violated the fraudulent prong of the UCL by, among other things, making the false representations and omissions of material facts regarding the Zicam Products in their uniform advertising, including the packaging and labeling, as set forth more fully herein.  In fact, the Zicam Products are not "clinically proven to shorten colds," as falsely claimed and promised by Defendants.

84.   Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were false, misleading, and/or likely to deceive the consuming public within the meaning of Business & Professions Code §§ 17200, *et seq*.

85.   Plaintiff and California Subclass Members have, in fact, been deceived as a result of their reliance on Defendants' material misrepresentations and omissions, which are described above.  Plaintiff and the California Subclass acted reasonably when they purchased Zicam Products based on their belief that Defendants' representations were true and lawful.

86.   Plaintiff and California Subclass Members have suffered injury in fact and lost money as a result of their purchases of Defendants' Zicam Products and Defendants' unlawful, unfair, and fraudulent practices.

87.   Defendants knew, or should have known, that they have no scientific evidence for their claims of clinical proof as set forth above.  Defendants further knew, or should have known, that their material misrepresentations and omissions would be likely to deceive and harm the

consuming public and result in consumers making payments to Defendants for Zicam Products, which are valueless and not "clinically proven to shorten colds."

88.     As a result of their deception, Defendants were unjustly enriched by receiving payments from Plaintiff and the California Subclass for Zicam Products which cannot perform as advertised and when there is no scientific or clinical evidence to support Defendants' claims of being "clinically proven."

89.     Unless restrained and enjoined, Defendants will continue to engage in the unlawful, unfair, and fraudulent conduct described herein.  Accordingly, injunctive relief is appropriate. Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, seeks restitution from Defendants of all money obtained from Plaintiff and California Subclass Members collected as a result of Defendants' unfair competition, an injunction prohibiting Defendants from continuing and further engaging in their unlawful, unfair, and fraudulent conduct, requiring corrective advertising, and awarding all other relief this Court deems appropriate.

## COUNT II
### Violation of the California Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq*.
### (On behalf of Plaintiff individually and on behalf of the California Subclass)

90.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

91.     Plaintiff brings this claim individually and on behalf of all similarly situated California Subclass Members.

92.     Plaintiff and California Subclass Members are consumers who purchased Zicam Products for personal, family, or household purposes. Plaintiff and the California Subclass have been at all relevant times "consumers" within the meaning of the CLRA, Cal. Civ. Code § 1761(a), (c), and (d).

93.     Defendants are "persons" and Zicam Products are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a), (c), and (d).

94.     Defendants' sale and advertisement of Zicam Products constitute "transactions" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

95.     The CLRA declares as unlawful the following unfair methods of competition and unfair or deceptive acts or practices when undertaken by any person in a transaction intended to result, or which results in the sale of goods to any consumer:

   a.   "Representing that goods . . . have . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . ." Cal. Civ. Code § 1770(a)(5).

   b.   "Representing that goods . . . are of a particular standard, quality or grade . . . if they are of another." Id. (a)(7).

   c.   "Advertising goods . . . with intent not to sell them as advertised." Id. (a)(9).

   d.   "Representing that [goods] have been supplied in accordance with a previous representation when [they have] not." Id. (a)(16).

96.     Defendants violated and continue to violate the CLRA by engaging in the practices prohibited by Cal. Civ. Code § 1770(a)(5), (7), (9), and (16), which were intended to result in, and did result in, the sale of Zicam Products.

97.     Defendants' foregoing acts and practices, including their deceptive and fraudulent misrepresentations and omissions in the conduct of trade or commerce, were directed at consumers, including Plaintiff and California Subclass Members.

98.     Defendants' violations of the CLRA proximately caused injury in fact to Plaintiff and the California Subclass.

99.     Plaintiff and California Subclass Members purchased Defendants' Zicam Products on the belief that they would receive the advertised benefit of shortening the duration of the

common cold.  Indeed, no consumer would purchase Zicam Products unless he or she believed it was capable of providing the advertised benefit of shortening the duration of the common cold.

