Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 Beverly Hills Drive
Penthouse
Beverly Hills, CA 90212
astraus@milberg.com

*Attorney for Plaintiff*

*[Names and addresses of additional Counsel for Plaintiff on Signature Page]*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

VENUS YAMASAKI, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

ZICAM LLC, and MATRIXX
INITIATIVES, INC.,

    Defendants.

CASE NO.: 3:21-cv-02596

**AMENDED CLASS ACTION
COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Venus Yamasaki ("Plaintiff") brings this Class Action Complaint against Defendants Zicam LLC and Matrixx Initiatives, Inc. (collectively, "Defendants" or "Zicam"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experience and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF THE ACTION

1.    This is a class action brought by Plaintiff on behalf of herself and all similarly situated consumers who purchased Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®, Zicam® Elderberry Citrus RapidMelts®, Zicam® Nasal Swabs, Zicam® Nasal

Spray, Zicam® Wild Cherry Lozenges, and/or Zicam® Oral Mist™ (collectively, the "Zicam Products" or "Products") for personal or household use and not for resale.

2.  Defendants manufacture, advertise, market, label, distribute, and sell the Zicam Products as homeopathic cold remedies that are supposedly capable of shortening the duration of the common cold. The Zicam Products are categorically labeled as "The Pre-Cold Medicine" and the front of the Products' packaging and labels uniformly direct consumers to "take at the first sign of a cold."

3.  Each of the Zicam Products – with the exception of Zicam® Nasal Swabs and Zicam® Nasal Spray – contains the active ingredients zincum aceticum and zincum gluconicum for the alleged purpose of "reduc[ing] [the] duration and severity of the common cold."[1]

4.  Defendants misrepresent on the Products' packaging and labels, in their advertising and marketing, and on their website that each of the Zicam Products has been "clinically proven to shorten colds" ("the Clinically Proven Claim").  The Clinically Proven Claim is consistently and prominently presented on the front of each Zicam Product's packaging and label in a bold, all-caps font where it cannot be missed and will capture the attention of trusting consumers.

5.  Contrary to Defendants' packaging and marketing claims, the Zicam Products are *not clinically proven* to impact the duration of the common cold, and there is no adequate scientific evidence to support the Clinically Proven Claim.

6.  Remarkably, Defendants' deception is buried deep within their website.  On the Zicam FAQ page, in support of the Clinically Proven Claim, Defendants cite to a study published in 2011 by the U.S. Cochrane Center, which was performed by Dr. Meenu Singh, *et al.* ("Cochrane Review").[2]  Specifically, Defendants state that "[t]his review, conducted by the U.S. Cochrane

---

[1] https://www.zicam.com/our-products/cold-shortening/rapid-melts-citrus/ (last visited May 26, 2021).
[2] https://www.zicam.com/faqs/zinc-and-colds/ (last visited May 26, 2021).

Center, looked at 15 studies involving more than 1,300 participants and found that taking zinc within 24 hours of the first signs of a cold reduced cold duration" and "[t]he authors concluded that taking zinc within 24 hours of the first signs of a cold reduced cold duration and that the symptoms were less severe in people who took zinc."[3]

7.     However, the Cochrane Review is not actually included or linked on the Zicam webpage and is only cited in a footnote.  As a result, before consumers can evaluate the Cochrane Review, they must first search for and locate it elsewhere on the Internet outside of the Zicam webpage.  Significantly, the Cochrane Review was not a study, but rather, just an evaluation of numerous clinical trials, which did not specifically test the Zicam Products.  Nor did the Cochrane Review conclude that zinc is clinically proven to shorten colds.  In fact, the authors of the Cochrane Review concluded that *there is uncertainty regarding the clinical benefit of using zinc* to reduce the duration of the common cold, stating "…it is difficult to make firm recommendations about the dose, formulation and duration that should be used."  Further, the Cochrane Review was updated in 2013, at which time the authors evaluated additional trials and found that, in determining whether zinc reduced the duration of the common cold, "…some caution is needed due to the heterogeneity of the data."[4]  Moreover, in 2015, the Cochrane Review was withdrawn because of "multiple errors" and "allegations of plagiarism of text and data," and "concerns raised via the feedback mechanism regarding the calculation and analysis of data."[5]  Thus, contrary to Defendants' representation on their FAQ page, the Cochrane Review *does not* support the claim that Zicam products are "clinically proven to shorten colds."

8.     To further support their deceptive and misleading Clinically Proven Claim, on the Zicam FAQ page, Defendants state that "[s]tudies on zinc lozenges have shown that taking zinc

---

[3] https://www.zicam.com/faqs/zinc-and-colds (last visited June 8, 2021).
[4] https://pubmed.ncbi.nlm.nih.gov/23775705/ (last visited June 7, 2021)
[5] https://www.cochranelibrary.com/cdsr/doi/10.1002/14651858.CD001364.pub5/full (last visited June 7, 2021).

lozenges reduces the duration of cold symptoms."[6]  However, in an associated footnote hidden at the bottom page, Defendants reference a review of multiple studies and trials from the National Institute of Health, which actually confirms that zinc is *not* clinically proven to shorten colds. ("NIH Review").

9.     Similar to the Cochrane Review, the NIH Review is not actually included or linked on the Zicam webpage and is only cited in a footnote.  Again, this requires consumers to search for and locate the NIH Review elsewhere on the Internet outside of the Zicam webpage in order to evaluate it.  Doing so reveals that, at best, the NIH Review and the studies cited within it establish that the use of zinc to impact the duration of cold symptoms is inconclusive and simply a hypothesis.  In fact, several cited studies actually conclude that zinc is completely ineffective.

