Bart H. Williams (SBN 134009)
Jennifer L. Jones (SBN 284624)
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
bwilliams@proskauer.com
jljones@proskauer.com

Baldassare Vinti*
Jeffrey H. Warshafsky*
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
bvinti@proskauer.com
jwarshafsky@proskauer.com

*Admitted *Pro Hac Vice*

Attorneys for
Church & Dwight Co., Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| VENUS YAMASAKI, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ZICAM, LLC and MATRIXX INITIATIVES, INC.,<br><br>Defendants. | Case No. 4:21-cv-02596-HSG<br><br>**CHURCH & DWIGHT CO., INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 19, 2021<br>Time: 2:00 PM<br>Courtroom: 2, 4th Floor<br>Before: Hon. Haywood S. Gilliam, Jr. |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 19, 2021 at 2:00 p.m., or as soon thereafter as the motion may be heard in the courtroom of the Honorable Haywood S. Gilliam, Jr., Courtroom 2, located on the 4th Floor of 1301 Clay Street, Oakland, CA 94612, Church & Dwight Co., Inc. will and hereby does move to dismiss Plaintiff Venus Yamasaki's Amended Complaint pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

The motion is based on this notice and motion, the attached memorandum of points and authorities, the Complaint and Amended Complaint, Rules 8(a), 9(b), 12(b)(1) and 12(b)(6), and upon such argument as the Court may allow and other matters as the Court deems proper.

DATED: July 14, 2021

Respectfully Submitted,

**PROSKAUER ROSE LLP**

By:   /s/   *Baldassare Vinti*

Bart H. Williams (SBN 134009)
Jennifer L. Jones (SBN 284624)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone:  (310) 557-2900
Facsimile:  (310) 557-2193
bwilliams@proskauer.com
jljones@proskauer.com

Baldassare Vinti*
Jeffrey H. Warshafsky*
11 Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
bvinti@proskauer.com
jwarshafsky@proskauer.com

*Admitted *Pro Hac Vice*

*Attorneys for Church & Dwight Co., Inc.*

**Table of Contents**

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     STATEMENT OF FACTS ...................................................................... 3

      A.     The Zicam Cold Remedy Products ................................................ 3

      B.     Plaintiff Buys Zicam Nasal Spray, Uses It Without Issue, and Then Sues Zicam for False Advertising Years Later ................................. 4

      C.     The Zinc Studies Referenced in the Amended Complaint Tested Different Products from the Non-Zinc Nasal Spray that Plaintiff Purchased ....................................................................................... 6

III.    ARGUMENT ........................................................................................ 7

      A.     The Amended Complaint Should Be Dismissed under Rule 12(b)(6) ...................... 7

            1.     Rule 12(b)(6) Standard ...................................................... 7

            2.     Plaintiff's Lack-of-Substantiation Claim Against Zicam Fails as a Matter of Law ....................................................... 7

            3.     Plaintiff's Breach of Warranty Claims Independently Fail ...................... 13

      B.     The Amended Complaint Should Be Dismissed Under Rule 12(b)(1) ................... 14

            1.     Rule 12(b)(1) Standard ...................................................... 14

            2.     Plaintiff Lacks Standing to Assert Claims Based on Products She Did Not Buy ................................................................ 14

            3.     Plaintiff Lacks Standing to Sue for Injunctive Relief ................................ 15

      C.     The Amended Complaint Should Be Dismissed with Prejudice ........................... 16

IV.    CONCLUSION ..................................................................................... 17

# Table of Authorities

PAGE

**CASES**

*Aloudi v. Intramedic Rsch. Grp., LLC,*
2015 WL 4148381 (N.D. Cal. July 9, 2015)................................................................8, 12

*Aloudi v. Intramedic Rsch. Grp., LLC,*
2016 WL 1569981 (N.D. Cal. Apr. 19, 2016) ...................................................................9

*Aloudi v. Intramedic Rsch. Grp., LLC,*
729 F. App'x 514 (9th Cir. 2017) .....................................................................................9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)......................................................................................................7, 11

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988) .............................................................................................7

*Bates v. UPS,*
511 F.3d 974 (9th Cir. 2007) ...........................................................................................14

*Bell Atl. v. Twombly,*
550 U.S. 544 (2007)......................................................................................................7, 11

*Birdsong v. Apple, Inc.,*
590 F.3d 955 (9th Cir. 2009) ...........................................................................................14

*Bitton v. Gencor Nutrientes, Inc.,*
654 F. App'x 358 (9th Cir. 2016) ....................................................................................13

*Carvalho v. Equifax Info. Servs., LLC,*
629 F.3d 876 (9th Cir. 2010) ...........................................................................................16

*Clevenger v. Welch Foods, Inc.,*
501 F. Supp. 3d 875 (C.D. Cal. 2020) .............................................................................15

*Davidson v. Kimberly-Clark Corp.,*
889 F.3d 956 (9th Cir. 2018) ...........................................................................................15

*Dysthe v. Basic Rsch. LLC,*
2011 WL 5868307 (C.D. Cal. June 13, 2011) .................................................................15

*Eclectic Props. E. v. Marcus & Millichap,*
751 F.3d 990 (9th Cir. 2014) .............................................................................................7

*Engel v. Novex Biotech LLC,*
689 F. App'x 510 (9th Cir. 2017) ...............................................................................11, 12

ii

*Friends of the Earth v. Laidlaw Env't. Servs. (TOC)*,
    528 U.S. 167 (2000)............................................................................................14

