Rachel L. Soffin
rsoffin@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
*Attorneys for Plaintiff*

*[Names and addresses of additional Counsel for Plaintiff on Signature Page]*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENUS YAMASAKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>ZICAM LLC and MATRIXX INITIATIVES, INC.,<br><br>Defendants. | CASE NO.  3:21-cv-02596 |

## PLAINTIFF'S OPPOSITION TO CHURCH & DWIGHT CO., INC.'S <u>MOTION TO STAY DISCOVERY</u>

Plaintiff Venus Yamasaki ("Plaintiff") hereby responds in opposition to Church & Dwight Co., Inc.'s ("Defendants") Motion to Stay[1]. Plaintiff submits this opposition highlighting the arguments she intends to present in opposition to Defendants' Motion to Dismiss, which will be further detailed in her forthcoming brief. For present purposes and for the reasons discussed herein, Plaintiff

---

[1] Pursuant to ECF No. 16, Defendants Zicam LLC and Matrixx Initiatives, Inc. certified that they merged into Church & Dwight Co., Inc., which filed the Motion to Stay.

respectfully requests that this Honorable Court deny Defendants' Motion to Stay, as Defendants have not met their burden of establishing the need for a stay.

**INTRODUCTION**

Plaintiff alleges that Defendants engaged in fraudulent, unfair, deceptive, and misleading advertising, marketing, and other misrepresentations in the sale of Zicam® Original RapidMelts®, Zicam® ULTRA RapidMelts®, Zicam® Elderberry Citrus RapidMelts®, Zicam® Nasal Swabs, Zicam® Nasal Spray, Zicam® Wild Cherry Lozenges, and/or Zicam® Oral Mist™ (collectively, the "Zicam Products" or "Products"). As alleged in the Amended Complaint, Defendants misrepresented on the Products' packaging and labels, in their advertising and marketing, and on their website that each of the Zicam Products has been "Clinically Proven to Shorten Colds" (the "Clinically Proven Claim"). The Clinically Proven Claim is consistently and prominently presented on the front of each Zicam Product's packaging and label in a bold, all-caps font where it cannot be missed by consumers. As Defendants admit, the Clinically Proven Claim on each of the Zicam Products (both with and without zinc) is based on studies regarding zinc acetate and zinc gluconate (collectively "zinc"). *See* ECF No. 35 at p. 3 (Joint Case Management Statement) and ECF No. 37 at p. 1 (Defendants' Motion to Dismiss); ECF No. 30 at ¶¶4, 24 (Amended Complaint, hereinafter "FAC").

Contrary to Defendants' packaging and marketing claims, the Zicam Products are not clinically proven to impact the duration of the common cold, and there is no scientific evidence to support the Clinically Proven Claim, which is false. FAC at ¶5. In fact, the falsity of Defendants' Clinically Proven Claim is buried deep within Defendants' own website, where Defendants seek to rely upon scientific studies of zinc to support their Clinically Proven Claim. However, rather than support Defendants' Clinically Proven Claim, these studies instead confirm that the use of zinc to impact the duration of cold symptoms is inconclusive and simply a hypothesis. In fact, several cited studies conclude that zinc is completely ineffective. FAC at ¶9. Thus, Plaintiff does not seek to rely upon a lack of substation

claim, which "arises where, absent any evidence suggesting a representation is false or misleading, a plaintiff demands a defendant either 'put up or shut up.'" *Mier v. CVS Pharm., Inc.*, No. 20-01979, 2021 U.S. Dist. LEXIS 76737, at *11-13 (C.D. Cal. Mar. 22, 2021), quoting *Mullins v. Premier Nutrition Corp.*, 178 F.Supp.3d 867, 876 (N.D. Cal. 2016). Here, Defendants have already "put up" the very studies they seek to rely upon to support their Claim, which actually confirm that Defendants' Clinically Proven Claim is false.

