Bart H. Williams (SBN 134009)
Jennifer L. Jones (SBN 284624)
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
bwilliams@proskauer.com
jljones@proskauer.com

Baldassare Vinti*
Jeffrey H. Warshafsky*
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
bvinti@proskauer.com
jwarshafsky@proskauer.com

*Admitted *Pro Hac Vice*

Attorneys for
Church & Dwight Co., Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| VENUS YAMASAKI, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ZICAM, LLC and MATRIXX INITIATIVES, INC.,<br><br>Defendants. | Case No. 4:21-cv-02596-HSG<br><br>**CHURCH & DWIGHT CO., INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION TO STAY DISCOVERY PENDING RESOLUTION OF ITS MOTION TO DISMISS**<br><br>Date: August 19, 2021<br>Time: 2:00 PM<br>Courtroom: 2, 4th Floor<br>Before: Hon. Haywood S. Gilliam, Jr. |

## Table of Contents

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 3 |
| | A. The Motion to Dismiss Is Case Dispositive | 3 |
| | B. Plaintiff's Lack-of-Substantiation Claim Fails as a Matter of Law | 4 |
| | C. No Reasonable Consumer Will Understand "Clinically Proven" to Mean "Scientific Consensus" | 9 |
| | D. No Discovery Is Necessary to Decide the Motion to Dismiss | 11 |
| | E. Plaintiff Identifies No Prejudice She Would Suffer from a Stay, and Does Not Dispute Zicam Would Be Prejudiced Absent a Stay | 11 |
| III. | CONCLUSION | 12 |

i

CHURCH & DWIGHT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO STAY DISCOVERY PENDING RESOLUTION OF ITS MOTION TO DISMISS
CASE NO. 4:21-cv-02596-HSG

**Table of Authorities**

Page(s)

CASES

*Aloudi v. Intramedic Rsch. Grp., LLC*,
 2015 WL 4148381 (N.D. Cal., July 9, 2015)..................................................................9

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
 945 F.3d 1225 (9th Cir. 2019) .......................................................................................10

*Ebner v. Fresh*,
 838 F.3d 958 (9th Cir. 2016) .........................................................................................10

*Engel v. Novex Biotech LLC*,
 2015 WL 846777 (N.D. Cal., Feb. 25, 2015) ..................................................................7

*Hughes v. Ester C Co*,
 930 F. Supp. 2d 439 (E.D.N.Y., 2013) ........................................................................6, 7

*Kwan v. SanMedica Int'l, LLC*,
 2014 WL 5494681 (N.D. Cal., Oct. 30, 2014) ................................................................7

*Kwan v. Sanmedica Int'l*,
 854 F.3d 1088 (9th Cir. 2017) .........................................................................................3

*Liou v. Organifi, LLC*,
 491 F. Supp. 3d 740 (S.D.Cal., Oct. 1, 2020) .................................................................7

*Mier v. CVS Pharmacy, Inc.*,
 2021 WL 1559367 (C.D. Cal., Mar. 22, 2021) ................................................................7

*Moore v. Trader Joe's Co.*,
 2021 WL 2965445 (9th Cir., Jul. 15, 2021)...................................................................10

*Racies v. Quincy Bioscience LLC*,
 2015 WL 2398268 (N.D. Cal. May 19, 2015) ................................................................8

*Racies v. Quincy Bioscience, LLC*,
 2016 WL 5746307 (N.D. Cal., Sept. 30, 2016) ...............................................................8

*Tubbs v. AdvoCare Int'l, LP*,
 2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) ................................................................3

ii

CHURCH & DWIGHT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO STAY DISCOVERY PENDING RESOLUTION OF ITS MOTION TO DISMISS
CASE NO. 4:21-cv-02596-HSG

## I. INTRODUCTION[1]

Zicam's Motion to Stay Brief (Dkt. 38) explained that courts in this District grant a motion to stay discovery pending resolution of a motion to dismiss where the underlying motion is (1) potentially dispositive, and (2) does not raise issues requiring discovery. *Id.* at 4. Plaintiff does not dispute that governing standard or that Zicam's Motion to Dismiss raises no issues requiring discovery. And as Zicam demonstrated, its Motion to Dismiss is not just *potentially* dispositive, but *likely* to be granted in full, resulting in the dismissal of this entire case.