100.    The Zicam Products, however, are worthless and cannot provide the advertised benefit.  Because the Zicam Products lack any value, Plaintiff and each California Subclass Member was injured by the mere fact of their purchase.

101.    Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on behalf of the California Subclass Members, seeks a Court order enjoining the above-described wrongful acts and practices of Defendants.

102.    Pursuant to Cal. Civ. Code 1782(a), on April 8, 2020, Plaintiff provided written notice to Defendants demanding corrective actions. Plaintiff will amend her complaint to add claims for monetary damages if Defendants fail to take the corrective actions.

103.    Pursuant to § 1780(d) of the Act, attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

**COUNT III**
**Violation of the California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.*****
**(On behalf of Plaintiff individually and on behalf of the California Subclass)**

104.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

105.    Plaintiff brings this claim individually and on behalf of all similarly situated California Subclass Members.

106.    The FAL, in relevant party, states that "[i]t is unlawful for ... any corporation ... with intent ... to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper, or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the

Internet, any statement ... which is untrue or misleading, and which is known or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"  Cal. Bus. & Prof. Code§ 17500.

107.    The required intent is the intent to dispose of property, not the intent to mislead the public in the disposition of such property.

108.    Defendants violated the FAL by making the untrue or misleading representations described above, including that Zicam Products have been "clinically proven to shorten colds" when, in reality, there is no scientific and clinical proof of the Zicam Products' advertised benefits.

109.    As a direct and proximate result of Defendants' untrue and misleading advertising, Plaintiff and California Subclass Members have suffered injury in fact and have lost money.

110.    Accordingly, Plaintiff requests that the Court order Defendants to restore the money that Defendants have received from Plaintiff and California Subclass Members, and that the Court enjoin Defendants from continuing their unlawful practices, and engage in corrective advertising.

<u>**COUNT IV**</u>
**Breach of Express Warranty**
**(On behalf of Plaintiff individually and on behalf of the Classes)**

111.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

112.    Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

113.    Plaintiff and Class Members purchased the Zicam Products through retailers such as Walgreens, CVS, Duane Reed, Target, and Walmart, among others.

114.    Defendants are and were at all relevant times sellers under Cal. Comm. Code § 2313.

115.   Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers expressly warranted that the Zicam Products were fit for their intended purpose by expressly warranting that the Products were "clinically proven to shorten colds."

116.   Defendants made the foregoing express representation and warranty to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Defendants.

117.   In fact, the Zicam Products are not fit for such purpose because the express warranty is a false, deceptive, and misleading misrepresentation.

118.   Defendants breach their warranty and/or contract obligations by placing the Zicam Products into the stream of commerce and selling them to consumers, when the Products have never been clinically tested to determine whether they impact the duration of the common cold, and there is no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds."  The fact that the Zicam Products have not actually been clinically tested in this capacity and that there is no scientific evidence supporting Defendants' Claim renders the Products unfit for their intended use and purpose, and substantially and/or completely impairs the use and value of the Products.

119.   The warranty that the Zicam Products were "clinically proven to shorten colds" was false when the Products left Defendants' possession or control and were sold to Plaintiff and Class Members.  The fact that the Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Claim was not discoverable by Plaintiff and Class Members at the time of their purchase of the Zicam Products.

120.   Defendants were provided reasonable notice of the aforementioned breaches of the above-described warranties via notice letters served upon and accepted by Defendants' counsel on April 8, 2021.

121.   Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Zicam Products if they had known the truth about the Products.

**COUNT V**
**Breach of Contract/Common Law Warranty**
**(On behalf of Plaintiff individually and on behalf of the Classes)**

122.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

123.   Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

124.   To the extent Defendants' commitment is deemed not to be a warranty under Cal. Comm. Code § 2313, Plaintiff pleads in the alternative under common law warranty and contract law.