10.    For example, the clinical trial titled "Effect of treatment with zinc gluconate or zinc acetate on experimental and natural colds" cited in the NIH Review concluded that "[w]hile Zinc Gluconate reduced symptoms by one day in participants with experimental colds, zinc gluconate had no effect on symptom severity and zinc acetate had no effect on either duration or severity. Further, neither formulation had an effect on the duration or severity of natural cold symptoms. Evaluation of blinding, taste, and adverse events revealed no significant differences among the 4 treatment arms.  Zinc compounds appear to have little utility for common-cold treatment."[7] Similarly, the clinical trial titled "Ineffectiveness of zinc gluconate nasal spray and zinc orotate lozenges in common-cold treatment: a double-blind, placebo-controlled clinical trial" cited in the NIH review concluded "[w]e found no reason to recommend intranasal zinc gluconate or zinc orotate lozenges in treating common colds."[8]  Thus, the citations on the Zicam website, which

---

[6] https://ods.od.nih.gov/factsheets/Zinc-HealthProfessional/ (last visited June 7, 2021).
[7] NIH Study, at n 69, citing https://pubmed.ncbi.nlm.nih.gov/11073753/ (last visited June 7, 2021).
[8] NIH Study, at n 70, citing https://pubmed.ncbi.nlm.nih.gov/16454145/ (last visited June 7, 2021).

Defendants' reference to support the Clinically Proven Claim, actually confirm that the Zicam Products are *not* clinically proven to shorten colds.

11.     In addition to having inadequate support for the Clinically Proven Claim, Defendants' misrepresentations regarding the zinc-free Zicam® Nasal Swabs and Zicam® Nasal Spray are especially egregious, and also lack support.  Neither product has included zinc as an ingredient since Defendants recalled and reformulated both products in response to the Food and Drug Administration's ("FDA") June 2009 warning letter, which was prompted by hundreds of consumers having their sense of smell damaged by certain Zicam® products.[9]  Notwithstanding the fact that Zicam® Nasal Swabs and Zicam® Nasal Spray have not contained zinc as an ingredient for several years, Defendants uniformly and falsely label both products as "clinically proven to shorten colds."  As discussed above, the Cochrane Review and NIH Review are the only studies publicly disclosed by Defendants in support of the Clinically Proven Claim and neither study supports the Clinically Proven Claim.  Rather, both Reviews dispute it.  Further, the studies cited in the Cochrane Review and NIH Review focus on the use of <u>zinc</u> to shorten the duration of the common cold and neither Zicam® Nasal Swabs nor Zicam® Nasal Spray contains zinc.  Accordingly, the Cochrane Review and NIH Review provide absolutely no scientific support for Defendants' Clinically Proven Claim in connection with Zicam® Nasal Swabs and Zicam® Nasal Spray.

12.     Since the Cochrane Review and NIH Review that Defendants rely upon do not support the Clinically Proven Claim, no other relevant studies have been disclosed by Defendants, and no testing has been performed regarding the Zicam Products in particular establishing that they are "clinically proven to shorten colds," there is no legitimate basis for Defendants' Clinically

---

[9] https://wayback.archiveit.org/7993/20170112195553/http://www.fda.gov/ICECI/EnforcementActions/ WarningLetters/2009/ucm166909.htm (last visited May 26, 2021).

Proven Claim. Nevertheless, Defendants consistently and uniformly use the Clinically Proven Claim as the cornerstone of their labeling, advertising, and marketing efforts across the entire Zicam Product line.

13. In short, in an effort to achieve maximum profits, Defendants have used the deceptive and misleading Clinically Proven Claim to prey upon consumers desperate to reduce the duration of the common cold through the use of products.

14. As a direct and proximate result of Defendants' deceptive and misleading advertising claims and marketing tactics, Plaintiff and Class Members, as defined below, purchased Defendants' Zicam Products. Plaintiff and Class Members reasonably relied upon Defendants' representations and were misled to believe that the Zicam Products had been clinically proven to shorten colds. As a result, Plaintiff and Class Members purchased Zicam Products that have *not* been clinically proven to shorten colds and have been injured in fact. Plaintiff and Class Members seek monetary relief in the form of actual damages, injunctive relief, and all further equitable relief available under the applicable law.

## **PARTIES**

15. Plaintiff Venus Yamasaki is and was at all times relevant to this complaint a resident of Daly City, San Mateo County, California.

16. Defendant Zicam LLC is an Arizona Limited Liability Corporation with its principal place of business located at 8515 E. Anderson Drive, Scottsdale, Arizona 85255. Zicam LLC manufactures, advertises, markets, labels, distributes, and sells the Zicam Products. It is a wholly-owned subsidiary of Defendant Matrixx Initiatives, Inc. At all times relevant to this complaint, Zicam LLC has transacted business in this judicial district and throughout the United States, including in California.

17. Defendant Matrixx Initiatives, Inc. is a privately-held Delaware corporation with its principal place of business located at 440 Route 22 East, 1 Grande Commons, Suite 130,

Bridgewater, New Jersey 08807. Matrixx Initiatives, Inc. manufactures, advertises, markets, labels, distributes, and sells the Zicam Products. It wholly owns Defendant Zicam LLC. At all times relevant to this complaint, Matrixx Initiatives, Inc. has transacted business in this judicial district and throughout the United States, including in California.