*Kearns v. Ford Motor*,
    567 F.3d 1120 (9th Cir. 2009) ..........................................................................7

*Kwan v. Sanmedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) ..........................................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................14

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
    107 Cal. App. 4th 1336 (2003) ...............................................................3, 8, 10

*Padilla v. Whitewave Foods Co.*,
    2019 WL 4640399 (C.D. Cal. July 26, 2019) .................................................14

*Racies v. Quincy Bioscience, LLC*,
    2015 WL 2398268 (N.D. Cal. May 29, 2015) ............................................9, 10

*Rahman v. Mott's LLP*,
    2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ...............................................15

*Rivera v. NIBCO, Inc*,
    364 F.3d 1057, 1072 (9th Cir. 2004) ..............................................................16

*Tubbs v. AdvoCare Int'l, LP*,
    2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) .......................................9, 12, 13

*Webb v. Trader Joe's Co.*,
    999 F.3d 1196 (9th Cir. 2021) ........................................................................16

iii

Church & Dwight Co., Inc., the successor to Defendants Zicam LLC and Matrixx Initiatives, Inc., submits this Memorandum of Points and Authorities on behalf of all Defendants (collectively, "Zicam") in support of their motion to dismiss the Amended Complaint ("AC") of Plaintiff Venus Yamasaki under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    PRELIMINARY STATEMENT

This case stems from Plaintiff's purported purchase of Zicam Nasal Spray from a California drugstore, supposedly relying on Zicam's advertising statement that the product is "clinically proven" to shorten colds when taken at the first sign of a cold.  That statement is true: Zicam has proprietary clinical studies demonstrating that its cold remedy products, including Zicam Nasal Spray, shorten colds.  Indeed, Plaintiff does *not* allege Zicam Nasal Spray failed to shorten her cold or that she was dissatisfied with it in any way when she used it.  Critically, with respect to the only Zicam product that Plaintiff purchased—the Zicam Nasal Spray—the Amended Complaint is devoid of any study, testing or other evidence whatsoever concerning that non-zinc, plant-based product.  Yet Plaintiff is suing Zicam because she contends (incorrectly and with no plausible basis) that Zicam has no clinical proof that this product, and other Zicam products Plaintiff never purchased that contain zinc, shorten colds.  In reality, however, it is Plaintiff that comes to Court empty handed with no testing or plausible evidence supporting her allegations.

In the Amended Complaint, Plaintiff lumps Zicam's cold remedy products together.  But there are actually two vastly different Zicam cold remedy product lines: (1) those that contain a formulation of plant-based active ingredients but do not contain zinc, and (2) those that contain a zinc formulation as the active ingredient.  The Zicam Nasal Spray that Plaintiff purportedly purchased (as well as Zicam's nasal swab product) fall into the first category as they contain the active ingredients galphimia glauca, luffa operculata and sabadilla. Zicam's orally ingested lozenges, tablets and mists fall into the second category as they contain the active ingredients zinc acetate and zinc gluconate.  Even though Plaintiff bought a non-zinc product—again, Zicam Nasal Spray—she (improperly) seeks to represent a class of California purchasers of *all* Zicam cold remedy products, including those that have the zinc formulation.

1

With no testing of Zicam's Nasal Product (or any other Zicam product), the Amended Complaint engages in prolix discussion about studies performed on *non-Zicam zinc* lozenge formulations. Those studies have nothing to do with the *non*-zinc active ingredients in the Zicam Nasal Spray that Plaintiff allegedly bought and used. But even as to Zicam's zinc products, which Plaintiff did not purchase and on which she has no standing to sue, those studies did not test the zinc formulation in the Zicam non-nasal products and do not support Plaintiff's argument that the "clinically proven" claim is unsupported. Plaintiff uses the zinc studies to obscure that her suit is based on the impermissible legal theory that Zicam has "no adequate scientific evidence" for its "clinically proven" statements. AC ¶ 5. As noted, Plaintiff is wrong about that because Zicam *does* possess clinical studies demonstrating its products shorten colds. But what matters for present purposes is that Plaintiff cannot challenge Zicam's advertising on a lack-of-substantiation basis.

As the Ninth Circuit explained in its precedential decision in *Kwan v. Sanmedica Int'l*, and as this Court recognized in *Aloudi v. Intramedic Research Group* and *Racies v. Quincy Bioscience*, private litigants cannot challenge advertising on the theory that the advertiser lacks substantiation. As each of those decisions recognized, California's bar on such claims extends to advertising statements that a product is "clinically proven" or "clinically tested." Thus, the Court should dismiss this improper lack-of-substantiation case in its entirety.

To try to avoid that outcome, and contrary to established law, Plaintiff asks the Court to *infer*, erroneously, that Zicam's advertising is affirmatively false, not merely unsubstantiated: "Defendants fail to disclose any valid clinical testing citations or results on the Product packaging, their websites, and in marketing and advertising," so "[t]he only logical conclusion . . . is that the Zicam Products are not clinically proven to shorten colds." AC ¶ 36. Put differently, Plaintiff assumes that Zicam is lying about its clinical proof merely because Zicam's studies are non-public. That assumption, aside from being wrong, defies common sense and thus is entitled to no weight at this stage. Companies have countless legitimate reasons to keep internal studies confidential, including protecting trade secrets from competitors.