Moreover, Defendants rely upon the same studies of zinc to support the Clinically Proven Claim on their zinc-free Zicam® Nasal Swabs and Nasal Spray products, which have not included zinc as an ingredient since Defendants recalled and reformulated both products in response to the FDA's June 2009 warning letter, which was prompted by consumers losing their sense of smell as a result of zinc in those products. FAC at ¶11. Thus, Defendants' reliance on zinc studies to support the Clinically Proven Claim in the zinc-free products is especially egregious and equally false. In addition to pointing to Defendants' own representations and study references to support the falsity of the Clinically Proven Claim, Plaintiff intends to present expert testimony confirming the falsity of the Clinically Proven Claim.

Further, Defendants' Motion to Dismiss is not dispositive in any event. In the Motion to Stay, Defendants argue that Plaintiff's claims will be dismissed in their entirety because of a lack of substantiation. However, even in the unlikely event that Defendants' Motion to Dismiss is granted for lack of substantiation, that would impact only a portion of Plaintiff's claims under the UCL and CLRA, and not defeat the claims in their entirety. Further, such a ruling should not impact Plaintiff's other claims for Breach of Express Warranty (Count IV) or Breach of Implied Warranty of Merchantability (Count V). Thus, there is no rationale for Defendants' Motion to Stay.

**LEGAL STANDARD**

"The court has the discretion to stay discovery as part of its 'inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants.'" *Vista Del Sol Health Care Servs. v. NLRB,* No. 14-cv-02913, 2014 U.S. Dist. LEXIS 196694, at *2-3 (C.D. Cal. May 16, 2014) (stating "[a]s a general matter, the court does not stay discovery or refrain from setting case management dates in cases where a motion to dismiss is pending unless a party provides a good reason for doing so. Were the court's practice otherwise, some cases would remain pending for a year or more before any case management dates were set or progress on the litigation made."), quoting *Moser v. Encore Capital Grp., Inc.*, No. 04CV2085-LAB, 2007 U.S. Dist. LEXIS 22970, 2007 WL 1114113, *3 (S.D. Cal. Mar. 27, 2007). "Any decision to stay discovery should take into consideration the court's obligation "to secure the just, speedy, and inexpensive determination of every action," as a stay is not a matter of right, but rather is an issue of propriety dependent upon the circumstances of the case. *NLRB,* 2014 U.S. Dist. LEXIS at *2-3, citing Fed. R. Civ. Proc.1, *Nken v. Holder*, 556 U.S. 418, 433-34, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009). "The proponent of a stay bears the burden of establishing its need." *FastVDO LLC v. LV Elecs. Mobilecomm U.S.A., Inc.,* No. 16-cv-02499, 2016 U.S. Dist. LEXIS at *11-12 (S.D. Cal. Dec. 13. 2016), citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "'[I]f there is even a fair possibility that the stay . . . will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *FastVDO LLC*, 2016 U.S. Dist. LEXIS at *11-12, quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

**ARGUMENT**

Defendants, as the parties who bear the burden of establishing the need for a stay, have failed to make out the requisite case of hardship or inequity, or to show that a stay would promote judicial economy. Further, Plaintiff would be prejudiced by a stay, as it would unnecessarily delay her ability

4

to proceed with this action, which is highly unlikely to be dismissed in its entirety as a result of Defendants' Motion to Dismiss.

As addressed in detail in the Amended Complaint, in an effort to achieve maximum profits, Defendants have used the deceptive and misleading Clinically Proven Claim to prey upon consumers desperate to reduce the duration of the common cold through the use of products. FAC at ¶13. However, the Clinically Proven Claim is false. In order for a claim to be considered scientifically and clinically proven, the claim must be widely accepted in its applicable field and have overwhelming evidence supporting it. Moreover, there must be a consensus in the scientific community agreeing with the representations. Such consensus would require, at a minimum, sufficiently large, randomized, controlled, double-blind studies that have been scrutinized by peer review during the publication process and subjected to scholarly debate by diverse panels of scientific experts. Additionally, scientific consensus requires that published results be independently replicated by others using rigorous experimental design and data collection practices. If specific representations do not meet these standards, they cannot be considered scientifically and clinically proven, nor can they be considered to have reached scientific consensus. *See e.g.* Bauchner H, Golub RM, Fontanarosa PB. Reporting and Interpretation of Randomized Clinical Trials. JAMA. 2019; 322(8):732-735; Kirman CR, Simon TW, Hays SM. Science Peer Review for the 21st century: Assessing Scientific Consensus for Decision-making while Managing Conflict of Interests, Reviewer and Process Bias. Regul Toxicol Pharmacol. 2019; 103:73-85. *See also* FAC at ¶32 (stating that "Defendants' representations on their packaging and website convey to reasonable consumers – and reasonable consumers would believe – that the state of the science regarding the Zicam Products and their ingredients have reached a level of scientific consensus such that Defendants' claim that the Products are 'clinically proven to shorten colds' is an established truth and statement of fact.").