Plaintiff's opposition ("Opposition" or "Opp.") confirms she lacks *any testing* of Zicam Nasal Spray (a plant-based nasal product) or any of the Zicam Zinc Products (zinc based oral products) showing the products do not shorten colds. Yet she maintains "there is no scientific evidence to support" Zicam's "clinically proven" advertising statements. Opp. at 2. That supposition is based on Plaintiff's incorrect argument that because Zicam has not made its proprietary clinical studies public, the "only logical conclusion" is no such studies exist. AC ¶ 36. Nowhere does the Opposition try to defend that illogical inference, though it tries to distract from it by pointing to studies that have no connection to the product that Plaintiff purchased.

In attempting to obfuscate these defects, the Opposition intentionally conflates two very different Zicam product lines by simply referring to all products named in the Amended Complaint as "Zicam Products." In reality, as explained in Zicam's Motion to Dismiss, Zicam Nasal Spray (the product Plaintiff bought) and Zicam Nasal Swabs (together, the "Zicam Nasal Products") contain galphimia glauca, luffa operculata and sabadilla as the active ingredients but do not contain zinc. Motion to Dismiss Brief at 4. By contrast, the Zicam Zinc Products contain zinc acetate and zinc gluconate as the active ingredients and are ingested orally. *Id.* Plaintiff did not purchase the Zicam Zinc Products and has no standing to sue on those products. *Id.* at 14-15.

Lacking any factual basis to allege the Zicam Nasal Products do not work as advertised, the Opposition falsely asserts that "Defendants rely upon the same studies of zinc to support the

---

[1] All capitalized terms not defined in this reply memorandum of law have the same meaning given to them in Zicam's Motion to Dismiss Brief (Dkt. 37).

1

Clinically Proven Claim on their zinc-free Zicam® Nasal Swabs and Nasal Spray products." Opp. at 3. Zicam does *not* rely on any zinc study for its Zicam Nasal Products and Plaintiff cannot cite to any Zicam statements supporting this untrue assertion.[2] In any event, as Plaintiff does not contest, none of the studies referenced by Plaintiff in the Opposition or the Amended Complaint involve the plant-based, non-zinc formulation. Thus, Plaintiff is asserting a lack of substantiation claim with zero plausible allegations that Zicam's advertising is false.

With respect to the Zicam Zinc Products—i.e., the oral products that contain zinc—the Motion to Dismiss demonstrates that Plaintiff has no standing to sue on those products because they are completely different products with completely different active ingredients from the non-zinc Zicam Nasal Spray that Plaintiff allegedly purchased. Motion to Dismiss Brief at 14-15. Moreover, just as with the non-zinc Zicam Nasal Spray, Plaintiff is asserting a lack of substantiation theory without any support even when it comes to the Zicam Zinc Products. Plaintiff argues that she "does not seek to rely upon a lack of substation [sic] claim" because "Defendants have already 'put up' the very studies they seek to rely upon to support their Claim," referring to the zinc studies linked on Zicam's Zinc FAQ webpage. Opp. at 1-2. But just because Zicam's website references a handful of studies (among decades of scientific research) regarding the health benefits of zinc generally does not mean it relies exclusively on these studies for its Zicam Zinc Products, let alone its *non-zinc* Zicam Nasal Products. Nor can Plaintiff assume (without any factual basis) that Zicam has no additional basis beyond these studies for its "clinically proven" claims. *See id.* Plaintiff's conclusory leap is exactly what makes this a lack of substantiation case and not a false advertising or breach of warranty case.[3]

In sum, Plaintiff *does not allege Zicam Nasal Products, or their non-zinc ingredients, are ineffective*. And her allegations regarding the materially different Zicam Zinc Products she never

---

[2] Indeed, as explained in Zicam's Motion to Dismiss, Zicam does have clinical proof that its plant-based, non-zinc Zicam Nasal Products shorten colds. Motion to Dismiss Brief at 1.

[3] Indeed, Zicam has proprietary clinical proof that its specific zinc formulation works as advertised. Motion to Dismiss Brief at 1.

2

1    bought and cannot sue on do not support a plausible inference that they fail to shorten colds
2    either. Thus, Zicam is likely to prevail on its motion to dismiss the case in its entirety.