125.   Plaintiff and Class Members purchased the Zicam Products through retailers such as Walgreens, CVS, Duane Reed, Target, and Walmart, among others.

126.   Defendants expressly warranted that the Products were fit for their intended purpose in that the Products were "clinically proven to shorten colds."

127.   Defendants made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Defendants.

128.   Defendants breached their warranty and/or contract obligations by placing the Zicam Products into the stream of commerce and selling them to consumers, when the Products have never been clinically tested to determine whether they impact the duration of the common cold, and there is no scientific support for the Claim that the Zicam Products are "clinically proven to shorten colds."  The fact that the Zicam Products have not actually been clinically tested in this capacity and that there is no scientific evidence supporting Defendants' Claim renders the Products

unfit for their intended use and purpose, and substantially and/or completely impairs the use and value of the Products.

129.    The warranty that the Zicam Products were "clinically proven to shorten colds" was false when the Products left Defendants' possession or control and were sold to Plaintiff and Class Members.  The fact that the Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Claim was not discoverable by Plaintiff and Class Members at the time of their purchase of the Zicam Products.

130.    As a direct and proximate cause of Defendants' breach of contract, Plaintiff and Class Members were harmed because they would not have purchased the Zicam Products if they had known the truth about the Products.

**COUNT VI**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiff individually and on behalf of the Classes)**

131.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

132.    Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

133.    Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers of the Zicam Products, impliedly warranted that the Products were "clinically proven to shorten colds."

134.    Defendants, through their acts and omissions set forth herein, in their sale, marketing, and promotion of the Zicam Products, made implied representations to Plaintiff and Class Members that their Products had been clinically tested and proven to shorten colds when, in fact, the Products have never been clinically tested to determine whether they impact the duration of the common cold, and there is no scientific support for this Claim.

135.    Because the Zicam Products have never been clinically tested to determine whether or not they impact the duration of the common cold, the Products are mislabeled, not in accord with Defendants' representations and, therefore, not useful for their ordinary purpose of shortening the duration of the common cold.   The Zicam Products do not conform with the promises that Defendants placed on their packaging and labels.

136.    Defendants breached their implied warranties because the Zicam Products have never been clinically tested to determine whether or not they impact the duration of the common cold. As a result of Defendants' conduct, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendants to be merchantable or fit for the intended purpose for which they were sold.

137.    As a proximate result of Defendants' above-described breach of implied warranty, Plaintiff and Class Members have sustained damages in an amount to be determined at trial.

**COUNT VII**
**Violation of Various Consumer Protection Laws**
**(On behalf of Plaintiff individually and on behalf of the Multi-State Class)**

138.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

139.    Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

140.    Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in their marketing, advertising, and labeling of the Zicam Products.

141.    Had Defendants not engaged in the false and deceptive conduct described above, Plaintiff and Class Members would not have purchased the Zicam Products.

142.   Defendants' false and deceptive representations and material omissions to consumers and the public, including Plaintiff, constituted unfair and deceptive acts and practices in violation of the state consumer protection statutes listed below:

a.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

b.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq.*;

c.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*;

d.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

e.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 2-1 10a, *et seq.*;

f.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code §§ 2511, et seq. and 2531, *et seq.*;

g.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq.*;

h.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

i.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480-1, *et seq.*;

j.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

k.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS §505/1, *et seq.*;

l.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq*.;

m.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.170, *et seq*.;

n.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq*.;

o.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq*.;

p.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws Ann. § 445.90 1, *et seq*.;

q.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §§ 325D.43, *et seq*.; 325 F.67, *et seq*.; and 325F.68 *et seq*.;

r.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Ann. Missouri Stat. § 407.010, *et seq*.;

s.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MT Code § 30-14-101 e*t seq*.;

t.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq*.;

u.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. Ann. § 598.0903, *et seq*.;

v.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq*.;

w.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Rev. Stat. § 56:8-1, *et seq*.;

x.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et seq.*;

y.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349 et seq. and 350-e, *et seq.*;

z.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code §§ 51-12-01, *et seq.*, and 51-15-01, *et seq.*;

aa.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. § 15 751, *et seq.*;

bb.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 6464.605, *et seq.*;

cc.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

dd.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*;

ee.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

ff.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq.*;

gg.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-101, *et seq.*;

hh.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

ii.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451, *et seq.*;

jj. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq*.;

kk. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code. § 19.86.010, *et seq*.; and

ll. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq*.