## JURISDICTION AND VENUE

18.     This Court has personal jurisdiction over Defendants in this matter. The acts and omissions giving rise to this action occurred in the state of California, Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of California, during the relevant time period, and during which time Defendants were engaged in business activities in the state of California.

19.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

20.     Under 28 U.S.C. § 1391, venue is proper in the Northern District of California because Plaintiff resides in this District, Defendants conduct business in this District, and both Defendants have intentionally availed themselves of the laws and markets within this District.

**INTRADISTRICT ASSIGNMENT**

16.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims herein arose in San Mateo County, California and this action should be assigned to the San Francisco Division or the Oakland Division.

**FACTS COMMON TO ALL CLASS MEMBERS**

21.     The Zicam Products are a line of homeopathic products sold over-the-counter as supposed cold remedies capable of shortening the duration of symptoms of the common cold.

22.     Zicam was developed in the mid-1990s, and Defendants began manufacturing, marketing, advertising, distributing and selling the products shortly thereafter.

23.     Since the inception of Zicam, Defendants have been the exclusive manufacturers, marketers, advertisers, distributers, and sellers of Zicam-branded products.

24.     Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®, Zicam® Elderberry Citrus RapidMelts®, Zicam® Wild Cherry Lozenges, and Zicam® Oral Mist™ contain the active ingredients zincum aceticum ("zinc acetate") and zincum gluconicum ("zinc gluconate").[10]

25.     Zicam® Nasal Swabs and Zicam® Nasal Spray do not contain zinc acetate or zinc gluconate.   Instead, the active ingredients in these two products are galphimia glauca, luffa operculata, and sabadilla.[11]

26.     Unlike traditional medicines, the Zicam Products are not approved by the FDA.  In fact, there are no FDA-approved products labeled as "homeopathic."[12]   Any product labeled as

---

[10] https://www.zicam.com/our-products/cold-shortening/rapid-melts-citrus/;
https://www.zicam.com/our-products/cold-shortening/wild-cherry-lozenges/;
https://www.zicam.com/our-products/cold-shortening/ultra-rapid-melts-orange-cream/;
https://www.zicam.com/our-products/cold-shortening/oral-mist-arctic-mint/; and
https://www.zicam.com/our-products/elderberry/rapid-melts-citrus-elderberry/. (last visited May 26, 2021).
[11] https://www.zicam.com/our-products/cold-shortening/nasal-swabs/;
https://www.zicam.com/our-products/cold-shortening/nasal-spray/. (last visited May 26, 2021).
[12] https://www.fda.gov/drugs/information-drug-class/homeopathic-products (last visited May 26,

8

"homeopathic" in the United States has not been evaluated by the FDA for safety or effectiveness to diagnose, treat, cure, prevent or mitigate any diseases or conditions.[13]

27.     The front of the packaging and labels for each of the Zicam Products includes the word "homeopathic."

28.     Additionally, the front of the packaging and labels for each of the Zicam Products includes the claim that the Products are "clinically proven to shorten colds."  This Clinically Proven Claim is consistently and prominently presented in a bold, all-caps font on the front of each Zicam Product in order to capture the attention of trusting consumers.  As seen below, the majority of the Zicam Products place the Claim in white text on a blue banner that ensures it pops and catches the eye, so it cannot be missed by consumers.  The two Products that do not feature this banner treatment (Zicam® Nasal Swabs and Zicam® Nasal Spray) emphasize the Clinically Proven Claim by highlighting the words "clinically proven" in yellow and increasing the font size of these two words in comparison to the surrounding words.

2021).
[13] *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28








1
2
3
4
5
6
7
8
9
10
11



12  Above: Front of packaging for Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®,
Zicam® Elderberry Citrus RapidMelts®, Zicam® Wild Cherry Lozenges, Zicam® Oral Mist™,
13  Zicam® Nasal Swabs, and Zicam® Nasal Spray, respectively, each of which prominently features
the Claim.
14

15          29.     Defendants' website expands on the Clinically Proven Claim, stating that, "[o]ur

16  homeopathic Zicam® Cold Remedy products are clinically proven to shorten colds when taken at

17  the first sign, so you can get back to the fun stuff faster."[14]  Defendants also state on their website

18  that "Zicam® is clinically proven to shorten colds.  Don't just treat the symptoms of a cold, shorten

19  your cold with Zicam® Cold Remedy."[15]  These representations are followed by a tiny asterisk,

20
which references an equally tiny footnote vaguely stating, "For zinc cold remedies and homeopathic
21
cold products."  At the bottom of their webpage, Defendants include the following representations:
22

23          •  Clinical results have been shown for Zicam® Cold Remedy RapidMelts®, ULTRA
               RapidMelts®, ULTRA Crystals, Medicated Fruit Drops, Lozenges, Oral Mist™,
24             Nasal Spray and Nasal Swabs;

25          •  These statements are based upon traditional homeopathic practice; and

26

27

28  ───────────────
[14] https://www.zicam.com/our-products/cold-shortening/ (last visited May 26, 2021).
[15] *Id.*

- Claims based on traditional homeopathic practice, not accepted medical evidence. Not FDA evaluated.[16]

30.     The misrepresentations and omissions identified in this complaint are virtually identical across all of the Zicam Products, and the Clinically Proven Claim that forms the basis of this action is the same for each Product.  In other words, the means of deception is uniform for all of the Zicam Products.