2

Merely pointing to a lack of *published* clinical studies is not enough to state a false advertising claim. Otherwise, advertisers would have to choose between making their confidential studies public or else face "undue harassment" by private litigants, which is precisely what California sought to prevent by barring private lack-of-substantiation claims. *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1345 (2003). The Court should therefore reject Plaintiff's flawed logic, and her bid to upend settled law, and dismiss ***all*** of the Amended Complaint's claims.

Moreover, Plaintiff also lacks standing to sue Zicam in two respects. First, she has no standing to sue on zinc-based products because Zicam Nasal Spray (which does not contain zinc) is the sole Zicam cold remedy product she bought, and Plaintiff concedes it is materially different from other non-purchased Zicam products with zinc. Second, Plaintiff lacks standing to sue for injunctive relief. While Plaintiff's assertion that Zicam's clinical studies do not exist is wrong, now that she "knows" about Zicam's purported "false advertising" there is no way she can be deceived by it again.

For all of these reasons, the Court should dismiss this case as a matter of law. Indeed, the dismissal should be with prejudice because another amendment would be futile. Plaintiff concedes she does not actually know about Zicam's proprietary clinical studies and, more importantly, concedes that she has no testing or study involving the Zicam Nasal Spray she purchased (or the formulation of any other Zicam product referenced in the Amended Complaint). Therefore, Plaintiff has not plausibly alleged that Zicam's "clinically proven" statements are false. All she alleges is that the statements lack substantiation, but that does not state a claim for relief. In addition, Plaintiff already amended her complaint after Zicam explained the fundamental flaw in her theory of the case and she did not (and could not) remedy that defect in light of binding Ninth Circuit law.

## II.  STATEMENT OF FACTS

### A.  The Zicam Cold Remedy Products

Zicam markets a line of cold remedy products with labels that say "CLINICALLY PROVEN TO SHORTEN COLDS." AC ¶ 28. The labels also prominently tell consumers that

3

Zicam products should be "TAKE[N] AT THE FIRST SIGN OF A COLD." *Id.* Despite only having bought Zicam Nasal Spray, Plaintiff is suing Zicam on all of its cold remedy products, which also include Zicam Nasal Swabs, Zicam Original RapidMelts, Zicam ULTRA RapidMelts, Zicam Elderberry Citrus RapidMelts, Zicam Wild Cherry Lozenges, and Zicam Oral Mist. *Id.* ¶¶ 1-2.

The Zicam Nasal Spray and Zicam Nasal Swab are nasally applied[1] and contain plant-based galphimia glauca, luffa operculata and sabadilla as the active ingredients; they do not contain zinc. *Id.* ¶ 25. In contrast, the Zicam Original RapidMelts, Zicam ULTRA RapidMelts, Zicam Elderberry Citrus RapidMelts, Zicam Wild Cherry Lozenges, and Zicam Oral Mist products (collectively, the "Zicam Zinc Products")[2] are orally ingested and contain both zinc acetate and zinc gluconate as active ingredients. *Id.* ¶ 24.

B.      **Plaintiff Buys Zicam Nasal Spray, Uses It Without Issue, and Then Sues Zicam for False Advertising Years Later**

Plaintiff alleges she bought Zicam Nasal Spray from a drugstore "in or around 2019." *Id.* ¶ 41. That is the only Zicam product Plaintiff alleges she bought. *Id.* ¶¶ 41-43. Plaintiff claims she bought Zicam Nasal Spray because she saw the "clinically proven" statement on the product's label and understood this meant clinical testing had shown it shortens colds. *Id.* ¶¶ 41-42. Plaintiff also claims to have reviewed "information" about Zicam Nasal Spray "online" (*id.* ¶ 41) but does not provide any specifics about what she read or where.

After buying Zicam Nasal Spray, Plaintiff allegedly used it as instructed. *Id.* ¶ 44. Notably, she does not allege that the product failed to shorten her cold or that its performance otherwise failed to live up to her expectations. Nevertheless, two years or so after buying Zicam Nasal Spray, Plaintiff sued Zicam for false advertising. The sole advertising statement she is challenging is that Zicam products are "clinically proven" to shorten colds. *Id.* ¶¶ 41-45.

---

[1]      Zicam Nasal Spray is sprayed into the nose, and Zicam Nasal Swab is swabbed on the inside of the nose. *Id.* ¶ 28.

[2]      The RapidMelts and lozenges dissolve in the mouth while the oral mist is sprayed into the mouth. *See* URLs cited in AC ¶ 24, n.10 and label images depicted at *id.* ¶ 28.