Here, there is no consensus in the scientific community that the Zicam Products, or the zinc within the Products, are clinically proven to shorten colds. As alleged in the Amended Complaint, the deception and falsity underlying Defendants' Clinically Proven Claim is proven by their own (likely unintended) admissions. FAC at ¶¶6-12. On the Zicam FAQ page, in support of the Clinically Proven Claim, Defendants cite to a study published in 2011 by the U.S. Cochrane Center, which was performed by Dr. Meenu Singh, et al. ("Cochrane Review"). FAC at ¶6. Defendant also cites to multiple studies and trials from the National Institute of Health ("NIH Review"). These studies unequivocally state that the Zicam Products are *not* "Clinically Proven to Shorten Colds:"

- "While Zinc Gluconate reduced symptoms by one day in participants with experimental colds[2], <u>zinc gluconate had no effect on symptom severity and zinc acetate had no effect on either duration or severity</u>. Further, neither formulation had an effect on the duration or severity of natural cold symptoms. Evaluation of blinding, taste, and adverse events revealed no significant differences among the 4 treatment arms. <u>Zinc compounds appear to have little utility for common-cold treatment</u>." FAC at ¶10 (referencing NIH Review).

- "[w]e found no reason to recommend intranasal zinc gluconate or zinc orotate lozenges in treating common colds." *Id.*

- "…it is difficult to make firm recommendations about the dose, formulation and duration that should be used." FAC at ¶7 (referencing Cochrane Review).

- "…some caution is needed due to the heterogeneity of the data." *Id.*

Moreover, recent studies that Plaintiff identified in the Amended Complaint indicate that use of over-the-counter cold remedies containing zinc, including zinc acetate lozenges, do not shorten the duration of the common cold. *See* FAC at ¶37, citing https://bmjopen.bmj.com/content/10/1/e031662 (last visited May 26, 2021). In 2019, a randomized, double-blinded, placebo-controlled trial conducted in Finland determined that "[t]here was no difference in the recovery rate between zinc and placebo participants during the 10-day follow-up." And while the "recovery rate for the two groups was similar

---
[2] An experimental cold is a lab-induced cold and not a natural cold.

during the 5-day intervention," for 2 days after the end of zinc and placebo use, "the zinc participants recovered significantly slower compared with the placebo participants…" The study concluded that "[a] commercially available zinc acetate lozenge was not effective in treating the common cold when instructed to be used for 5 days after the first symptoms." *Id.*

Thus, the use of zinc in the Zicam Products to impact the duration of natural cold symptoms is inconclusive and simply a hypothesis, with some studies concluding that it is completely ineffective. FAC at ¶9. Defendants' attempt to use these same zinc studies to support the Clinically Proven Claim in the zinc-free Products is especially egregious and equally false. Consequently, by Defendants' own references to affirmative scientific evidence, in addition to scientific studies gathered from Plaintiff's independent investigation, the Zicam Products are anything *but* clinically proven to shorten colds. Plaintiff is thus not seeking to shift the burden of proving Defendants' advertising claim is false or misleading. Defendants' own website and label claims support Plaintiff's allegations that Defendants' Clinically Proven Claim is false.