Further, Plaintiff points to no prejudice she will suffer from a stay. She asserts without elaborating that a stay would "delay her ability to proceed with this action" (Opp. at 4-5), but that is true for any discovery stay. Moreover, Plaintiff waited two years to bring this action, then proposed a lengthy discovery schedule, and then asked for an extension to her time to respond to the Motion to Dismiss. In contrast, the prejudice to Zicam if discovery moves forward is significant, especially in a case where Plaintiff comes to Court with no testing of the Zicam products, instead thinly arguing that the use of zinc to shorten colds is "inconclusive" (Opp. at 7) and improperly attempting to shift the burden to Zicam to substantiate when there is no plausible allegation of falsehood. Indeed, Plaintiff does not dispute that if discovery proceeds, she will serve voluminous discovery demands on a myriad of products that will cause Zicam to incur substantial costs. California chose to prevent such "undue harassment" of advertisers by barring lack-of-substantiation claims. The Court should therefore grant the requested stay.

## II.     ARGUMENT

### A.     The Motion to Dismiss Is Case Dispositive

Plaintiff argues that "even in the unlikely event that Defendants' Motion to Dismiss is granted for lack of substantiation, that would impact only a portion of Plaintiff's claims under the UCL and CLRA." Opp. at 3. Plaintiff cites no support for that argument, and she ignores authority squarely rejecting it. Motion to Dismiss Brief at 13, citing *Tubbs v. AdvoCare Int'l, LP*, 2017 WL 4022397, at *5, n.1 (C.D. Cal. Sept. 12, 2017) (explaining that the Ninth Circuit's holding in *Kwan v. Sanmedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) applies "to *all* causes of actions premised on a lack-of-substantiation theory, not only those claims raised in *Kwan*," and dismissing CLRA, FAL, UCL and breach of warranty claims) (emphasis in original). Plus, Zicam articulated an independent basis to dismiss Plaintiff's breach of warranty claims. Motion to Dismiss Brief at 13. The motion seeks to dismiss Plaintiff's entire case, and it should be granted in full.

3

**B. Plaintiff's Lack-of-Substantiation Claim Fails as a Matter of Law**

When a company advertises that it has "clinical proof" or "clinical testing" that its products work, a private litigant cannot challenge that statement on the theory that no such testing exists—in other words, that the statement is *unsubstantiated*. *See* Motion to Dismiss Brief at 8-9. But a plaintiff can challenge such advertising statements as being *false* by plausibly alleging: (1) the specific studies the defendant relies on do not support the defendant's advertising statements about them (which requires the plaintiff to have seen the studies, of course), (2) it is scientifically impossible for the products to perform in the manner the defendant advertises, or (3) that plaintiff possesses an independent factual basis to allege the products are ineffective, such as a clinical study of the products, that therefore supports the inference that defendant lacks clinical studies showing the products are effective. *See id.* at 12 (citing cases). The Amended Complaint does none of those things.

Plaintiff's lawsuit challenges Zicam's advertising statement that its products are "clinically proven" to shorten colds when taken at the first sign of a cold. AC ¶¶ 2-4. Zicam's "clinically proven" statement means that clinical studies demonstrated that Zicam's products shorten the duration of the common cold. And it is true: Zicam has proprietary studies showing its products work as advertised, for both the Zicam Nasal Spray that Plaintiff bought (with plant-based active ingredients and no zinc) and the Zicam Zinc Products (which contain zinc).

With respect to the only Zicam product that the Amended Complaint alleges that Plaintiff bought, Plaintiff does not allege Zicam Nasal Spray failed to shorten her cold. Nevertheless, she is suing Zicam because she insists that all Zicam's cold remedy products "have never been clinically tested to determine whether they impact the duration of the common cold" and "there is no scientific support" for Zicam to advertise that its products are "clinically proven" to shorten colds. AC ¶¶ 5, 11, 40, 42, 55, 58, 61, 64, 66, 92, 93, 116, 126, 127, 133-35. Why does Plaintiff believe that? According to the Amended Complaint, "Defendants fail to disclose any valid clinical testing citations or results on the Product packaging, their websites, and in marketing and advertising," so "[t]he only logical conclusion" one can reach "is that the Zicam Products are not

4

clinically proven to shorten colds." AC ¶ 36. That inference is not only absurd but cannot form the basis of a legal challenge under California law; not surprisingly, the Opposition does not even try to defend it, ignoring it entirely.