143.    Plaintiff and Class Members reasonably relied upon Defendants' misrepresentations and/or omissions in buying the Zicam Products.

144.    Plaintiff will provide any required notice to appropriate entities regarding Defendants' unfair and deceptive trade practices.

145.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class are entitled to compensatory damages, treble damages, attorneys' fees and the costs of this suit.

## COUNT VIII
### Unjust Enrichment
### (On behalf of Plaintiff individually and on behalf of the Classes)

146.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 74 as if fully set forth herein.

147.    Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

148.    By their wrongful acts and omissions described within this complaint, including the deceptive packaging, labeling, marketing, advertising, distribution, and sale of the Zicam Products as clinically proven to shorten colds, Defendants were unjustly enriched at the expense of Plaintiff and Class Members.

149.    Plaintiff and Class Members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this complaint.

150.    Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and Class Members under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit.  It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with the deceptive packaging, labeling, marketing, advertising, distribution, and sale of the Zicam Products.

151.    Plaintiff and Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Zicam Products had they known that the Products were not clinically proven to shorten colds.

152.    Defendants knew and intended that Plaintiff and Class Members would make payments for the Zicam Products based on the belief that the Products were clinically proven to shorten colds, as represented by Defendants in advertising and marketing, on Defendants' website, and on the labels and packaging.  It is inequitable for Defendants to retain the benefit of payments obtained through false and misleading representations.

153.    Plaintiff and Class Members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

154.    When required, Plaintiff and Class Members are in privity with Defendants because Defendants' sale of the Zicam Products was through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendants' agents for the purpose of the sale of the Zicam Products.

155.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated Class Members, prays for relief and judgment, including entry of an order:

A.   Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B.   Directing that Defendants bear the costs of any notice sent to the Class;

C.   Awarding Plaintiff and Class Members actual damages, restitution and/or disgorgement;

D.   Awarding Plaintiff and Class Members statutory damages, as provided by the applicable state consumer protection statutes invoked above;

E.   Enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

F.   Awarding Plaintiff and Class Members restitution of the funds that unjustly enriched Defendants at the expense of Plaintiff and Class Members;

G.   Awarding Plaintiff and Class Members pre- and post-judgment interest;

H.   Awarding attorneys' fees and litigation costs to Plaintiff and Class Members; and

I.   Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this complaint so triable.

| | |
|---|---|
| 1 | Dated: April 9, 2021 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |

Dated: April 9, 2021

Respectfully submitted,

**GREG COLEMAN LAW PC**

*/s/ Alex R. Straus*
Alex R. Straus (SBN 321366)
16748 McCormick Street
Los Angeles, CA 91436
T: 917-471-1894
alex@gregcolemanlaw.com

**GREG COLEMAN LAW PC**
Rachel L. Soffin*
Jonathan B. Cohen*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
rachel@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

**WHITFIELD BRYSON LLP**
Dan Bryson*
Sarah Spangenburg*
900 W. Morgan Street
Raleigh, NC 27603
T: (919) 600-5000
F: (919) 600-5035
dan@whitfieldbryson.com
sarah@whitfieldbryson.com

**BARBAT MANSOUR SUCIU & TOMINA PLLC**
Nick Suciu III*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
nicksuciu@bmslawyers.com

* pending *pro hac vice* admission

*Attorneys for Plaintiff and the Classes*