31.     Defendants' representations are designed to induce consumers to believe that the Zicam Products have been scientifically evaluated and proven to shorten the duration of the common cold.  This representation is material to consumers and the primary factor motivating consumer purchases of the Zicam Products.

32.     Defendants' representations on their packaging and website convey to reasonable consumers – and reasonable consumers would believe – that the state of the science regarding the Zicam Products and their ingredients have reached a level of scientific consensus such that Defendants' claim that the Products are "clinically proven to shorten colds" is an established truth and statement of fact.

33.     It is reasonable for consumers to rely upon Defendants' representations concerning the Zicam Products when deciding to purchase the Products.  The one and only reason that consumers purchase the Zicam Products is the desire to receive the advertised benefit of shortening the duration of a cold.

34.     Defendants' representations concerning the Zicam Products being "clinically proven to shorten colds" were developed with the intent to generate sales of the Products and capture a substantial percentage of the cold remedy market.

---

[16] *Id*. Notably, Zicam ULTRA Crystals and Medicated Fruit Drops are not at issue in this action.

35.    Defendants have made uniform, express, and implied representations concerning the Zicam Products, including that each Product has been "clinically proven to shorten colds." This representation pervades Defendants' labeling and marketing of the Zicam Products.

36.    Unfortunately for consumers, there is no valid scientific evidence supporting Defendants' bold claim that the Zicam Products have been "clinically proven to shorten colds." Defendants fail to disclose any valid clinical testing citations or results on the Product packaging, their websites, and in marketing and advertising.  The only logical conclusion drawn from this complete absence of citations to adequate scientific support is that the Zicam Products are not clinically proven to shorten colds.  In fact, as discussed herein, Defendants' citations to the Cochrane Review and NIH Review confirm that the Zicam Products are *not clinically proven to shorten colds.*

37.    In fact, recent studies, which Defendants fail to include on their website, have indicated that use of over-the-counter cold remedies containing zinc, including zinc acetate lozenges, do not shorten the duration of the common cold.[17]  In 2019, a randomized, double-blinded, placebo-controlled trial conducted in Finland determined that "[t]here was no difference in the recovery rate between zinc and placebo participants during the 10-day follow-up."[18]  And while the "recovery rate for the two groups was similar during the 5-day intervention," for 2 days after the end of zinc and placebo use, "the zinc participants recovered significantly *slower* compared with the placebo participants…"[19]  The study concluded that "[a] commercially available zinc acetate lozenge was not effective in treating the common cold when instructed to be used for 5 days after the first symptoms."[20]

---

[17] https://bmjopen.bmj.com/content/10/1/e031662 (last visited May 26, 2021).
[18] *Id.*
[19] *Id* (emphasis added).
[20] *Id.*

38.     Defendants' use of the Clinically Proven Claim in connection with the Zicam® Nasal Swabs and Zicam® Nasal Spray is particularly egregious and offensive.  Both products were reformulated so as to not include zinc as an ingredient after the FDA issued a warning letter in June 2009 regarding these products due to hundreds of consumers having their sense of smell damaged by the products.[21]   Yet, Defendants have continued to market, advertise, and label Zicam® Nasal Swabs and Zicam® Nasal Spray as "clinically proven to shorten colds" despite the fact that the Clinically Proven Claim is based on a study of zinc, which has not been an ingredient in either product for several years.  It is a false and deceptive misrepresentation to claim that either product has been clinically proven to shorten colds when that Clinically Proven Claim is premised upon the study of an active ingredient that neither product includes.

39.     Further, since the Cochrane Review and NIH Review, upon which Defendants rely had uncertain results regarding the ability of zinc to shorten the duration of the common cold, and no testing has been performed specifically regarding the Zicam Products, there is no legitimate basis for Defendants' Clinically Proven Claim.  Nevertheless, Defendants consistently and uniformly use the Clinically Proven Claim as the cornerstone of their advertising, marketing, and labeling efforts across the entire Zicam Product line.  Defendants' continued use of the Clinically Proven Claim is fraudulent or, at a minimum, disturbingly misleading.

40.     To the extent that the Zicam Products have ever been specifically tested to determine whether they are capable of shortening colds, such testing and the results of such testing have never been disclosed to consumers or made accessible via publicly-available resources.  Plaintiff's counsel conducted a PubMed search for any studies relating to the Products.  PubMed is a database developed and maintained by the National Center for Biotechnology Information

---

[21] https://wayback.archiveit.org/7993/20170112195553/http://www.fda.gov/ICECI/EnforcementActions/ WarningLetters/ 2009/ucm166909.htm (last visited May 26, 2021).

("NCBI"), at the U.S. National Library of Medicine ("NLM"), located at the National Institute of Health and contains 32 million citations and abstracts of biomedical literature,[22]  Plaintiff's search resulted in only two peer-reviewed studies on the efficacy of the Zicam Products.  The first study was based upon a former formulation of the Products but, interestingly enough, also showed no effect on the duration of colds.[23]  The second study was based upon a nasal gel product containing zinc, which, as explained above, is no longer contained within the Zicam Nasal Products.[24]

## PLAINTIFF'S FACTUAL ALLEGATIONS

41.     After reviewing information about Zicam® Nasal Spray online and in-store via the Products' packaging and labels regarding it supposedly being "clinically proven to shorten colds," Plaintiff purchased Zicam® Nasal Spray at a drugstore in Daly City, California in or around 2019, and began using the Product.