4

In her original Complaint, Plaintiff alleged that, for all Zicam products, Zicam's "clinically proven" statement is "solely based upon the Science Study," an article (not a study) by Dr. Michelle Science that "concluded that there is uncertainty regarding the clinical benefit of using zinc to reduce the duration of the common cold." Compl. ¶ 32. But the Complaint offered no factual allegations to back up the (wrong) assertion that Zicam relies "solely" (or even at all) on the Science Study. Zicam's counsel brought this error and others to Plaintiff's counsel's attention during a meet-and-confer call, and explained that non-public studies support Zicam's "clinically proven" advertising statements. Dkt. 25. Plaintiff then requested to amend her pleading and Zicam stipulated to this request. *Id.*[3]

In her Amended Complaint, Plaintiff retracted her fictitious allegation that Zicam's "sole" support for its "clinically proven" statement is the Science Study. But Plaintiff wrongly maintains that Zicam's "clinically proven" statement is unsubstantiated because "Defendants fail to disclose any valid clinical testing citations or results on the Product packaging, their websites, and in marketing and advertising." AC ¶ 36. According to Plaintiff, "[t]he only logical conclusion" from that fact "is that the Zicam Products are not clinically proven to shorten colds." *Id.*

Based on that illogical inference, Plaintiff asserts five causes of action under California law for (i) violation of the Unfair Competition Law ("UCL"), (ii) violation of the Consumers Legal Remedies Act ("CLRA"), (iii) violation of the False Advertising Law ("FAL"), (iv) breach of express warranty, and (v) breach of implied warranty of merchantability. And despite having bought only Zicam Nasal Spray, Plaintiff seeks to certify a class of California purchasers of *all Zicam cold remedy products* (AC ¶ 67), including products that, as noted above, have different active ingredients and formulations and work in materially different ways.

---

[3]     The original Complaint also featured other glaring errors, including falsely stating that Defendants' counsel had accepted service of Plaintiff's 30-day notice letter (Compl. ¶ 120).

**C.    The Zinc Studies Referenced in the Amended Complaint Tested Different Products from the Non-Zinc Nasal Spray that Plaintiff Purchased**

The Amended Complaint does not cite a single study or test concerning the active ingredients in the Zicam Nasal Spray.  Instead, Plaintiff references a handful of scientific studies concerning the alleged ineffectiveness of certain non-Zicam zinc-containing cold remedy products (the "Zinc Studies").  But the sole Zicam product Plaintiff bought, Zicam Nasal Spray, contains *no zinc*.  It contains the plant-based actives galphimia glauca, luffa operculata and sabadilla.  None of the Zinc Studies tested products containing those ingredients, never mind Zicam Nasal Spray itself.  For that simple reason, the Zinc Studies referenced in the Amended Complaint are irrelevant.

As for the Zicam Zinc Products, Plaintiff lacks standing to sue as explained in Section III.B.2, *infra*.  Even so, the Zinc Studies cannot support Plaintiff's claim that Zicam's "clinically proven" statement is not substantiated as to the Zicam Zinc Products because, although the Zinc Studies did not test products with the same composition or formulation as the Zicam Zinc Products, and the Court need not consider them to dismiss the Amended Complaint, the studies actually demonstrate that zinc generally is effective at shortening colds.[4]

In sum, the Zinc Studies Plaintiff cites in her Amended Complaint simply cannot salvage from dismissal Plaintiff's claim that Zicam's "clinically proven" statement is false as to any Zicam cold remedy product at issue in this case.[5]

---

[4]    The authors of the Cochrane Review (AC ¶¶ 6-7) found that taking zinc orally significantly reduced the duration of the common cold.  Based on multiple studies cited in the NIH Review (*id.* ¶¶ 9-10), the authors concluded that "[a]lthough studies examining the effect of zinc treatment on cold symptoms have had somewhat conflicting results, *overall zinc appears to be beneficial under certain circumstances*."  (Emphasis added).  The Turner Study (*id.* ¶¶ 9-10) found "Zinc gluconate treatment led to a significant reduction in the median duration of symptoms in volunteers with experimentally induced rhinovirus colds."  The Hemila Study (*id.* ¶ 37) acknowledged that prior studies have found that zinc lozenges and nasal sprays shorten the duration of the common cold and stated the authors did not believe their data contradicted those prior studies.  And the Hirt Study found the tested Zicam nasal spray (a different product from the one Plaintiff purchased) was "effective in shortening the duration of common cold symptoms when taken within 24 hours of their onset."

[5]    For reasons known only to Plaintiff, she also cites a two-page article from 2006 describing the benefits of Zicam Cold & Flu Daytime and Zicam Cold & Flu Nighttime—two products that have long been discontinued and that the Amended Complaint itself does not put in issue.  *Id.* ¶ 40, n.23.  The article explains that those (since discontinued) products were intended

III.   **ARGUMENT**

A.     **The Amended Complaint Should Be Dismissed under Rule 12(b)(6)**

1.     *Rule 12(b)(6) Standard*

A complaint must be dismissed under Rule 12(b)(6) for failure to state a claim if it fails to state a cognizable legal theory, or to allege sufficient facts to support a legal theory, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), or if it does not offer enough facts to state a plausible claim for relief, *Bell Atl. v. Twombly*, 550 U.S. 544, 558-59 (2007). A claim is implausible "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Only after the complaint has been "[t]rimmed of 'legal conclusions' and 'threadbare recitals of a cause of action'" does the court determine whether it "contains sufficient factual allegations to state a plausible entitlement to relief." *Eclectic Props. E. v. Marcus & Millichap*, 751 F.3d 990, 998 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In addition, Plaintiff explicitly accuses Zicam of engaging in "fraudulent" conduct (AC ¶¶ 39, 50, 61, 88, 91), so the Amended Complaint is subject to Rule 9(b)'s heightened pleading requirements. *See, e.g.*, *Kearns v. Ford Motor*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to UCL and CLRA claims).