In the Motion to Stay, Defendants lean on this Court's rulings in *Aloudi v. Intramedic Rsch. Grp., LLC*, No. 15-cv-00882, 2015 U.S. Dist. LEXIS 89366 (N.D. Cal. July 9, 2015) (Gilliam Jr., J.), and *Racies v. Quincy Bioscience, LLC, No.* 15-cv-00292, 2015 U.S. Dist. LEXIS 65468 (N.D. Cal. May 19, 2015) (Gilliam Jr., J.) to support their argument that the Motion to Dismiss is dispositive. However, Defendants' reliance on those cases misses the mark.

In *Racies,* the plaintiff alleged that the "clinically tested" allegation at issue was false and that there were no reliable or high-quality, randomized, controlled trials substantiating the representations. *Racies,* 2015 U.S. Dist. LEXIS 89366, at *7-10. The plaintiff further alleged there was no evidence in the public record that any clinical studies were even performed on the product. *Id.* As a result, this Court dismissed the plaintiff's UCL and CLRA claims only as they related to lack of substantiation because plaintiff failed to allege provable falsehoods. *Id.* However, this Court allowed the plaintiff to

7

proceed with UCL and CLRA claims based on a theory of false representations. Thus, while the plaintiff could not proceed by pointing to an absence of evidence substantiating the challenged claims, the plaintiff could proceed with claims showing the challenged claims were false. *Id.*

Further, in a later order in *Racies,* this Court denied the defendant's motion for summary judgment based on a lack of substantiation (allowing the case to proceed well past the dismissal phase) after the plaintiff presented an "expert opinion that ma[de] a logical deduction based on several scientific premises" that the subject products did not perform as advertised. In doing so, the Court stated it was "obvious that Plaintiff [wa]s not demanding that Defendant produce evidence to substantiate its claims." *Racies v. Quincy Bioscience, LLC,* No. 15-cv-00292, 2016 U.S. Dist. LEXIS 136193, *13-15 (N.D. Cal Sept. 30, 2016). Referencing *King Bio,* upon which Defendants here rely, this Court stated, "as the court in *King Bio* explained, in a UCL false advertising case, '[t]he falsity of the advertising claims may be established by testing, *scientific literature*, or anecdotal evidence,'" and the plaintiff's presentation of anecdotal evidence from its expert was sufficient to withstand summary judgment for lack of substantiation. *Id.,* quoting *Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 133 Cal. Rptr. 2d 207 (2003). Thus, even if Plaintiff's California consumer protection claims are dismissed (in part) for lack of substantiation, Plaintiff should be able to proceed with claims showing the Clinically Proven Claim is false, including through the use of expert evidence, like the plaintiff did in *Racies*.

Similarly, *in Aloudi v. Intramedic Rsch. Grp., LLC*, No. 15-cv-00882, 2015 U.S. Dist. LEXIS 89366 (N.D. Cal. July 9, 2015), although the plaintiff challenged the defendant's "clinically proven" claim, the plaintiff sought to prove his allegations by demonstrating the absence or inadequacy of testing, and with general statements from government entities that the products did not work as represented, which the Court found were "devoid of context, and [] not tied to the Product or Defendant's specific representations about the Product." *Id.* at *13-15.

Here, distinct from *Racies* and *Aloudi*, Plaintiff presents scientific literature to show the falsity of Defendants' "Clinically Proven Claim" based on references buried deep within Defendants' own website, and independent investigation, which is sufficient to withstand dismissal. FAC at ¶¶6-12. In other words, Plaintiff is simply pointing out that the very studies Defendants rely upon to support their Clinically Proven Claim actually *prove* that Claim is false. Further, Plaintiff's own investigation bolsters the falsity of the Clinically Proven Claim, as the additional studies referenced above and in the Amended Complaint confirm that the zinc used in the Zicam Products has no impact on the common cold. FAC at ¶37. Thus, Defendants' efforts to compare this case to those where the plaintiffs had no points of reference is at odds with the facts.