Nor does Plaintiff dispute she has never seen Zicam's proprietary clinical studies, which the Amended Complaint concedes she has not. *Id.* ¶ 40. As a result, Plaintiff cannot and does not plausibly allege that Zicam's non-public studies are illusory or failed to demonstrate its products shorten colds. Thus, Plaintiff cannot state a claim that Zicam's advertising is *false* on the theory that Zicam made up its studies or misrepresented their findings.

In her Opposition, Plaintiff takes another leap to try to patch together a claim. The Amended Complaint does not allege that the Zicam Nasal Products, or their ingredients, have been found ineffective in any study. Confronted with this problem, Plaintiff now asserts that Zicam's sole basis to advertise that Zicam Nasal Spray is "clinically proven" to shorten colds is studies involving zinc acetate and zinc gluconate and that Zicam admitted as much. Opp. at 2. That assertion is wrong on multiple levels. Zicam does *not* rely on zinc studies to support the efficacy of Zicam Nasal Spray, of course, because Zicam Nasal Spray contains no zinc. It contains galphimia glauca, luffa operculata and sabadilla. AC ¶ 25. There is no plausible allegation in the Amended Complaint that Zicam relies on zinc studies when it comes to Zicam Nasal Spray. Plaintiff utters those words, to be sure (*id.* ¶ 11), but she offers no facts to support that conclusion.

Nor did Zicam ever "admit" (Opp. at 2) that it relies on zinc studies when it comes to Zicam Nasal Spray. That completely misrepresents Zicam's argument, which was that zinc studies are *irrelevant* to Zicam Nasal Spray, which is a materially different product from the Zicam Zinc Products. Motion to Dismiss Brief at 6 ("None of the Zinc Studies tested products containing [galphimia glauca, luffa operculata or sabadilla], never mind Zicam Nasal Spray itself. For that simple reason, the Zinc Studies referenced in the Amended Complaint are irrelevant."). Plaintiff cannot state a claim by fabricating new "facts" in an opposition brief, and certainly not by misrepresenting Zicam's arguments.

5

CHURCH & DWIGHT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO STAY DISCOVERY PENDING RESOLUTION OF ITS MOTION TO DISMISS
CASE NO. 4:21-cv-02596-HSG

Notwithstanding Plaintiff's false assertion about Zicam's substantiation for the Zicam Nasal Products, Plaintiff herself does not contend that the zinc studies she relies on have anything to do with the plant-based, non-zinc Zicam Nasal Products. Nor does Plaintiff allege in her Amended Complaint that zinc studies have any bearing on whether products containing no zinc, and instead containing galphimia glauca, luffa operculata or sabadilla, shorten colds. Accordingly, Plaintiff has no basis to allege that the "clinically proven" claim is false about the Zicam Nasal Products. This is an improper lack of substantiation claim.

The remaining part of Plaintiff's case is her claims relating to Zicam Zinc Products. But she never purchased any of those products, which are materially different from the Zicam Nasal Spray she did purchase, so she lacks standing to sue regarding the Zicam Zinc Products. Motion to Dismiss Brief at 14-15.

Putting aside Plaintiff's lack of standing as to the Zicam Zinc Products, she still fails to state a plausible claim that Zicam's "clinically proven" statement is false about those products, as opposed to unsubstantiated. To state a falsity claim, Plaintiff must point to some factual basis supporting the inference that Zicam's clinical studies could not have found that Zicam's products shorten colds. But the Amended Complaint does not cite a single study involving any Zicam product at issue, let alone a study finding any Zicam product formulation to be ineffective.[4] Thus, as court after court has found under similar circumstances where plaintiffs tried to rely on studies of other products, the non-Zicam zinc studies lend no support to Plaintiff's conclusory "falsity" allegation. *See id.* at 12 (citing cases).

Each of the cases that Plaintiff cites to argue otherwise is distinguishable. In *Hughes v. Ester C Co.*, the scientific study the plaintiff relied on to allege the defendant's advertising was false was performed *on the defendant's product*. 930 F. Supp. 2d 439, 460-61 (E.D.N.Y., 2013).

---

[4] Instead, the Amended Complaint relies on five studies performed on non-Zicam zinc-containing products. Not only do those studies as a whole support that zinc helps shorten colds, they also cannot save Plaintiff's claims from dismissal because, as Plaintiff concedes, they did not test the Zicam zinc formulation, let alone the non-zinc plant-based formulation for the Zicam Nasal Products.