42.     As a result of Defendants' material misrepresentations and omissions, Plaintiff purchased Zicam® Nasal Spray because she reasonably believed that it had been "clinically proven to shorten colds," as marketed, advertised, packaged, and labeled.  Plaintiff would not have purchased Zicam® Nasal Spray, or would have not paid as much for it, had she known that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no valid scientific support for the Clinically Proven Claim.

43.     Plaintiff had not previously purchased or used any Zicam Products.

44.     Plaintiff followed the instructions on the Zicam Product packaging, as directed by Defendants.

---

[22] *See* https://pubmed.ncbi.nlm.nih.gov/about/ (last visited June 9, 2021).
[23] Olenak. "OTC product: Zicam Cold and Flu Medicated Spoons. J Am Pharm Assoc (2003). Nov-Dec 2006;46(6).
[24] *See* https://pubmed.ncbi.nlm.nih.gov/11055098/ (last visited June 9, 2021).

45.     Plaintiff has an intention to purchase the Zicam Products in the future if the Zicam Products are truthfully labeled and not misleading, and are actually clinically proven to shorten colds.

**TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

46.     Defendants had actual knowledge for years that the Zicam Products are not clinically proven to shorten colds.

47.     Although Defendants were aware that the Clinically Proven Claim is false and deceptive, they took no steps to disclose the truth to Plaintiff or Class Members.

48.     Since at least 2009, Defendants knew that the reformulated Zicam® Nasal Swabs and Zicam® Nasal Spray did not contain zinc and, therefore, are not supported by any study or claim regarding the potential for zinc to shorten the duration of the common cold.

49.     Since at least 2011, when the original Cochrane Review was published, Defendants have known that the Zicam Products are not clinically proven to shorten colds.

50.     Despite their knowledge, Defendants have fraudulently concealed the fact that the Clinically Proven Claim is a misrepresentation and that Zicam Products have not been clinically proven to shorten colds.

51.     Defendants made affirmative misrepresentations to consumers during the sales of the Zicam Products.

52.     Defendants concealed material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Zicam Products. Defendants' concealment was knowing, and they intended to deceive Plaintiff and Class Members to rely upon their misrepresentations and concealment.  Accordingly, Plaintiff and Class Members reasonably relied upon Defendants' misrepresentations and concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

53.     The falsity of the Claim was not reasonably detectible by Plaintiff and Class Members.

54.     Defendants actively and intentionally concealed the falsity of the Claim and failed to inform Plaintiff or Class Members of its falsity at all times.  Accordingly, Plaintiff and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

55.     Defendants' statements, words, and acts were made for the purpose of suppressing the truth that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the claim that the Zicam Products are "clinically proven to shorten colds."

56.     Defendants concealed the falsity of the Clinically Proven Claim for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

57.     As a result of Defendants' active concealment of the truth and/or failure to inform Plaintiff and Class Members of the falsity of the Clinically Proven Claim, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.  Furthermore, Defendants are estopped from relying on any statutes of limitations in light of their active concealment of the falsity of the Clinically Proven Claim.

58.     Further, the causes of action alleged herein did not occur until Plaintiff and Class Members discovered that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the claim that the Zicam Products are "clinically proven to shorten colds."  Plaintiff and Class Members had no realistic ability to determine the falsity of the Clinically Proven Claim.  In either event, Plaintiff and Class Members were hampered in their ability to discover their causes of action because of Defendants' misrepresentations and active concealment of the fact that the Clinically Proven Claim is unsubstantiated by any scientific evidence.

## FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

59.     Although Defendants are in the best position to know what content they placed on the Product packaging and labels, in advertising and marketing materials, and on their website(s) during the relevant timeframe, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

60.     **WHO**:  Defendants made material misrepresentations and/or omissions of fact through their Product packaging and labeling, advertising and marketing, website representations, and warranties, all of which include the Clinically Proven Claim that the Zicam Products are "clinically proven to shorten colds."

61.     **WHAT**:  Defendants' conduct here was, and continues to be, fraudulent because they omitted and concealed that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the claim that the Zicam Products are "clinically proven to shorten colds."  Further, Defendants' conduct deceived Plaintiff and Class Members into believing that the Zicam Products have actually been "clinically proven to shorten colds."  Defendants knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet they omit any disclosure of the fact that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Clinically Proven Claim that the Zicam Products are "clinically proven to shorten colds."  To the extent that the Zicam Products have ever been specifically tested to determine whether or not they are capable of shortening colds, such testing and the results of such testing have never been disclosed to consumers or made accessible via publicly-available resources.

62.    **WHEN**:  The material misrepresentations and/or omissions detailed herein were made prior to and available at the time Plaintiff and Class Members surveyed the field of available cold remedies in order to gather information that would aid them in selecting the best product, prior to and at the time Plaintiff and Class Members purchased the Zicam Products, and continuously throughout the applicable class period.

63.    **WHERE**:  Defendants' material misrepresentations and/or omissions were made on the Product packaging and labels, in advertising and marketing materials, and on their website(s).

64.    **HOW**:  Defendants made misrepresentations and/or failed to disclose material facts regarding the fact that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the claim that the Zicam Products are "clinically proven to shorten colds" in written form, electronic form, or conventional hardcopy form.

65.    **WHY**:  Defendants made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Zicam Products, the effect of which was that Defendants profited by selling the Zicam Products to many hundreds of thousands of consumers.