2.     *Plaintiff's Lack-of-Substantiation Claim Against Zicam Fails as a Matter of Law*

Plaintiff challenges Zicam's "clinically proven" statement because, supposedly, "the Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold," and "there is no scientific support for the Claim that the Zicam Products are 'clinically proven to shorten colds.'" AC ¶ 55. In other words, Plaintiff alleges that Zicam's "clinically proven" statement is unsubstantiated. But California law precludes private litigants

---

to treat the *severity* of cold symptoms, not to *shorten* cold duration. Those products contained other common cold treatment ingredients like acetaminophen and dextromethorphan. They contained no zinc and have nothing to do with any Zicam product at issue in this case, nor does Plaintiff allege otherwise.

7

from challenging advertising statements on the theory that they are unsubstantiated. Rather, a private litigant must plausibly allege that challenged advertising is affirmatively false, and Plaintiff fails to do so here. Thus, as explained below, the Court should dismiss the Amended Complaint in its entirety.

### a. California Prohibits Lack-of-Substantiation Claims by Private Litigants

Under California law, only prosecuting authorities, like the Attorney General, may challenge advertising statements on the ground they are unsubstantiated. Private litigants must plausibly allege, and ultimately prove, the challenged advertising is false or misleading. *King Bio*, 107 Cal. App. 4th at 1345. California's intent was to prevent "undue harassment of advertisers" by private litigants demanding substantiation. *Id.*

Echoing *King Bio*, the Ninth Circuit's precedential decision in *Kwan v. Sanmedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) held that a private plaintiff cannot sue for false advertising on the theory that an advertising statement is unsubstantiated. In *Kwan*, the plaintiff challenged the defendant's representations that its product, SeroVital, was "clinically tested" to boost human growth hormone. *Id.* at 1092. *Kwan* expressly rejected the argument that "clinically tested," "clinically proven," or similar statements referring to the existence of studies to support an advertising statement should be subject to a different standard than other advertising statements. *Id.* at 1097-98. Thus, to sue for false advertising under California law, a consumer must plausibly allege that advertising is false—not merely unsubstantiated—including when the defendant advertises that a product benefit is "clinically proven."

This Court has twice dismissed near-identical claims on this basis. In *Aloudi v. Intramedic Rsch. Grp., LLC*, 2015 WL 4148381 (N.D. Cal. July 9, 2015) (Gilliam Jr., J.), the plaintiff challenged the defendant's representation that its green coffee bean extract was "Clinically Proven" to cause "significant reduction in actual body mass index (BMI)." *Id.* at *1. The Court held that Aloudi could not challenge that statement merely by alleging the defendant lacked a study proving the product's efficacy. *Id.* at *3-4. Aloudi tried to overcome that deficiency by citing general evidence that green coffee extract products do not result in weight

8

loss, but none of Aloudi's citations addressed the defendant's product and thus did not state a claim that the challenged advertising was false. *Id.* at *4-5.[6]

This Court also dismissed an improper lack-of-substantiation claim in *Racies v. Quincy Bioscience, LLC*, 2015 WL 2398268 (N.D. Cal. May 29, 2015) (Gilliam Jr., J.). There, the defendant advertised its supplement, Prevagen, was "Clinically Tested." *Id.* at *1. Challenging that statement, the "Plaintiff allege[d] that 'there is absolutely no evidence in the public record' that any clinical studies were ever performed on the Product and 'no RCT involving apoaequorin and brain function or memory' has ever been 'registered to be considered for publication in a peer reviewed journal.'" *Id.* But the Court recognized this amounted to an improper lack-of-substantiation claim and therefore dismissed that part of the complaint. *Id.* at *3.[7]

Here, the Amended Complaint is deficient for the same reason. Plaintiff's basis for challenging Zicam's "clinically proven" statement is that "there is no scientific support for the Claim that the Zicam Products are 'clinically proven to shorten colds.'" AC ¶ 55. That is "precisely the sort of allegation that the Ninth Circuit recently rejected as being impermissibly premised on a lack-of-substantiation theory." *Tubbs v. AdvoCare Int'l, LP*, 2017 WL 4022397, at *6 (C.D. Cal. Sept. 12, 2017) (dismissing amended complaint alleging "there is no genuine scientific research or scientifically reliable studies in existence that support" the defendant's advertising). Thus, the Court should dismiss this classic lack-of-substantiation case.

---

[6]     After amendment, Aloudi contended his second amended complaint stated a claim for relief because the defendant's "clinically proven" statement stemmed from a particular study, called the Vinson Study, that was "falsified." *Aloudi v. Intramedic Rsch. Grp., LLC*, 2016 WL 1569981, at *3-4 (N.D. Cal. Apr. 19, 2016) (Gilliam Jr., J.). But the Court found that Aloudi "fail[ed] to plead sufficient facts that the Vinson Study is the same 'double blind clinical trial' that Defendant references in its Product representations." *Id.* at *3. Thus, the Court dismissed the case with prejudice. The Ninth Circuit affirmed that dismissal because Aloudi did not "allege facts showing the Vinson report had to be the sole basis for Intramedic's assertion of clinical proof." *Aloudi v. Intramedic Rsch. Grp., LLC*, 729 F. App'x 514, 516 (9th Cir. 2017).

[7]     The Court distinguished "Clinically Tested" from other representations about Prevagen's purported brain function and memory benefits because the plaintiff alleged those other statements were false, not merely unsupported. Specifically, the plaintiff alleged Prevagen's active ingredient is destroyed in the digestive system and thus cannot possibly affect brain function or memory. *Id.* at *4. There are no such allegations here about Zicam products' ingredients.