This case is more analogous to *Hughes v. Ester C Co.,* 930 F.Supp.2d 439, 464-465 (E.D.N.Y. 2013). In *Hughes,* the plaintiffs alleged that the defendants deceptively marketed Ester-C products with statements on the product packaging or website that the products may help in preventing or shortening the duration of colds or flu. *Id.* at 465. To support their claims, the plaintiffs referenced scientific studies disputing those claims, which the court found were sufficient to "remov[e] their claims from the lack of substantiation sphere into the affirmative misrepresentation realm." *Id.* at 459. Based on allegations similar to those made by Plaintiff in the Amended Complaint regarding the Zicam Products, the *Hughes* court found that the plaintiffs' allegations "make clear that plaintiffs' asserted claims are not simply based upon a lack of substantiation. In particular, plaintiffs' allegation that defendants have no credible scientific evidence backing up their representations is relevant in this case because Ester-C's website expressly states that there is clinical research supporting its products." *Id.* at *460. "Thus, [i]n light of defendants' alleged representations of scientific backing to its claims of providing superior vitamin C bioavailability, plaintiffs' asserted scientific study — asserting that Ester-C is *not*, in fact, any better than other vitamin-C brands on the market in administering vitamin

C to and increasing the body's absorption of the same — is sufficient to state a plausible claim of affirmative misrepresentation." *Id.* at *461.

Similarly, in *Mier v. CVS Pharm., Inc*., No. 20-01979, 2021 U.S. Dist. LEXIS 76737, at *11-13 (C.D. Cal. Mar. 22, 2021), the plaintiff alleged that the defendant's hand sanitizer did not kill 99.99% of germs, as represented, and cited to scientific studies to support his claim. *Id*. at *12. Thus, the court found that "[b]ecause the Plaintiff [] put forth evidence that shows why CVS's claims on the Product are false, Plaintiff's claims d[id] not fall under the lack of substantiation category." *Id.*

Likewise, in *Liou v. Organic, LLC,* 491 F.Supp.3d 740, 750-751 (S.D. Cal. 2020), the defendant sought to dismiss the plaintiff's CLRA and UCL claims relating to Clinical Trial Statements on a juice product based on a lack of substantiation. Similar to the present matter, the defendant sought to rely upon numerous clinical trials published on a government website and supported by a prominent medical university, but neither of the links the defendant cited to, nor the results on the webpage, supported the Clinical Trial Statements. *Id* at 746-747. As a result, the court rejected the defendant's lack of substantiation argument because the plaintiff alleged provable falsity, such that the citations the defendant referenced did not support the label claims. *Id.* at 750-751. Here, as in *Liou*, the references on Defendants' website actually confirm that the Zicam Products are anything *but* Clinically Proven to Shorten Colds and are thus false.

## **CONCLUSION**

For all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion to Stay Discovery Pending Resolution of Its Motion to Dismiss in its entirety.

Dated: July 21, 2021

Respectfully Submitted,

By: /s/ *Rachel L. Soffin*
Rachel L. Soffin*
Jonathan B. Cohen*
**MILBERG COLEMAN BRYSON**

**PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rsoffin@milberg.com
jcohen@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Alex R. Straus (SBN 321366)
280 Beverly Hills Drive, PH Suite
Beverly Hills, CA 90212
Telephone: (917) 471-1894
Facsimile: (865) 522-0049
astraus@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Daniel K. Bryson^
Sarah J. Spangenburg^
900 W. Morgan Street
Raleigh, NC 27603
P.O. Box 12638
Raleigh, NC 27605
dbryson@milberg.com
sspangenburg@milberg.com

**BARBAT MANSOUR SUCIU & TOMINA PLLC**
Nick Suciu III^
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (202) 640.1160
nicksuciu@gmslawyers.com

*admitted *pro hac vice*

^pending *pro had vice* admission

*Attorneys for Plaintiff and the Class*

---

11
PLAINTIFF'S OPPOSITION TO CHURCH & DWIGHT CO., INC.'S
MOTION TO STAY DISCO VERY

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

/s/ *Rachel L. Soffin*
Rachel L. Soffin