In fact, *Hughes* distinguished another case "in which plaintiff's proffered studies did not involve the disputed product" because "plaintiffs' study [in *Hughes*] involves Ester–C [the product at issue]." *Id.* at 461. Thus, *Hughes* itself articulates why its facts are distinguishable from this case and in fact supports Zicam's position that Plaintiff needs to provide testing for the product at issue. Other courts have distinguished *Hughes* on this basis too when dismissing lack-of-substantiation claims. *E.g.*, *Kwan v. SanMedica Int'l, LLC*, 2014 WL 5494681, at *3 (N.D. Cal., Oct. 30, 2014); *Engel v. Novex Biotech LLC*, 2015 WL 846777, at *6 (N.D. Cal., Feb. 25, 2015).

The next case Plaintiff cites is *Mier v. CVS Pharmacy, Inc.*, 2021 WL 1559367 (C.D. Cal., Mar. 22, 2021). There, the plaintiff challenged an advertising statement that a hand sanitizer kills 99.99% of all germs. *Id.* at *1. To support the allegation that statement is false, plaintiff cited studies showing that "certain types of bacteria are becoming alcohol-resistant and that alcohol-based hand sanitizers do not kill many non-enveloped viruses, bacterial spores, and protozoan cysts." *Id.* at *4. In other words, the plaintiff provided a factual basis to infer that it was *scientifically impossible* for the defendant's product, an alcohol-based hand sanitizer, to kill 99.99% of all germs. Here, the Amended Complaint contains no such factual allegations about the types of ingredients in Zicam's products. Plaintiff does not contend it is scientifically impossible for the plant-based active ingredients in Zicam Nasal Spray to shorten colds, nor that all zinc-containing products cannot shorten colds (indeed, her cited zinc studies say otherwise). Thus, *Mier* is not on point.

The last case Plaintiff cites to argue this is not a lack-of-substantiation case is *Liou v. Organifi, LLC*, 491 F. Supp. 3d 740 (S.D. Cal., Oct. 1, 2020). In *Liou*, the defendant advertised on its website that its Green Juice's efficacy had been established by "numerous" clinical trials sponsored by a prestigious medical university and posted on clinicaltrials.gov. *Id.* at 750. The plaintiff alleged she searched and found no such studies on clinicaltrials.gov. *Id.* That is a different situation from this case because Zicam's advertising does not represent that it relies specifically on certain publicly-available clinical studies for its "clinically proven" statement. In fact, when Zicam makes its "clinically proven" statement, there is no reference to any particular

7

study (because Zicam's proprietary studies are confidential). *See* AC ¶ 28. Thus, unlike the plaintiff in *Liou*, Plaintiff's allegation here that her counsel searched a database of public studies and found none involving the Zicam products she is suing over (*id.* ¶ 40) gets her nowhere.

Plaintiff's attempt to distinguish some (but nowhere near all) of the decisions Zicam cited to support its lack-of-substantiation argument is unpersuasive. In *Racies v. Quincy Bioscience LLC*, the plaintiff challenged defendant's representation that Prevagen is "clinically tested" because, according to the plaintiff, there were "no competent and reliable studies testing the Product." 2015 WL 2398268, at *3 (N.D. Cal. May 19, 2015). Just as it should here, the Court held that the plaintiff's challenge amounted to a lack-of-substantiation allegation that failed as a matter of law. *Id*.

Plaintiff emphasizes that (as Zicam already noted in its Motion to Dismiss Brief at 9, n.7) the Court allowed Racies' lawsuit to proceed with respect to the defendant's representations about Prevagen's alleged memory benefits. Opp. at 8. The Court allowed those claims to proceed because the plaintiff plausibly alleged that apoaequorin ("AQ"), "the only purported active ingredient in [the Product], is completely destroyed by the digestive system" and thus cannot provide any benefit to people taking Prevagen. *Racies*, 2015 WL 2398268, at *4. But that amounts to an allegation that it is *scientifically impossible* for the defendant to support its advertising statements, which the plaintiff backed up with plausible allegations about body chemistry. There are no such allegations here about Zicam Nasal Spray, any other Zicam product, or their ingredients.[5]