66.    **INJURY**:  Plaintiff and Class Members purchased or paid more for the Zicam Products when they otherwise would not have absent Defendants' misrepresentations and/or omissions.  Further, the Zicam Products continue to be sold via material misrepresentations and/or omissions on the Product packaging and labels, in advertising and marketing materials, and on Defendants' website(s), causing additional consumers to purchase the Products for more than they would be willing to pay if they knew that the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the claim that the Zicam Products are "clinically proven to shorten colds."

### CLASS ACTION ALLEGATIONS

67.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3).  Plaintiff brings this action on behalf of a proposed class, defined as follows:

> During the fullest period allowed by law, all California purchasers of Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®, Zicam® Elderberry Citrus RapidMelts®, Zicam® Nasal Swabs, Zicam® Nasal Spray, Zicam® Wild Cherry Lozenges, and/or Zicam® Oral Mist™ (the "Class").

68.     Excluded from the Class are (a) any person who purchased the Zicam Products for resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

69.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

70.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  Class Members are so numerous and geographically dispersed throughout the state of California that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members.  Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

71.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to all Class Members

and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

    a.  Whether the Zicam Products have been clinically tested;

    b.  Whether any clinical test has proven that the Zicam Products shorten colds;

    c.  Whether Defendants' packaging, labeling, marketing, advertising, and/or other promotional materials for the Zicam Products are deceptive, unfair, or misleading;

    d.  Whether Defendants' acts, omissions, or misrepresentations of material facts violate California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

    e.  Whether Defendants' acts, omissions, or misrepresentations of material facts violate California's Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;

    f.  Whether Defendants' acts, omissions, or misrepresentations of material facts violate California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

    g.  Whether Defendants breached express warranties in connection with the Products;

    h.  Whether Defendants breached implied warranties in connection with the Products;

    i.  Whether Defendants' acts, omissions, or misrepresentations of material facts constitute fraud;

    j.  Whether Defendants' acts, omissions, or misrepresentations of material facts constitute a breach of contract or common law warranty;

    k.  Whether Plaintiff and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of Defendants' acts, omissions or misrepresentations of material facts;

    l.  Whether Plaintiff and putative Class Members are entitled to monetary damages and, if so, the nature of such relief; and

    m.  Whether Plaintiff and putative Class Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

72.    Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class as a whole.   In particular,

Defendants have manufactured, packaged, labeled, marketed, advertised, distributed and sold the Zicam Products, which are deceptively misrepresented as "clinically proven to shorten colds."

73.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the claims of the Class Members, as each putative Class Member was subject to the same uniform deceptive misrepresentation regarding the claim that the Zicam Products have been "clinically proven to shorten colds."  Plaintiff shares the aforementioned facts and legal claims or questions with putative Class Members, and Plaintiff and all putative Class Members have been similarly affected by Defendants' common course of conduct alleged herein. Plaintiff and all putative Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' deceptive misrepresentations regarding the false claim that the Zicam Products have been "clinically proven to shorten colds," as alleged herein.

74.     **Adequacy – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff will fairly and adequately represent and protect the interests of the putative Class.

75.     Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation.  Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action.  Plaintiff does not have any conflicts of interest or interests adverse to those of putative Class Members.

76.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to

protect their interests, while establishing incompatible standards of conduct for Defendants. Accordingly, the proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

77.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class Members as a whole.  In addition, Plaintiff has an intention to purchase the Zicam Products in the future if they are truthfully labeled and not misleading, and are actually clinically proven to shorten colds.

78.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a.    The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

    b.    Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

    c.    The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

    d.    Individual joinder of all putative Class Members is impracticable;

    e.    Absent a Class, Plaintiff and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

    f.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and putative Class Members can seek redress for the harm caused by Defendants.

79.    In the alternative, the Class may be certified for the following reasons:

    a.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

b.  Adjudications of individual Class Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

c.  Defendants have acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

**COUNT I**
**Violation of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiff and the Class)**

80.  Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth herein.

81.  Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

82.  Plaintiff, Class Members, and Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

83.  Defendants are subject to California's UCL, Cal Bus. Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising..."

84.  Defendants' business practices, described above, violated the "unlawful" prong of the UCL.  Because Defendants' representations about the Zicam Products were false and misleading, Defendants have committed unlawful business practices by violating California's Sherman Food, Drug and Cosmetic Law. Cal. Health & Safety Code §§ 109875, *et seq.*, and the Food Drug and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.*

85.  Defendants violated the "unfair" prong of the UCL by making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts

regarding the Zicam Products on the packaging and labels and on their website, as set forth above. There is no societal benefit from false advertising—only harm.

86.     Plaintiff and Class Members paid for valueless Products that are not capable of conferring the benefits promised.  While Plaintiff and Class Members were harmed, Defendants were unjustly enriched by their false representations and omissions.  As a result, Defendants' conduct is "unfair," as it offended an established public policy.  Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

87.     Further, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California, resulting in harm to consumers.  Defendants' acts and omissions violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of the Business & Professions Code §§ 17200, *et seq*.

88.     Defendants violated the fraudulent prong of the UCL by, among other things, making the false representations and omissions of material facts regarding the Zicam Products in their uniform advertising, including the packaging and labeling, as set forth more fully herein.  In fact, the Zicam Products are not "clinically proven to shorten colds," as falsely claimed and promised by Defendants.