9

### b. An Absence of *Published* Studies Concerning Zicam's Products Does Not Mean No Studies Exist

In an effort to save her lawsuit against Zicam, Plaintiff asks the Court to infer that Zicam's advertising is affirmatively false. *Plaintiff does not contend she possesses any evidence that any <u>Zicam</u> product is ineffective, let alone the Zicam Nasal Spray that she purchased.* She does not even allege the Zicam Nasal Spray failed to shorten her cold. Nor does Plaintiff profess to have any knowledge of Zicam's proprietary studies that would enable her to allege they do not support Zicam's advertising. In fact, Plaintiff concedes she has never seen Zicam's studies and lacks access to them. *See* AC ¶ 40 ("To the extent that the Zicam Products have ever been specifically tested to determine whether they are capable of shortening colds, such testing and the results of such testing have never been disclosed to consumers or made accessible via publicly-available resources.").

Yet in a twist of broken logic, that is the very reason Plaintiff contends Zicam's advertising is false. Because she and her counsel supposedly could not locate any *publicly available* studies concerning the efficacy of the challenged Zicam products (*id.*), Plaintiff supposes that the "only logical conclusion . . . is that the Zicam Products are not clinically proven to shorten colds." *Id.* ¶ 36.

That assumption is flawed. Companies obviously do not publish every internal study they perform. Nor are advertisers under any obligation to publish support for their advertising statements. Indeed, *King Bio* observed that one reason California bars private litigants from bringing lack-of-substantiation claims is to protect advertisers' confidential information from public disclosure. 107 Cal. App. 4th at 1345.

Not surprisingly, courts have rejected Plaintiff's "lack-of-publication" theory. In *Racies*, the plaintiff alleged "there is absolutely no evidence in the *public* record" that any clinical studies were ever performed on the defendant's product, Prevagen. *Racies*, 2015 WL 2398268, at *3 (emphasis added). But of course, that did not mean the advertiser lacked studies of Prevagen; it just meant any such studies were not in the public domain. The Court correctly construed plaintiff's allegation about the lack of published studies as one alleging lack-of-substantiation, not affirmatively alleging falsity, and therefore dismissed the claim. *Id.*

Similarly, in *Engel v. Novex Biotech LLC*, the plaintiff challenged the defendant's statement its product was "clinically tested" because plaintiff's counsel and experts conducted a "comprehensive search of the published literature" and found no supporting studies. 2015 WL 846777, at \*4 (N.D. Cal. Feb. 25, 2015). As the Ninth Circuit explained in its decision affirming the complaint's dismissal in *Engel*, "allegations that defendant's marketing claims are not supported by any reliable clinical trials and that a comprehensive search could not produce any publication to support claims that defendant's product, Growth Factor-9, was clinically tested as claimed on its packaging . . . do not support a finding that the advertising claims are actually false, only that they lack substantiation." *Engel v. Novex Biotech LLC*, 689 F. App'x 510, 510-11 (9th Cir. 2017).

In short, merely pointing to a lack of *public* studies substantiating a defendant's advertising fails to state a false advertising claim. At best, the absence of public studies is "'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). But because it is entirely plausible a defendant possesses *non-public* studies supporting its advertising, such allegations fall well "'short of the line between possibility and plausibility of entitlement to relief,'" and therefore fail to state a claim. *Id.*

Indeed, were the law otherwise, companies would be compelled to make their confidential studies public or else face lawsuits demanding those studies from consumers, like Plaintiff, who come to court with no basis to allege false advertising. California wisely chose to prevent a wave of baseless false advertising cases by prohibiting private litigants from suing unless they can plausibly allege falsity in the first place. The Court should reject Plaintiff's bid to upend settled law.

        c.       **Plaintiff Cites No Studies Capable of Demonstrating Zicam's Advertising Is False**

To try to disguise the fact she is suing Zicam on an improper lack-of-substantiation theory, Plaintiff dresses up her Amended Complaint with references to studies of non-Zicam zinc cold remedies. *See* Section II.C, *supra*. While these studies are not relevant to the present motion, it is worth noting that Plaintiff mischaracterizes these Zinc Studies and omits portions of

11

them that contradict her narrative.  *See* n. 4, *supra*.  Even if the Court were to accept Plaintiff's description of the Zinc Studies at face value, they still do not support a claim that Zicam's "clinically proven" statement is false.

As court after court has explained, a study plausibly suggests that the defendant's product does not perform as advertised only if the study tested the defendant's product or if the study proves that the advertised benefits are scientifically impossible to achieve for *any* product.  *See, e.g.*, *Tubbs*, 2017 WL 4022397, at *6 ("Courts have previously found a reliance on studies that did not involve the products at issue to be insufficient in similar cases"); *Aloudi*, 2015 WL 4148381, at *4-5 ("general statements" about the ineffectiveness of caffeine supplements for weight loss "are not tied to the Product or Defendant's specific representations about the Product" and thus did not support the plaintiff's falsity allegation); *Engel*, 2015 WL 846777, at *4 (dismissing second amended complaint because "Plaintiff still does not allege that a study exists showing that these benefits are categorically impossible to achieve, or that one or more authorities studied or tested Growth Factor–9's formula and found that it does not produce the results Defendants claim").