---

[5] The summary judgment decision in *Racies* that the Opposition references (at 8) does not support Plaintiff's position either. That decision did not address the plaintiff's lack-of-substantiation challenge to the "clinically tested" representation, but the body chemistry allegations that survived the motion to dismiss. *See Racies v. Quincy Bioscience, LLC*, 2016 WL 5746307, at *4 (N.D. Cal., Sept. 30, 2016). The defendant argued, "Plaintiff has failed to present evidence of specific tests that show Prevagen and AQ cannot affect brain functioning" and could not survive summary judgment on a lack-of-substantiation theory. *Id.* The Court rejected that argument because "Dr. Bazinet, [the plaintiff's expert,] opines that Prevagen's labeling claims are false because its only active ingredient, AQ, is a dietary protein. With a few noted exceptions, dietary proteins are always digested into amino acids and possibly some small peptides, neither of which can affect brain functioning for a variety of reasons." *Id.* As

8

CHURCH & DWIGHT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO STAY DISCOVERY PENDING RESOLUTION OF ITS MOTION TO DISMISS
CASE NO. 4:21-cv-02596-HSG

Plaintiff also tries, but fails, to distinguish this Court's decision in *Aloudi v. Intramedic Rsch. Grp., LLC*, 2015 WL 4148381 (N.D. Cal., Jul. 9, 2015). *Aloudi* is analogous to this case: The plaintiff challenged a "clinically proven" representation on the theory that "there are no clinical trials or scientific studies showing that the Product or its ingredients are safe and effective for weight loss or that the Product or its ingredients cause a significant reduction in body weight and BMI." *Id.* at *1. The Court correctly recognized that as an improper lack-of-substantiation allegation. *Id.* at *3-4. Aloudi further alleged that the FDA and other authorities have stated that caffeine, like in the defendant's green tea product, is not an effective treatment for weight control. But those "general statements" were "not tied to the Product or Defendant's specific representations about the Product," so they did not support a claim that the defendants' representations were false. *Id.* at *5.

Here, the "evidence" that Plaintiff relies on in her Amended Complaint is even more attenuated than in *Aloudi*. Plaintiff relies exclusively on zinc studies (on *non*-Zicam products) even though Zicam Nasal Spray contains plant-based active ingredients, not zinc. Thus, the outcome of Zicam's Motion to Dismiss should be the same as the outcome of *Aloudi* and other lack-of-substantiation cases that Zicam cited: dismissal of the entire case with prejudice.

### C. No Reasonable Consumer Will Understand "Clinically Proven" to Mean "Scientific Consensus"

In a single paragraph, the Amended Complaint alleges that Zicam's "clinically proven" statement implies "that the state of the science regarding the Zicam Products and their ingredients have reached a level of scientific consensus such that Defendants' claims that the Products are 'clinically proven to shorten colds' is an established truth and statement of fact." AC ¶ 32. Now that her improper lack-of-substantiation theory is in the crosshairs of Zicam's

---

explained above, Plaintiff does not make similar allegations about Zicam or its ingredients that, if accepted as true at the pleading stage, would mean it is scientifically impossible for Zicam to shorten colds.

Motion to Dismiss, Plaintiff makes this passing "scientific consensus" allegation the focus of her Opposition. Opp. at 5.

To start, the Amended Complaint does not provide any plausible basis to support Plaintiff's conclusory allegation that the phrase "clinically proven" reasonably implies in the context of Zicam's labeling that there is a "scientific consensus" the products shorten colds. *See id.* Indeed, Plaintiff does not even allege she herself took away that farfetched message. *See id.* ¶¶ 41-45. As such, the Court should determine as a matter of law that no reasonable consumer would understand "clinically proven" on Zicam labels to mean there is "scientific consensus" about the efficacy of Zicam products. Indeed, courts regularly dismiss putative false advertising class actions upon finding that reasonable consumers will not be misled in the manner the plaintiff alleges. *See, e.g.*, *Ebner v. Fresh*, 838 F.3d 958 (9th Cir. 2016); *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019); *Moore v. Trader Joe's Co.*, ___ F.4th ___, 2021 WL 2965445 (9th Cir., Jul. 15, 2021).

"[T]he reasonable consumer standard requires a probability that a *significant portion* of the general consuming public or of targeted consumers, *acting reasonably* in the circumstances, could be misled." *Ebner*, 838 F.3d at 965 (citation omitted) (emphasis added). "This requires more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* (citation omitted). For example, in *Becerra*, the Ninth Circuit agreed with the District Court that, when viewed in context, "no reasonable consumer would assume that Diet Dr. Pepper's use of the term 'diet' promises weight loss or management." 945 F.3d at 1229. As the unanimous panel explained, "[j]ust because some consumers may unreasonably interpret the term differently does not render the use of 'diet' in a soda's brand name false or deceptive." *Id.* at 1230.