89.     Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were false, misleading, and/or likely to deceive the consuming public within the meaning of Business & Professions Code §§ 17200, *et seq*.

90.     Plaintiff and Class Members have, in fact, been deceived as a result of their reliance on Defendants' material misrepresentations and omissions, which are described above.  Plaintiff and the Class acted reasonably when they purchased Zicam Products based on their belief that Defendants' representations were true and lawful.

91.     Plaintiff and Class Members have suffered injury in fact and lost money as a result of their purchases of Defendants' Zicam Products and Defendants' unlawful, unfair, and fraudulent practices.

92.     Defendants knew, or should have known, that they have no scientific evidence for their claims of clinical proof as set forth above.  Defendants further knew, or should have known, that their material misrepresentations and omissions would be likely to deceive and harm the consuming public and result in consumers making payments to Defendants for Zicam Products, which are valueless and not "clinically proven to shorten colds."

93.     As a result of their deception, Defendants were unjustly enriched by receiving payments from Plaintiff and the Class for Zicam Products which cannot perform as advertised and when there is no scientific or clinical evidence to support Defendants' claims of being "clinically proven."

94.     Unless restrained and enjoined, Defendants will continue to engage in the unlawful, unfair, and fraudulent conduct described herein.  Accordingly, injunctive relief is appropriate. Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, seeks restitution from Defendants of all money obtained from Plaintiff and Class Members collected as a result of Defendants' unfair competition, an injunction prohibiting Defendants from continuing and further engaging in their unlawful, unfair, and fraudulent conduct, requiring corrective advertising, and awarding all other relief this Court deems appropriate.

## COUNT II
### Violation of the California Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq.*
### (On behalf of Plaintiff and the Class)

95.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth herein.

96.     Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

97.     Plaintiff and Class Members are consumers who purchased Zicam Products for personal, family, or household purposes. Plaintiff and the Class have been at all relevant times "consumers" within the meaning of the CLRA, Cal. Civ. Code § 1761(a), (c), and (d).

98.     Defendants are "persons" and Zicam Products are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a), (c), and (d).

99.     Defendants' sale and advertisement of Zicam Products constitute "transactions" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

100.    The CLRA declares as unlawful the following unfair methods of competition and unfair or deceptive acts or practices when undertaken by any person in a transaction intended to result, or which results in the sale of goods to any consumer:

a.  "Representing that goods . . . have . . . approval, characteristics, . . . uses [and] benefits... which [they do] not have..." Cal. Civ. Code § 1770(a)(5).

b.  "Representing that goods... are of a particular standard, quality or grade... if they are of another." *Id*. (a)(7).

c.  "Advertising goods . . . with intent not to sell them as advertised." *Id*. (a)(9).

d.  "Representing that [goods] have been supplied in accordance with a previous representation when [they have] not." *Id*. (a)(16).

101.    Defendants violated and continue to violate the CLRA by engaging in the practices prohibited by Cal. Civ. Code § 1770(a)(5), (7), (9), and (16), which were intended to result in, and did result in, the sale of Zicam Products.

102.    Defendants' foregoing acts and practices, including their deceptive and fraudulent misrepresentations and omissions in the conduct of trade or commerce, were directed at consumers, including Plaintiff and Class Members.

27

103.    Defendants' violations of the CLRA proximately caused injury in fact to Plaintiff and the Class.

104.    Plaintiff and Class Members purchased Defendants' Zicam Products on the belief that they would receive the advertised benefit of shortening the duration of the common cold. Indeed, no consumer would purchase Zicam Products unless he or she believed it was capable of providing the advertised benefit of shortening the duration of the common cold.

105.    The Zicam Products, however, are worthless and cannot provide the advertised benefit.  Because the Zicam Products lack any value, Plaintiff and each Class Member was injured by the mere fact of their purchase.

106.    Plaintiff and Class Members were harmed and suffered actual damages as a result of Defendants' conduct described herein.  Had Defendants not misrepresented through uniform advertising, packaging, labeling, and on their websites that the Zicam Products are "clinically proven to shorten colds" when, in fact, they are not, Plaintiff and the Class would not have purchased them.  Plaintiff and Class Members have thus suffered injury in fact, including the loss of money or property, as a result of the conduct of Defendants, as described in this complaint.

107.    Plaintiff and Class Members seek monetary relief against Defendants measured as the greater of actual damages, in an amount to be determined at trial, or statutory damages.

108.    Plaintiff and Class Members also seek a Court order enjoining the above-described wrongful acts and practices of Defendants pursuant to Cal. Civ. Code § 1782(d).

109.    Pursuant to Cal. Civ. Code 1782(a), on April 9, 2021, Plaintiff provided written notices to Defendants demanding corrective actions, which were accepted by Defendants on April 12, 2021.  Defendants have failed to comply with Plaintiff's CLRA notices within 30 days.

110.    All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.  Defendants' wrongful conduct is part of a pattern of a generalized course of conduct that is still perpetuated and repeated throughout California.

28

111.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unlawful practices.

**<u>COUNT III</u>**
**Violation of the California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(On behalf of Plaintiff and the Class)**

112.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth herein.

113.    Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

114.    The FAL, in relevant part, states that "[i]t is unlawful for ... any corporation ... with intent ... to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper, or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"  Cal. Bus. & Prof. Code, § 17500.

115.    The required intent is the intent to dispose of property, not the intent to mislead the public in the disposition of such property.