Here, not one study Plaintiff cites tested Zicam Nasal Spray that Plaintiff bought or any other product containing galphimia glauca, luffa operculata and sabadilla.  *See* Section II.C, *supra*.  Instead, Plaintiff cites studies involving zinc-containing cold remedy products, which have nothing to do with Zicam Nasal Spray because it contains no zinc.

And while Plaintiff lacks standing to sue for the zinc-containing Zicam Zinc Products that she never bought (*see* Section III.B.2, *infra*), even for those products the cited Zinc Studies still do not support a plausible allegation that Zicam's "clinically proven" statement is false. None of the Zinc Studies involved any of the Zicam Zinc Products or even a non-Zicam product with the same zinc formulation and overall composition as the Zicam Zinc Products.  *See* Section II.C, *supra*.  Thus, even if the Court were to adopt the Amended Complaint's description of the studies (which is inaccurate and incomplete, *see* n. 4, *supra*), these studies cannot possibly prove that Zicam's differently formulated products are ineffective.  For the same reason, these studies

also do not support Plaintiff's assumption that Zicam lacks proprietary clinical studies that demonstrate its products' efficacy; in fact, the studies contradict that assumption.[8]

* * *

In sum, Plaintiff has not plausibly alleged facts or evidence that support an inference that it is false for Zicam to advertise that Zicam Nasal Spray, or any other Zicam product, is "clinically proven" to shorten the duration of the common cold. Instead, Plaintiff improperly relies on a lack-of-substantiation theory that California law precludes. Thus, the Court should dismiss the Amended Complaint as a whole. *Tubbs*, 2017 WL 4022397, at *5, n.1 (dismissing CLRA, FAL, UCL and breach of warranty claims, and explaining that *Kwan's* holding applies "to *all* causes of actions premised on a lack-of-substantiation theory, not only those claims raised in *Kwan*") (emphasis in original).

### 3.   *Plaintiff's Breach of Warranty Claims Independently Fail*

Plaintiff's claims for breach of express warranty (Count IV) and implied warranty (Count V) fail for the reasons discussed above. They also fail for another reason: Plaintiff does not allege that her Zicam Nasal Spray failed to shorten her cold.

"Breach of warranty is not equivalent to false advertising; a breach of warranty claim must allege that the product has not performed or will not perform in the manner expressly or impliedly warranted." *Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 364 (9th Cir. 2016). For example, in *Bitton*, the complaint merely claimed that "representations regarding the statistical significance of the results of the clinical trial were false," but "[did] not allege that the Testofen products cannot increase free testosterone levels, nor [did] it even assert that the product failed to do so for the named Plaintiffs." *Id.* Thus, the Ninth Circuit affirmed the complaint's dismissal.

Similarly, Plaintiff's breach of warranty claims should be dismissed here because she does not allege that Zicam Nasal Spray failed to shorten her cold. Plaintiff may point to her

---

[8]    While the Court need not consider the Zinc Studies referenced in the Amended Complaint to grant this Motion, the studies evidence that zinc is generally effective at shortening colds and thus, if anything, rebut Plaintiff's illogical inference that Zicam must not have any clinical studies merely because it has not published them.

13

statement that Zicam products are "not useful for their ordinary purpose of shortening the duration of the common cold" (AC ¶ 134), but the Complaint lacks any plausible factual allegations to support that conclusory assertion. A product need not undergo clinical testing to fulfill its intended purpose; it simply must work. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009). Again, there is no plausible allegation here that Zicam products do not work, so for this additional reason the Court should dismiss Plaintiff's breach of warranty claims.

### B. The Amended Complaint Should Be Dismissed Under Rule 12(b)(1)

#### 1. *Rule 12(b)(1) Standard*

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction to hear the plaintiff's claims. If plaintiff lacks standing under Article III of the U.S. Constitution, then the Court lacks subject matter jurisdiction, and the case must be dismissed. *See Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007). To establish Article III standing, a plaintiff must show that she: (1) has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth v. Laidlaw Env't. Servs. (TOC)*, 528 U.S. 167, 180-81 (2000). Standing is a threshold question, and plaintiff bears the burden of establishing it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

#### 2. *Plaintiff Lacks Standing to Assert Claims Based on Products She Did Not Buy*

Plaintiff seeks to represent a class of consumers who bought Zicam Original RapidMelts, Zicam ULTRA RapidMelts, Zicam Elderberry Citrus RapidMelts, Zicam Nasal Swabs, Zicam Nasal Spray, Zicam Wild Cherry Lozenges, and Zicam Oral Mist. AC ¶ 67. But the only one of those products Plaintiff claims to have bought is Zicam Nasal Spray. *Id.* ¶¶ 41-43.

To have standing to sue on behalf of consumers who bought *other* Zicam products that Plaintiff did not purchase, she must plausibly allege facts establishing that all of the Zicam products are "substantially similar." *See, e.g.*, *Padilla v. Whitewave Foods Co.*, 2019 WL 4640399, at *9-10 (C.D. Cal. July 26, 2019) (dismissing claims for products plaintiff did not buy

14

because, among other things, the complaint did not allege "similarities as to the composition of the Products"); *Dysthe v. Basic Rsch. LLC*, 2011 WL 5868307, at *4 (C.D. Cal. June 13, 2011) (finding products were not substantially similar for standing purposes because "their respective ingredients shows significant differences between the Products").