Similarly unreasonable is Plaintiff's allegation here that some consumers (although apparently not her) interpret Zicam's "clinically proven" statements to mean "scientific consensus." "Clinically proven" means a clinical study has shown that a product is effective for its advertised purpose. Plaintiff has identified no words or images on the Zicam labels that

10

CHURCH & DWIGHT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO STAY DISCOVERY PENDING RESOLUTION OF ITS MOTION TO DISMISS
CASE NO. 4:21-cv-02596-HSG

remotely suggest Zicam is using the phrase to mean there is a scientific consensus that its products shorten colds. The labels do not state or imply that message. Thus, the Court should reject Plaintiff's attempt to revive her improper lack-of-substantiation case by distorting the reasonable meaning of Zicam's labels.

Even if Zicam's advertising reasonably conveyed a "scientific consensus" message—and it does not—Plaintiff fails to state a claim that such message is false. As noted, Plaintiff has submitted no testing or evidence concerning Zicam Nasal Spray (or, for that matter, for any other Zicam products). With no scientific evidence that refutes the challenged product's efficacy, Plaintiff has no plausible basis to allege there is no scientific consensus that it shortens colds.

### D. No Discovery Is Necessary to Decide the Motion to Dismiss

Plaintiff does not dispute that no discovery is needed to decide the Motion to Dismiss. She therefore concedes the second stay factor weighs in Zicam's favor.

### E. Plaintiff Identifies No Prejudice She Would Suffer from a Stay, and Does Not Dispute Zicam Would Be Prejudiced Absent a Stay

Plaintiff essentially ignores Zicam's arguments about the prejudice the parties will and will not suffer depending on whether a stay is granted. Her only response is that she "would be prejudiced by a stay, as it would unnecessarily delay her ability to proceed with this action." Opp. at 4-5. That purely conclusory statement rings especially hollow given how Plaintiff has litigated this case to date: She alleges she bought Zicam "in or around 2019" (AC ¶ 41) and then waited about *two years to sue*, she proposed a discovery schedule lasting over a year just for class certification-related issues with more discovery to come on the merits afterward (Dkt. 35 at 10-11), and then she prolonged the briefing on Zicam's Motion to Dismiss by weeks with her extension request (which, as a matter of professional courtesy, Zicam did not oppose) (Dkt. 40 at 2). That is not a plaintiff who will be prejudiced by a stay. Nor could there be any rush to trial here because Plaintiff lacks standing to seek injunctive relief. Motion to Dismiss Brief at 15. Thus, Plaintiff cannot credibly claim that a stay pending the Motion to Dismiss would harm her ability to litigate this case.

11

CHURCH & DWIGHT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO STAY DISCOVERY PENDING RESOLUTION OF ITS MOTION TO DISMISS
CASE NO. 4:21-cv-02596-HSG

In contrast, Zicam articulated real harm it would suffer absent a stay. Litigating false advertising cases—even baseless ones like this—is expensive and burdensome. *See* Motion to Stay Brief (Dkt. 38) at 3. That is especially so when the plaintiff seeks expansive discovery, as here. *Id.* at 6. Plaintiff does not deny either of these points in the Opposition. Thus, the Court should exercise its discretion to grant the requested stay.

## III. CONCLUSION

For the reasons set forth above, Zicam respectfully asks the Court to stay discovery pending resolution of Zicam's Motion to Dismiss.

DATED: August 2, 2021

Respectfully Submitted,

**PROSKAUER ROSE LLP**

By:    */s/    Baldassare Vinti*

Bart H. Williams (SBN 134009)
Jennifer L. Jones (SBN 284624)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
bwilliams@proskauer.com
jljones@proskauer.com

Baldassare Vinti*
Jeffrey H. Warshafsky*
11 Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
bvinti@proskauer.com
jwarshafsky@proskauer.com

*Admitted Pro Hac Vice

*Attorneys for Church & Dwight Co., Inc.*

12

CHURCH & DWIGHT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO STAY DISCOVERY PENDING RESOLUTION OF ITS MOTION TO DISMISS
CASE NO. 4:21-cv-02596-HSG