116.    Defendants violated the FAL by making the untrue or misleading representations described above, including that the Zicam Products have been "clinically proven to shorten colds" when, in reality, there is no scientific and clinical proof of the Zicam Products' advertised benefits.

117.    As a direct and proximate result of Defendants' untrue and misleading advertising, Plaintiff and Class Members have suffered injury in fact and have lost money.

118.     Accordingly, Plaintiff requests that the Court order Defendants to restore the money that Defendants have received from Plaintiff and Class Members, and that the Court enjoin Defendants from continuing their unlawful practices, and engage in corrective advertising.

**COUNT IV**
**Breach of Express Warranty**
**Cal. Com. Code §§ 2313, *et seq.***
**(On behalf of Plaintiff and the Class)**

119.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth herein.

120.     Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

121.     Plaintiff and Class Members purchased the Zicam Products through retailers such as Walgreens, CVS, Duane Reed, Target, and Walmart, among others.

122.     Defendants are and were at all relevant times sellers under Cal. Comm. Code § 2313.

123.     Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers expressly warranted that the Zicam Products were fit for their intended purpose by expressly warranting that the Products were "clinically proven to shorten colds."

124.     Defendants made the foregoing express representation and warranty to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Defendants.

125.     In fact, the Zicam Products are not fit for such purpose because the express warranty is a false, deceptive, and misleading misrepresentation.

126.     Defendants breach their warranty and/or contract obligations by placing the Zicam Products into the stream of commerce and selling them to consumers, when the Products have never been clinically tested to determine whether they impact the duration of the common cold, and there

30

is no scientific support for the claim that the Zicam Products are "clinically proven to shorten colds."  The fact that the Zicam Products have not actually been clinically tested in this capacity and that there is no scientific evidence supporting Defendants' Clinically Proven Claim renders the Products unfit for their intended use and purpose, and substantially and/or completely impairs the use and value of the Products.

127.    The warranty that the Zicam Products were "clinically proven to shorten colds" was false when the Products left Defendants' possession or control and were sold to Plaintiff and Class Members.  The fact that the Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the Clinically Proven Claim was not discoverable by Plaintiff and Class Members at the time of their purchases of the Zicam Products.

128.    Defendants were provided reasonable notice of the aforementioned breaches of the above-described warranties via the aforementioned notice letters dated April 9, 2021, which were accepted by Defendants on April 12, 2021.

129.    Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Zicam Products if they had known the truth about the Products.

**COUNT V**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiff and the Class)**

130.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 79 as if fully set forth herein.

131.    Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

132.    Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers of the Zicam Products, impliedly warranted that the Products were "clinically proven to shorten colds."

133.    Defendants, through their acts and omissions set forth herein, in their sale, marketing, and promotion of the Zicam Products, made implied representations to Plaintiff and Class Members that their Products had been clinically tested and proven to shorten colds when, in fact, the Products have never been clinically tested to determine whether they impact the duration of the common cold, and there is no scientific support for this Clinically Proven Claim.

134.    Because the Zicam Products have never been clinically tested to determine whether or not they impact the duration of the common cold, the Products are mislabeled, not in accord with Defendants' representations and, therefore, not useful for their ordinary purpose of shortening the duration of the common cold.   The Zicam Products do not conform with the promises that Defendants placed on their packaging and labels.

135.    Defendants breached their implied warranties because the Zicam Products have never been clinically tested to determine whether or not they impact the duration of the common cold.  As a result of Defendants' conduct, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendants to be merchantable or fit for the intended purpose for which they were sold.

136.    As a proximate result of Defendants' above-described breach of implied warranty, Plaintiff and Class Members have sustained damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated Class Members, prays for relief and judgment, including entry of an order:

A.    Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B.      Directing that Defendants bear the costs of any notice sent to the Class;

C.      Awarding Plaintiff and Class Members actual damages, restitution, and/or disgorgement;

D.      Awarding Plaintiff and Class Members statutory damages, as provided by the applicable state consumer protection statutes invoked above;

E.      Enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

F.      Awarding Plaintiff and Class Members restitution of the funds that unjustly enriched Defendants at the expense of Plaintiff and Class Members;

G.      Awarding Plaintiff and Class Members pre- and post-judgment interest;

H.      Awarding attorneys' fees and litigation costs to Plaintiff and Class Members; and

I.      Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this complaint so triable.


Dated: June 10, 2021                          Respectfully submitted,

                                              **MILBERG COLEMAN BRYSON
                                              PHILLIPS GROSSMAN, PLLC**

                                              */s/ Alex R. Straus*
                                              Alex R. Straus (SBN 321366)
                                              280 Beverly Hills Drive
                                              Penthouse
                                              Beverly Hills, CA 90212
                                              astraus@milberg.com

                                              **MILBERG COLEMAN BRYSON
                                              PHILLIPS GROSSMAN, PLLC**
                                              Rachel L. Soffin*
                                              Jonathan B. Cohen*

33

800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
rsoffin@milberg.com
jcohen@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Dan Bryson**
Sarah Spangenburg**
900 W. Morgan Street
Raleigh, NC 27603
T: (919) 600-5000
F: (919) 600-5035
dbryson@milberg.com
sspangenburg@milberg.com

**BARBAT MANSOUR SUCIU & TOMINA PLLC**
Nick Suciu III**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
nicksuciu@bmslawyers.com

* *pro hac vice* admission

** *pro hac vice* forthcoming

*Attorneys for Plaintiff and the Class*