Plaintiff fails to allege that all Zicam cold remedy products are substantially similar. In fact, she alleges the opposite: she alleges Zicam Nasal Spray and Zicam Nasal Swabs have no zinc, and therefore asserts testing on zinc-containing products would not support advertising about those products. AC ¶ 11. Thus, Plaintiff concedes the Zicam Nasal Spray she bought has materially different ingredients from the Zicam Zinc Products, all of which contain two forms of zinc as their active ingredients. Further, Zicam's Zinc Products differ from the Zicam Nasal Spray in their route of administration and mechanism of action. *See id.* ¶ 24, n.10 (links to pages with product information, which the Amended Complaint incorporates by reference). As a result, Plaintiff lacks standing to sue on behalf of consumers who bought the Zicam Zinc Products.

### 3. *Plaintiff Lacks Standing to Sue for Injunctive Relief*

To have standing to seek injunctive relief, a plaintiff must allege an imminent or actual threat of future injury posed by the alleged false advertising. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018). Courts therefore find a lack of standing to seek injunctive relief when the plaintiff, now aware of the defendant's alleged false advertising, is not at risk of being deceived again. *See, e.g.*, *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) ("Unlike *Davidson*, where a consumer's inability to rely on packaging misrepresentations in the future was an ongoing injury, Rahman is able to rely on the packaging now that he understands the 'No Sugar Added' label."); *Clevenger v. Welch Foods, Inc.*, 501 F. Supp. 3d 875, 881 (C.D. Cal. 2020) ("Because Plaintiff is now aware of how many pouches the challenged products contain, there is not a sufficient likelihood that he will suffer economic injury by purchasing these products in the future.").

For whatever reason Plaintiff (incorrectly) presumes Zicam lacks clinical studies on its cold remedy products, she is now "aware" of that supposed fact. Thus, there is no risk that

Zicam's "clinically proven" statement will deceive Plaintiff again in the future, and she lacks standing to seek injunctive relief.

### C.    The Amended Complaint Should Be Dismissed with Prejudice

A motion to dismiss should be granted with prejudice where amendment would be futile. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010).  That is the case here because Plaintiff concedes she lacks personal knowledge about or access to Zicam's proprietary studies that substantiate its "clinically proven" statements.  AC ¶ 40.

While not a lack-of-substantiation case, the Ninth Circuit's recent decision in *Webb v. Trader Joe's Co.*, 999 F.3d 1196 (9th Cir. 2021) illustrates why dismissal with prejudice is the right outcome here.  In that case, plaintiff alleged she commissioned testing that showed Trader Joe's falsely understated how much water was contained in its poultry products.  *Id.* at 1199.  The Ninth Circuit affirmed the district court's finding this claim was preempted because a federal regulator had approved Trader Joe's testing that determined the products' water content.  *Id.* at 1201-04.  To avoid her claims being preempted, plaintiff needed to "plausibly claim she used Trader Joe's exact data collection protocol and yet obtained different results, thereby evincing that Trader Joe's is misrepresenting its data" to the regulator.  *Id.* at 1204.  But because plaintiff conceded Trader Joe's test protocol was not publicly accessible, she could not plausibly allege she used the identical protocol.  *Id.*  As a result, the Ninth Circuit affirmed the case's dismissal *with prejudice*, remarking that it "cannot 'condone the use of discovery to engage in 'fishing expedition[s]' where, like here, it is obvious that Webb has no basis other than gross speculation to claim that Trader Joe's is misrepresenting the data provided by its testing protocol."  *Id.* (quoting *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004)).

Similarly, here, because Plaintiff concedes Zicam's proprietary clinical studies are not accessible to her (and she has no testing of her own), she cannot plausibly allege that Zicam is misrepresenting the studies' results.  The best Plaintiff can do is speculate that Zicam lacks substantiation, as she has done twice now.  But as explained above, California bars private litigants from bringing lack-of-substantiation claims.

Importantly, Plaintiff knew *before* filing her Amended Complaint that she was required to allege falsity, not lack-of-substantiation; the parties discussed that very issue during their meet-and-confer calls. *See* Dkt. 35 (Joint Case Management Statement). Yet Plaintiff did not—because she cannot—add any allegations of falsity to her Amended Complaint. Thus, it would be a waste of time and resources for Plaintiff to file a third pleading in this case. Instead, the Court should dismiss this case with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court should dismiss with prejudice Plaintiff's causes of action for alleged violations of California's UCL (Count I), CLRA (Count II) and FAL (Count III), breach of express warranty (Count IV), and breach of implied warranty of merchantability (Count V).

DATED: July 14, 2021                    Respectfully Submitted,

                                        **PROSKAUER ROSE LLP**

                                        By:  ___/s/_____Baldassare Vinti_____

                                            Bart H. Williams (SBN 134009)
                                            Jennifer L. Jones (SBN 284624)
                                            2029 Century Park East, Suite 2400
                                            Los Angeles, CA 90067
                                            Telephone:  (310) 557-2900
                                            Facsimile:  (310) 557-2193
                                            bwilliams@proskauer.com
                                            jljones@proskauer.com

                                            Baldassare Vinti*
                                            Jeffrey H. Warshafsky*
                                            11 Times Square
                                            New York, NY 10036
                                            Telephone: (212) 969-3000
                                            Facsimile: (212) 969-2900
                                            bvinti@proskauer.com
                                            jwarshafsky@proskauer.com

                                            *Admitted *Pro Hac Vice*

                                            *Attorneys for Church & Dwight Co., Inc.*