Bart H. Williams (SBN 134009)
Jennifer L. Jones (SBN 284624)
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone:  (310) 557-2900
Facsimile:  (310) 557-2193
bwilliams@proskauer.com
jljones@proskauer.com

Baldassare Vinti*
Jeffrey H. Warshafsky*
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
bvinti@proskauer.com
jwarshafsky@proskauer.com

*Admitted *Pro Hac Vice*

Attorneys for
Church & Dwight Co., Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| VENUS YAMASAKI, individually and on behalf of all other similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>ZICAM, LLC and MATRIXX INITIATIVES, INC.,<br><br>        Defendants. | Case No. 4:21-cv-02596-HSG<br><br>**CHURCH & DWIGHT CO., INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS**<br><br>Date:  October 7, 2021<br>Time:  2:00 PM<br>Courtroom: 2, 4th Floor<br>Before:  Hon. Haywood S. Gilliam, Jr. |

## <u>Table of Contents</u>

<u>Page</u>

I.     INTRODUCTION ..................................................................................... 1

II.    ARGUMENT ............................................................................................ 3

    A.    Plaintiff Misrepresents the Facts and Law to Try to Reimagine Her Claims as Something More Than Lack-Of-Substantiation Claims .............................. 3

        1.    Homeopathic Products Can Be "Clinically Proven" ........................... 4

        2.    "Clinically Proven" Statements Do Not Require a Peer-Reviewed Publication, Let Alone a "Scientific Consensus," to Be Substantiated.................................................................................... 7

        3.    The Zinc Studies Plaintiff Cites Do Not Support an Inference That Zicam's Advertising Is False ...................................................... 10

    B.    Plaintiff's Argument That She Should Be Able to Sue on Products She Did Not Buy Just Because They Also Contain a "Clinically Proven" Claim Is Contravened by Her Own Cited Cases ...................................................... 12

    C.    Plaintiff's Inconsistent Arguments About Whether She Would Buy the Product Again Do Not Create Standing to Sue for Injunctive Relief............ 13

    D.    The Court Should Dismiss the Entire Amended Complaint with Prejudice.. 14

III.    CONCLUSION........................................................................................ 15

1

## Table of Authorities

**Page(s)**

CASES

*Aloudi v. Intramedic Rsch. Grp., LLC*,
  2015 WL 4148381 (N.D. Cal. July 9, 2015) ..................................................................3, 5

*Aloudi v. Intramedic Rsch. Grp., LLC*,
  729 Fed. App'x 514 (9th Cir. 2017) ...........................................................................3, 11

*Anderson v. Jamba Juice Co.*,
  888 F. Supp. 2d 1000 (N.D. Cal. 2012) ...........................................................................13

*Corbett v. Pharmacare U.S., Inc.*,
  2021 WL 2473950 (S.D. Cal. June 17, 2021) ..............................................................8, 13

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .....................................................................................13, 14

*Engel v. Novex Biotech LLC*,
  2015 WL 846777 (N.D. Cal. Feb 25, 2015) .....................................................................10

*Engel v. Novex Biotech LLC*,
  689 F. App'x 510 (9th Cir. 2017) ........................................................................................8

*Figy v. Frito-Lay N. Am.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014) ..............................................................................13

*FTC v. Braswell*,
  2005 WL 4227194 (C.D. Cal. Sept. 27, 2005) ...................................................................9

*FTC v. Cardiff*,
  2020 WL 6540509 (C.D. Cal. Oct. 9, 2020) ...................................................................5, 9

*Hughes v. Ester C Co.*,
  930 F. Supp. 2d 439 (E.D.N.Y., 2013) .............................................................................11

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017) .....................................................................................3-4, 9

*Liou v. Organifi*,
  491 F. Supp. 3d 740 (S.D. Cal. 2020) ................................................................................8

*Lytle v. Nutramax Laboratories, Inc.*,
  2019 WL 8060070 (C.D. Cal. Sept. 26, 2019) ..............................................................8, 12

*Lytle v. Nutramax Laboratories, Inc.*,
  2019 WL 8060077 (C.D. Cal. Dec. 6, 2019) .................................................................7, 11

*Marshall v. PH Beauty Labs, Inc.*,
    2015 WL 3407906 (C.D. Cal. May 27, 2015) ....................................................8

*Mier v. CVS Pharmacy, Inc.*,
    2021 WL 1559367 (C.D. Cal. Mar. 22, 2021) ..................................................11

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012) .............................................................13

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
    107 Cal. App. 4th 1336 (2003) ..........................................................................9

*Nathan v. Vitamin Shoppe, Inc.*,
    2019 WL 1200554 (S.D. Cal. Mar. 12, 2019) ..................................................12

*Padilla v. Whitewave Foods Co.*,
    2019 WL 4640399 (C.D. Cal. July 26, 2019)...................................................12

*Racies v. Quincy Bioscience LLC*,
    2015 WL 2398268 (N.D. Cal. May 19, 2015) ................................................4, 8

*Rahman v. Mott's LLP*,
    2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) .................................................14

*Sims v. Campbell Soup Co*,
    2018 WL 7568640 (C.D. Cal. Sept. 24, 2018) .................................................13

*Tubbs v. AdvoCare Int'l, LP*,
    2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) .......................................10-11, 15

*Webb v. Trader Joe's Co.*,
    999 F.3d 1196 (9th Cir. 2021) ..........................................................................15

**OTHER AUTHORITIES**

*Federal Trade Commission Enforcement Policy Statement on Marketing claims for Over-the-Counter Homeopathic Drugs*, Federal Trade Commission (Dec. 13, 2016),
    https://www.ftc.gov/policy/federal-register-notices/federal-trade-commission-enforcement-policy-statement-marketing ..........................................................5

*Homeopathic Products*, U.S. Food and Drug Administration (Feb. 11, 2020),
    https://www.fda.gov/drugs/information-drug-class/homeopathic-products ............................6

*Homeopathy: What You Need To Know*, National Center for Complementary and Integrative Health (April 2021), https://www.nccih.nih.gov/health/homeopathy ...................6

*Our Products*, Zicam, https://www.zicam.com/our-products/cold-shortening/ (last visited Aug. 31, 2021) ..................................................................................6

iii

*Zinc, Fact Sheet for Health Professionals*, National Institute of Health,
    https://ods.od.nih.gov/factsheets/Zinc-HealthProfessional/
    (last visited Aug. 31, 2021)......................................................................................................6

## I.     INTRODUCTION[1]

Plaintiff's opposition to the motion to dismiss ("Opposition" or "Opp.") contains no credible argument that her complaint consists of anything more than "non-substantiation" claims. Plaintiff argues that this case is not in the "realm of a lack of substantiation defense" because the "clinically proven" statements were made on homeopathic products.  Opp. at 13.  But the law does not recognize any "homeopathic exception" to the rule prohibiting plaintiffs from demanding companies prove up their substantiation in litigation, especially where, as this Court already previewed, Plaintiff only *speculates* that Zicam *lacks substantiation* that its products are effective, repeatedly alleging "that there is no scientific support for the claim that the Zicam Products are 'clinically proven to shorten colds.'"  Order Granting Motion to Stay Discovery (Dkt. 51) at 3, citing AC ¶¶ 55, 58, 61, 64, 66, 126–127, 133.  Notably, Plaintiff does not identify any studies in which Zicam's products were evaluated, let alone any studies of the only product she bought, the non-zinc Zicam Nasal Spray.[2]  Plaintiff also admits she has never seen Zicam's proprietary clinical studies that prove its products shorten colds.  Nor does Plaintiff allege any facts tending to show it is scientifically impossible for Zicam's products to shorten colds.  And Plaintiff does not allege that when she used Zicam Nasal Spray "in or around 2019" it failed to shorten her cold.  Plaintiff's Opposition does nothing to salvage her non-substantiation claims from dismissal.

To try to get around the obvious fact that she is pursuing only "non-substantiation" claims and that she has no studies (and therefore no plausible factual basis) to support her claim that Zicam's clinically proven claim is false, Plaintiff has invented new theories of "falsity" in every pleading and brief filed with this Court, continually shifting the reason she claims Zicam's products are not clinically proven to shorten colds.  At first, Plaintiff alleged that Zicam relied "solely" on the "Science Study" and argued that was a flawed study (Compl. ¶ 32), but then

---

[1]      All capitalized terms not defined in this reply memorandum of law have the same meaning given to them in Zicam's Motion to Dismiss Moving Brief (Dkt. 37, "Mot.").

[2]      While Plaintiff lacks standing to sue on the zinc-based Zicam Zinc Products she never purchased, she also identifies no studies of them or any other product with the same zinc acetate/zinc gluconate formulation.

retracted that erroneous allegation after Zicam told her counsel that the "clinically proven" statements are supported by Zicam's proprietary studies, not by the Science Study.  Next, in her Amended Complaint, Plaintiff alleged that the "only logical conclusion" from the fact that Zicam's packaging does not identify Zicam's proprietary studies is that the products are not clinically proven to shorten colds.  AC ¶ 36.  After Zicam debunked that common-sense-defying inference (Mot. at 10), Plaintiff abandoned it too.

Now Plaintiff has two new theories.  The first one, the focus of Plaintiff's Opposition, is that because the Zicam products are homeopathic, "by their very definition" they cannot be clinically proven to shorten colds.  Opp. at 2-5.  Plaintiff is wrong.  The very FTC statement Plaintiff relies on to argue homeopathic products can never be clinically proven refutes her position because the FTC actually says that health and efficacy claims for homeopathic products can and should be demonstrated through "clinical testing."

Plaintiff's second theory (which actually contradicts her first theory) is that clinically proven advertising requires public, peer-reviewed studies and a scientific consensus.  Plaintiff argues that Zicam's studies are not "legitimate" because they are not published in a peer-reviewed journal and have not attained a "scientific consensus."  Opp. at 11-12.  Plaintiff is again wrong.  Plaintiff cites no support for this made up standard because there is none.  Indeed, the FTC recently challenged "clinically proven" statements about certain third party homeopathic products and did *not* argue publication or peer review was needed to support such statements, so long as the underlying clinical proof is reliable.

Without any scientific study of the Zicam products-in-suit, let alone any testing that has found Zicam's products to be ineffective, Plaintiff cannot plausibly allege Zicam's "clinically proven" statements are false.  All she can do is speculate, based on constantly changing farfetched theories, that Zicam's advertising is unsubstantiated.  Private litigants cannot sue on this basis, so the Court should dismiss this case with prejudice.

## II.   ARGUMENT

### A.   Plaintiff Misrepresents the Facts and Law to Try to Reimagine Her Claims as Something More Than Lack-Of-Substantiation Claims

The Zicam Nasal Products (which are applied nasally and contain plant-based actives and no zinc) and the Zicam Zinc Products (which are orally ingested and contain zinc) are labeled as being "clinically proven" to shorten colds when taken at the first sign of a cold.  AC ¶¶ 2-4.  Although Plaintiff argues—with zero support—that a "clinically proven" claim requires "scientific consensus" (Opp. at 11-12), a statement that a product is "clinically proven" to provide a health benefit merely requires that at least one clinical study proves the product delivers the advertised benefit.  *See Aloudi v. Intramedic Rsch. Grp., LLC*, 729 Fed. App'x 514, 516 (9th Cir. 2017) (affirming this Court's dismissal of a complaint challenging a "clinically proven" representation because the plaintiff failed to plausible allege there was "no study that could support Intramedic's claims").  Further, Plaintiff cannot and does not dispute that to state a claim she must plausibly allege falsity, not merely lack-of-substantiation.  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096-97 (9th Cir. 2017).[3]

Putting all of that together, to state a claim that Zicam's "clinically proven" statements are *false*, not merely *unsubstantiated*, Plaintiff must plead facts that, if accepted as true, support a plausible inference that Zicam has no clinical studies proving its products shorten colds.  The Ninth Circuit has articulated what type of factual allegations can achieve that: "Plaintiff could allege that one or more of the authorities alluded to actually studied or tested the formula [the product] contains and found that it does not [deliver the promised result], or that Plaintiff herself did not experience such [a result] when using the product, or that a study exists somewhere

---

[3]   Plaintiff incorrectly contends Zicam misquoted *Kwan* as involving a "clinically proven" statement.  Opp. at 13.  In fact, Zicam stated that, "[i]n *Kwan*, the plaintiff challenged the defendant's representations that its product, SeroVital, was 'clinically tested' to boost human growth hormone."  Mot. at 8.  That said, Kwan did argue the defendant's advertising *implied* a "clinically proven" message, which Kwan alleged was not based on credible scientific proof, and the Ninth Circuit held that was "simply an allegation that defendant's marketing claims lack scientific substantiation" and thus failed to state a claim.  *Kwan*, 854 F.3d at 1096-97.  As noted, this Court held the same in *Aloudi v. Intramedic Rsch. Grp., LLC*, which involved an express "clinically proven" statement.  2015 WL 4148381, at *3-4 (N.D. Cal. July 9, 2015).

3

1    demonstrating that [the result] is categorically impossible to achieve." *Kwan*, 854 F.3d at 1091.[4]

2        The Amended Complaint contains no such factual allegations capable of supporting an

3    inference that Zicam's advertising is false.  Plaintiff merely speculates, over and over, that

4    Zicam's products "have never been clinically tested to determine whether they impact the

5    duration of the common cold" and "there is no scientific support" for Zicam to advertise that its

6    products are "clinically proven" to shorten colds.  AC ¶¶ 5, 11, 40, 42, 55, 58, 61, 64, 66, 92, 93,

7    116, 126, 127, 133-35 (making these or near-identical allegations 28 times in total).  This

8    conclusory conjecture hinges on Plaintiff's unfounded assumption that because Zicam does not

9    identify its proprietary studies on its products' packaging, the "only logical conclusion" is that no

10   such studies exist.  *Id.* ¶ 36.  Nowhere does the Opposition try to justify this illogical inference.

11   Instead, having no factual basis to dispute the existence, reliability or outcome of Zicam's

12   studies, Plaintiff invents wild theories why studies she has never seen could not possibly have

13   proven Zicam's products shorten colds.  As discussed below, each of Plaintiff's arguments fails.

14           **1.    *Homeopathic Products Can Be "Clinically Proven"***

15       Plaintiff's latest unsupported theory, asserted for the first time in her Opposition, is that

16   "[b]y their very definition, homeopathic products cannot be clinically proven" (Opp. at 2), so "it

17   is not possible for the Zicam Products to be 'Clinically Proven'" (*id.* at 5).  This made-up

18   tautology is flawed on multiple levels.  To start, Plaintiff has recognized that clinical studies *can*

19   prove the efficacy of the challenged Zicam products.  The Amended Complaint cites studies

20   stating that certain zinc formulations have been proven to shorten colds.  *See* Mot. at 6, n.4.

21       Ignoring these contradictory allegations, Plaintiff argues "the FTC, NCCIH, and FDA

22   have all stated, in no uncertain terms, that homeopathic products are not supported by accepted

---

[4]    This Court's decision in *Racies v. Quincy Bioscience LLC*, 2015 WL 2398268 (N.D. Cal. May 19, 2015) also delineated between lack-of-substantiation and falsity allegations.  There, the plaintiff alleged the defendant's "clinically tested" representation about Prevagen was false because there were "no competent and reliable studies testing the Product," which the Court dismissed as an improper lack-of-substantiation claim.  *Id.* at *3.  In contrast, the plaintiff plausibly alleged that *other* representations about Prevagen's memory benefits were *false* by explaining its active ingredient is destroyed by the digestive system and thus could not possibly affect memory.  *Id.* at *4.

1    medical evidence."  Opp. at 5.  Putting aside Plaintiff's gross misrepresentations discussed

2    below, this Court has found that such "general statements" that are "not tied to the Product or

3    Defendant's specific representations about the Product" are "not sufficient to state a claim that

4    such representations are false."  *Aloudi*, 2015 WL 4148381, at *5; *see also* Dkt. 51 at 3 (noting

5    that Plaintiff has not identified any studies in which Zicam products were evaluated).

6         As for the purported government statements themselves, Plaintiff patently misrepresents

7    them in her Opposition.  The cited FTC statement (Opp. at 4) recognizes homeopathic products

8    *can* be clinically proven: "[T]here is no basis under the FTC Act to treat OTC homeopathic drugs

9    differently than other health products," so health and efficacy claims about homeopathic drugs

10   should be supported by "competent and reliable scientific evidence, defined as tests, analyses,

11   research, or *studies* that have been conducted and evaluated in an objective manner by qualified

12   persons and [that] are generally accepted in the profession to yield accurate and reliable results."

13   https://www.ftc.gov/policy/federal-register-notices/federal-trade-commission-enforcement-

14   policy-statement-marketing (emphasis added).  The FTC statement also says that, "[i]n general,

15   for health benefit claims, particularly claims that a product can treat or prevent a disease or its

16   symptoms, the substantiation required has been well-designed human *clinical testing*."  *Id.*

17   (emphasis added).  Thus, according to the FTC, properly performed clinical studies *can* prove a

18   homeopathic product's clinical efficacy.

19        Confirming this, when the FTC recently challenged homeopathic dissolvable film strips

20   advertised as "clinically proven" to help stop smoking and "clinically proven to help suppress

21   appetite between meals," among other health benefits, the FTC did *not* argue that the products

22   could not possibly be clinically proven because they were homeopathic.  *FTC v. Cardiff*, 2020

23   WL 6540509, at *4-5 (C.D. Cal. Oct. 9, 2020).  Instead, the FTC argued the defendant needed to

24   support its advertising with "randomized, controlled trial evidence" that compared the product to

25   a placebo.  *Id.* at *6.  In other words, the FTC acknowledged the defendant's homeopathic

26   products *could* be clinically proven, but argued the defendant's studies fell short.

27        Next, Plaintiff contends the FDA has "affirmed that [homeopathic products] cannot and

28   should not be labeled as scientifically proven, in order to avoid consumer confusion."  Opp. at 5.

1  That misrepresents the cited FDA statement, which says homeopathic products "have not been

2  *reviewed by the FDA* for safety and effectiveness." *See* https://www.fda.gov/drugs/information-

3  drug-class/homeopathic-products (emphasis added).   The FDA does not say such products

4  "cannot and should not" be labeled as scientifically proven, and says nothing about consumer

5  confusion.  The FDA just says it has not reviewed homeopathic products.

6  　　　　Contrary to Plaintiff's argument, the NCCIH website cited by Plaintiff states the FTC

7  holds "efficacy and safety claims for over-the-counter homeopathic drugs to the same standard

8  as those for other products making similar claims"—i.e., well-designed human clinical testing.

9  https://www.nccih.nih.gov/health/homeopathy.   Further, the NCCIH is part of the NIH, and the

10  NIH website Plaintiff cited in her Amended Complaint (at n.6) says that "overall zinc appears to

11  be  beneficial"  for  treating  colds.      https://ods.od.nih.gov/factsheets/Zinc-HealthProfessional/.

12  Indeed, according to the same NIH website, "a randomized, double-blind, placebo-controlled

13  clinical trial" found that "[c]ompared with placebo, [certain] zinc lozenges significantly reduced

14  the duration of cold symptoms (cough, nasal discharge, and muscle aches)."  *Id.*

15  　　　　In sum, the government has not "stated, in no uncertain terms, that homeopathic products

16  are not supported by accepted medical evidence" or even anything close to that.  On the contrary,

17  the FTC and NIH have said health claims for homeopathic products, including zinc cold-

18  shortening products in particular, can be proven with reliably-performed clinical studies.  Thus,

19  the word "homeopathic" on the Zicam product labels does not give rise to a plausible inference

20  that Zicam could not have reliable clinical studies proving its products shorten colds.[5]

21

22

23  _____

24  [5]     Plaintiff contends Zicam "admit[s]" that its "clinically proven" statements are false
   because the Zicam website has a footnote stating that certain advertising statements are "based

25  on traditional homeopathic practice, not accepted medical evidence."  Opp. at 3.  Plaintiff
   attempts to mislead the Court by stating, *repeatedly*, that this footnote applies to the "clinically

26  proven" statements and is a "hidden" admission those statements are false.  *Id.* at 3, 5, 7, 14.
   That is wrong.  This footnote is *never* linked to Zicam's "clinically proven" statements.  *See*

27  https://www.zicam.com/our-products/cold-shortening/.  Rather, the footnote is linked (via its "†"
   symbol) only to advertising statements about the traditional benefits of elderberry that are not at

28  issue here.  *Id.*

1

### 2.     *"Clinically Proven" Statements Do Not Require a Peer-Reviewed Publication, Let Alone a "Scientific Consensus," to Be Substantiated*

2          Plaintiff next argues that, notwithstanding Zicam's proprietary clinical studies proving its

3   products shorten colds, it is false for Zicam to advertise its products as "clinically proven" unless

4   Zicam publishes its studies in a peer-reviewed journal and the studies achieve a "scientific

5   consensus."   Opp. at 4, 11-12.   It is unclear if Plaintiff contends *all* "clinically proven"

6   statements should be held to this standard or just Zicam's, so we address both possibilities.

7          To start, Plaintiff's conclusory assertion that Zicam products' labels imply there is a

8   "scientific consensus" that they shorten colds (AC ¶ 32) is implausible.   As Zicam explained and

9   Plaintiff ignored, (1) the labels say "clinically proven," which means one or more clinical studies

10  have proven the products shorten colds, (2) Plaintiff does not allege she personally understood

11  the Zicam Nasal Spray label as meaning there is a "scientific consensus" that the product

12  shortens colds (*id.* ¶¶ 41-42), and (3) the Amended Complaint does not articulate why, in the

13  context of Zicam's labels containing no words or images implying Zicam's studies are peer-

14  reviewed or published, a reasonable consumer would think "clinically proven" means Zicam's

15  studies are peer-reviewed or published, let alone have achieved the level of "scientific

16  consensus."   *See* Dkt. 48 at 9-11.   Thus, under Ninth Circuit precedent (*see id.* at 10-11), the

17  Court should reject Plaintiff's conclusory and unreasonable interpretation of Zicam's labels.

18         If Plaintiff is arguing *all* "clinically proven" advertising must be backed by a study that

19  has achieved "scientific consensus," including publication in a peer-reviewed journal, she is

20  mistaken.   Her only support for this made up standard is two journal articles indicating peer

21  review is needed for scientific consensus.   Opp. at 12.   But neither says scientific consensus (or

22  even peer review) is needed to show a product is "clinically proven" to provide a health benefit.

23         While Plaintiff cites two class action decisions that discuss publication (Opp. at 13-15),

24  those decisions did so only because the defendants *advertised* that *published studies* supported

25  their products' efficacy.   In *Lytle v. Nutramax Laboratories, Inc.*, the defendant advertised its

26  canine dietary supplements were "shown to be safe, effective, and absorbable in peer-reviewed,

27  published, controlled U.S. veterinary studies."   2019 WL 8060077, at *5 (C.D. Cal., Dec. 6,

28  2019).   The plaintiff plausibly alleged the defendant mischaracterized its clinical evidence

7

1   because no such studies had been published.  *Id.*; *see also Lytle v. Nutramax Laboratories, Inc.*,

2   2019 WL 8060070, at *4 (C.D. Cal. Sept. 26, 2019) (prior order making this finding).  Similarly,

3   in *Liou v. Organifi*, the defendant "specifically state[d] that the Green Juice's efficacy had been

4   established by numerous clinical trials published on a prominent government website and

5   supported by a prestigious medical university," but no such studies existed in the public record.

6   491 F. Supp. 3d 740, 746-47 (S.D. Cal. 2020).  By contrast, Plaintiff does not allege Zicam ever

7   advertised its studies are published in a peer-reviewed journal (or anywhere for that matter), so

8   Plaintiff does not and cannot allege Zicam mischaracterized its studies.

9        When defendants have not advertised their studies as being "published," courts have

10  rejected Plaintiff's "lack of publication" theory.  This Court did so in *Racies*, in which the

11  plaintiff challenged a "clinically tested" statement on the ground that "there is absolutely no

12  evidence in the public record" that any clinical studies were ever performed on the defendant's

13  product, finding it was an improper lack-of-substantiation claim.  2015 WL 2398268, at *3.

14  Another court did so in a recent case in which this Plaintiff's counsel tried the identical

15  argument.  *Corbett v. Pharmacare U.S., Inc.*, 2021 WL 2473950, at *7 (S.D. Cal. June 17, 2021)

16  (rejecting as an improper lack-of-substantiation claim the plaintiff's allegation that defendant's

17  "scientifically tested" statement was false because "there are no published studies that test the

18  Products").  In short, as the Ninth Circuit has made clear, allegations "that a comprehensive

19  search could not produce any publication" to support the defendant's claims "do not support a

20  finding that the advertising claims are actually false, only that they lack substantiation."  *Engel v.*

21  *Novex Biotech LLC*, 689 F. App'x 510, 510-11 (9th Cir. 2017).

22       Likewise, courts have not demanded the defendant's studies be peer reviewed if the

23  defendant does not advertise they are.  For example, in *Marshall v. PH Beauty Labs, Inc.*, the

24  defendant advertised its wrinkle cream as "clinically proven" to visibly repair skin in two weeks,

25  and the plaintiff alleged that was false because "the study upon which Defendant relies is not

26  peer reviewed" and had other supposed flaws.  2015 WL 3407906, at *3-4 (C.D. Cal. May 27,

27  2015).  The court held that "[b]ecause Plaintiff here does not allege that Defendant's

28

8

representations have been proven false," plaintiff's claims "related to the adequacy of the clinical testing are substantiation claims, and must be dismissed."  *Id.* at *4.

In addition, the FTC has not objected to companies marketing homeopathic products as "clinically proven" without publication, peer-review, or a scientific consensus.  *See Cardiff*, 2020 WL 6540509, at *6 (FTC arguing "clinically proven" statements for homeopathic products should be supported by randomized, controlled trials comparing the product to a placebo, but *not* insisting on publication, peer-review, or scientific consensus).  *See also FTC v. Braswell*, 2005 WL 4227194, at *10 (C.D. Cal. Sept. 27, 2005) (same for dietary supplements).

Plaintiff professes concern that if the Court does not impose her made up standard, homeopathic product sellers could advertise their products are clinically proven "based on a self-funded, proprietary clinical study that they will never have to disclose to the public or subject to scrutiny by the scientific community."  Opp. at 7.  That is wrong.  While consumers cannot sue advertisers on a lack-of-substantiation theory, the FTC, the California Attorney General, and other prosecuting authorities can and do.  *E.g.*, *Cardiff*, 2020 WL 6540509, at *14-15.  Thus, while companies making "clinically proven" statements need not publish their confidential studies, which is part of why California prohibits lack-of-substantiation claims by consumers in the first place, *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1345 (2003), non-public studies can be procured and challenged by the authorities charged with protecting consumers from deceptive advertising.[6]

Plaintiff also mistakenly contends Zicam is urging a standard under which "*any* clinical study," no matter how poorly-conducted, would be enough to advertise the tested product is "clinically proven," and then attacks that strawman.  Opp. at 7-8 (emphasis by Plaintiff).  Zicam never said that.  An *unreliable* clinical trial obviously does not *prove* a product's efficacy, but as discussed, a study does not have to be published or peer reviewed to be reliable and prove an outcome.  Lack of publication may just reflect the study sponsor's desire not to share certain

---

[6]   Consumers can also obtain companies' non-public studies through discovery if they have a plausible basis to allege falsity in the first instance (*see Kwan*, 854 F.3d at 1092), but not if they merely allege lack-of-substantiation, as here.

1   information with competitors.  Thus, Plaintiff's allegations that Zicam's studies are not published

2   in a peer-reviewed journal and have not attained a "scientific consensus" do not support an

3   inference that Zicam's studies are unreliable or fail to prove that Zicam's products shorten colds.

    ### 3.   The Zinc Studies Plaintiff Cites Do Not Support an Inference That Zicam's Advertising Is False

6       To obscure that Plaintiff is suing on a lack-of-substantiation theory, the Amended

7   Complaint cites studies of various non-Zicam zinc products.  But the only Zicam product

8   Plaintiff has bought is Zicam Nasal Spray, which contains plant-based active ingredients and no

9   zinc.  Zinc studies are irrelevant to whether Zicam Nasal Spray is effective.  *See* Opp. at 2

10  (conceding that zinc studies "in no way relate to Defendants' zinc-free products").  Critically, the

11  Amended Complaint cites *no studies involving Zicam Nasal Spray* or any other product with the

12  same non-zinc plant-based active ingredients in Zicam Nasal Spray.

13      Plaintiff's only argument when it comes to Zicam Nasal Spray is that "Defendants rely

14  upon the same studies of zinc to support the Clinically Proven Claim on their zinc-free Zicam®

15  Nasal Swabs and Nasal Spray products."  *Id.* at 6, n.5.  That is false.  The Opposition cites the

16  Amended Complaint for that assertion (*id.*), which merely alleges that Zicam sold zinc-based

17  nasal products over a decade ago and has long since reformulated its nasal products to have non-

18  zinc plant-based ingredients (AC ¶ 11).  That does not support a plausible inference that Zicam

19  never clinically tested its reformulated nasal products and proved they shorten colds.

20      There is no need for the Court to reach the zinc studies cited in the Amended Complaint

21  because Plaintiff lacks standing to sue on the Zicam Zinc Products.  Even so, the cited zinc

22  studies do not support an inference that Zicam's advertising is false as to those irrelevant

23  products.  First, as the Court recognized in granting Zicam's Motion to Stay, "Plaintiff does not

24  identify any studies in which Defendant's products were evaluated."  Dkt. 51 at 3.  That some

25  zinc studies allegedly did not find a cold-shortening benefit when testing *other non-Zicam*

26  products containing different types and dosages of zinc from the Zicam Zinc Products does not

27  plausibly suggest that Zicam could not possess clinical proof that its differently formulated

28  Zicam Zinc Products shorten colds.  *See, e.g.*, *Tubbs v. AdvoCare Int'l, LP*, 2017 WL 4022397,

10

at *6 (C.D. Cal. Sept. 12, 2017) ("Courts have previously found a reliance on studies that did not involve the products at issue to be insufficient in similar cases"); *Engel v. Novex Biotech, LLC*, 2015 WL 846777, at *4 (N.D. Cal. Feb 25, 2015) ("Plaintiff still does not allege that a study exists showing that these benefits are categorically impossible to achieve, or that one or more authorities studied or tested [the challenged product]'s formula and found that it does not produce the results Defendants claim").  Second, the studies Plaintiff cites in the Amended Complaint say that certain zinc formulations *have been clinically proven to shorten colds* (Mot. at 6, n. 4), which directly refutes Plaintiff's speculation that no reliably-performed clinical study could have proven the Zicam Zinc Products shorten colds.

The cases on which Plaintiff relies to argue that the non-Zicam zinc studies she cites are sufficient to state a claim are inapplicable.  In *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 460-61 (E.D.N.Y., 2013), the study the plaintiff relied on to allege the defendant's advertising was false was performed *on the defendant's product itself.*  None of the studies Plaintiff relies on here tested a Zicam product, let alone the non-zinc Zicam Nasal Spray.  In *Mier v. CVS Pharmacy, Inc.*, 2021 WL 1559367, at *4 (C.D. Cal. Mar. 22, 2021), the plaintiff plausibly alleged it was scientifically *impossible* for the defendant's product to perform as advertised.  In contrast, Plaintiff does not allege it is scientifically impossible for Zicam's products to shorten colds and, as noted, Plaintiff cites studies that found certain zinc formulations do shorten colds.  *See* Mot. at 6, n.4.  In *Lytle*, the defendant's website included a "complete list" of its studies and none supported the defendant's advertising describing the studies.  2019 WL 8060077, at *5.  Zicam's website includes no such list and its advertising does not describe its studies.[7]

Plaintiff also cites *Nathan v. Vitamin Shoppe, Inc.*, in which the plaintiff cited studies proving that the product's active ingredients do not lower energy intake, do not increase energy

---

[7]    While Plaintiff observes that the zinc FAQ page on Zicam's website refers to a zinc study and NIH article about zinc (Opp. at 6), the page does not say those sources are Zicam's basis for its "clinically proven" statements for the Zicam Zinc Products, let alone Zicam's "complete" body of support.  *See Aloudi*, 729 F. App'x at 516 (plaintiff argued a study did not prove Intramedic's product's efficacy, but failed to plausibly allege that study "had to be the sole basis for Intramedic's assertion of clinical proof").

output, and do not affect energy processing, and thus could not deliver any weight management benefits.  2019 WL 1200554, at *3 (S.D. Cal. Mar. 12, 2019).  Unlike in *Nathan*, the zinc studies Plaintiff cites in the Amended Complaint reflect that some zinc formulations and dosages shorten colds, and that some zinc formulations and dosages may not.  That is different from proving no zinc product can possibly deliver a cold-shortening benefit.  And most importantly, the plaintiff in *Nathan* pointed to studies involving the active ingredient of the product he bought, while Plaintiff points to no studies on the non-zinc plant-based active ingredients in Zicam Nasal Spray, never mind studies showing those ingredients do not shorten colds.

**B.      Plaintiff's Argument That She Should Be Able to Sue on Products She Did Not Buy Just Because They Also Contain a "Clinically Proven" Claim Is Contravened by Her Own Cited Cases**

The only Zicam cold shortening product Plaintiff has bought is Zicam Nasal Spray.  AC ¶ 41.  Unlike the Zicam Zinc Products, Zicam Nasal Spray contains plant-based active ingredients, has no zinc, and is applied nasally.  *Id.* ¶ 25.  Thus, Plaintiff alleges, and Zicam agrees, the two product categories in suit have materially different mechanisms of action such that studies of zinc-containing products are *irrelevant* to whether the Zicam Nasal Products shorten colds.  *Id.* ¶ 11; Opp. at 2 (conceding that zinc studies "in no way relate to Defendants' zinc-free products").

Because Zicam Nasal Spray is materially different from the Zicam Zinc Products in this key respect, Plaintiff lacks standing to sue on behalf of Zicam Zinc Product buyers.  *E.g.*, *Lytle*, 2019 WL 8060070, at *3 ("Because Plaintiffs' arguments hinge on the alleged ineffectiveness of the glucosamine/chondroitin combination, products that do not contain that combination are not substantially similar to Cosequin MaxStrength Plus MSM for the purposes of this action. Plaintiffs therefore lack standing to assert claims regarding those products."); *Padilla v. Whitewave Foods Co.*, 2019 WL 4640399, at *10 (C.D. Cal. July 26, 2019) (dismissing claims for non-purchased products although they had similar packaging to the product plaintiff bought because plaintiff failed to adequately allege "similarities as to the composition of the Products").

Plaintiff contends she has standing for the Zicam Zinc Products anyway because all of the challenged Zicam products feature the same "clinically proven" label statement.  Opp. at 21. This is absurd on its face because whether certain products provide a "clinically proven" benefit

12

necessarily depends on their ingredients.  Indeed, Plaintiff's own cases say that the "prevailing view in the Ninth Circuit" is that standing for non-purchased products requires that "the products **and** alleged misrepresentations are substantially similar," and that courts consider whether the challenged products are "comprised of largely the same ingredients." *Id.* at 20-21 (quoting *Sims v. Campbell Soup Co.*, 2018 WL 7568640, at *3 (C.D. Cal. Sept. 24, 2018) (emphasis added) and *Figy v. Frito-Lay N. Am.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014), respectively).

To argue otherwise, Plaintiff purports to quote *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) as stating, "[t]here must be substantial similarity between the products at issue **or** the alleged misrepresentations must be similar across product lines."  Opp. at 20 (emphasis by Plaintiff).  That is wrong; *Miller* does not say that anywhere.  *Miller* says, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products **and** alleged misrepresentations are substantially similar."  912 F. Supp. 2d at 869 (emphasis added).  Under that standard, the plaintiff in *Miller* lacked standing. *Id.* at 870.  While *Miller* noted in dicta that some courts have focused solely on the similarity of the challenged advertising statements "[w]here product composition is less important" (*id.* at 869), that is not the case here because both Plaintiff and Zicam agree the veracity of the challenged "clinically proven" statements turns on whether the products' active ingredients provide a cold-shortening benefit.  *See* AC ¶ 11.  Thus, Plaintiff lacks standing to sue for the materially different Zicam Zinc Products.[8]

### C.  Plaintiff's Inconsistent Arguments About Whether She Would Buy the Product Again Do Not Create Standing to Sue for Injunctive Relief

The parties agree the test for injunctive relief standing under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) is whether the plaintiff plausibly alleges she would like to

---

[8]    Plaintiff's other cases are also easily distinguishable as involving either (1) products with the same active ingredients (e.g., *Corbett*, 2021 WL 2473950, at *10, in which all the products in suit contained the active ingredient elderberry); or (2) products where the truthfulness of the challenged advertising did not turn on whether an active ingredient is effective (e.g., *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012), in which the plaintiff challenged the defendant's "all natural" labeling, not whether its products offer a health benefit).

1    buy the defendant's product again but has no way to know in the future whether the labeling

2    statement she challenged is true. Mot. at 15; Opp. at 24. For example, in *Davidson*, the plaintiff

3    had no way to know at the point-of-sale whether Kimberly-Clark had altered its "flushable"

4    wipes to be septic-safe, so she had standing to seek injunctive relief. *Davidson*, 889 F.3d at 970-

5    71. On the other hand, a consumer who alleged he was once deceived by a Mott's apple juice

6    label was no longer at risk of future injury "now that he understands the 'No Sugar Added'

7    label" does not mean the product contains no sugar at all, so he lacked standing to seek

8    injunctive relief. *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018).

9        Plaintiff argues she has injunctive relief standing because she "alleges that she 'has an

10   intention to purchase the Zicam Products in the future if they are truthfully labeled and not

11   misleading and are actually clinically proven to shorten colds.'" Opp. at 24 (quoting AC ¶¶ 45,

12   77). But Plaintiff contends *no* homeopathic product can be clinically proven to shorten colds. If

13   that is what Plaintiff thinks, how could Zicam's "clinically proven" statements on homeopathic

14   product labels deceive her? Plaintiff cannot have this both ways. That Plaintiff insists she has

15   injunctive relief standing highlights that she has *no clue* whether Zicam's advertising is false,

16   and she is merely speculating regarding Zicam's substantiation, thus failing to state a claim.

17       **D.    The Court Should Dismiss the Entire Amended Complaint with Prejudice**

18       The primary basis of Zicam's Motion to Dismiss—that Plaintiff is improperly suing on a

19   lack-of-substantiation theory—applies to *all* of the Amended Complaint's causes of action. In a

20   footnote, and without explaining why, Plaintiff asserts that her breach of warranty claims are not

21   subject to dismissal based on that part of Zicam's motion. Opp. at 18, n. 10. That is wrong. Just

22   like Plaintiff's CLRA, FAL and UCL claims, her breach of express and implied warranty claims

23   are *expressly* premised on a lack-of-substantiation theory and should be dismissed on that basis.[9]

24   _____

25   [9]      AC ¶ 126 ("Defendants breach their warranty and/or contract obligations by placing the
         Zicam Products into the stream of commerce and selling them to consumers, *when the Products
26       have never been clinically tested* to determine whether they impact the duration of the common
         cold, and *there is no scientific support* for the claim that the Zicam Products are 'clinically
27       proven to shorten colds.'") (emphasis added); *id.* ¶ 134 ("Because *the Zicam Products have
         never been clinically teste*d to determine whether or not they impact the duration of the common
28       cold, the Products are mislabeled, not in accord with Defendants' representations and, therefore,

                                                    14

Consumers cannot circumvent California's lack-of-substantiation bar by labeling their claims as breach of warranty.  In *Tubbs*, citing decisions that had applied *Kwan* to all types of claims, the court rejected that argument and dismissed the entire case, including the breach of warranty claims.   2017 WL 4022397, at *5, n.1.  Plaintiff does not address *Tubbs* or try to explain why the result should not be the same here.  The Court should dismiss this *entire* case.[10]

Plaintiff asks for leave to amend (Opp. at 25, n.11), but identifies *no more allegations* she could make on her third try.  As Zicam explained (Mot. at 16), *Webb v. Trader Joe's Co.*, 999 F.3d 1196 (9th Cir. 2021) illustrates why dismissal with prejudice is warranted.  In *Webb*, the plaintiff offered her own testing of the defendant's product to allege falsity (unlike here), but conceded she lacked knowledge of Trader Joe's test protocol and so could not allege her testing used the same method and tended to refute Trader Joe's testing.  *Id.* at 1204.  Thus, "it [was] obvious that Webb ha[d] no basis other than gross speculation to claim that Trader Joe's is misrepresenting the data provided by its testing protocol," and the Ninth Circuit affirmed dismissal *with prejudice.  Id.*  Similarly, because Plaintiff concedes she knows nothing about the method or results of Zicam's proprietary studies and cannot cite any testing of Zicam's products (AC ¶ 40), she cannot possibly allege any facts to support a plausible inference that Zicam's proprietary studies are unreliable or fail to prove that Zicam products shorten colds.  At bottom, all Plaintiff can do is *speculate* that Zicam's studies she has never seen are not "legitimate" because they are not published (Opp. at 3), but that does not cut it under Ninth Circuit law.

## III.   CONCLUSION

For the reasons set forth above, and in Zicam's Moving Brief, the Court should dismiss with prejudice all counts of the Amended Complaint.

---

not useful for their ordinary purpose of shortening the duration of the common cold.") (emphasis added); Opp. at 18 ("Plaintiff's breach of warranty claim . . . is founded upon the simple fact that the Zicam Products are not 'Clinically Proven'").

[10]   In the two cases Plaintiff cites where breach of warranty claims survived dismissal (Opp. at 18-19), the plaintiffs had plausibly alleged the defendant's advertising was false, not merely unsubstantiated.  Plaintiff cites no case in which the court allowed breach of warranty claims to proceed after finding the plaintiff's theory amounted to lack-of-substantiation.  And Plaintiff's breach of warranty claims fail on other independent grounds as well.  *See* Mot. at 13-14.

DATED:  September 1, 2021

Respectfully Submitted,

**PROSKAUER ROSE LLP**

By:     _/s/     Baldassare Vinti_

Bart H. Williams (SBN 134009)
Jennifer L. Jones (SBN 284624)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone:  (310) 557-2900
Facsimile:  (310) 557-2193
bwilliams@proskauer.com
jljones@proskauer.com

Baldassare Vinti*
Jeffrey H. Warshafsky*
11 Times Square
New York, NY 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
bvinti@proskauer.com
jwarshafsky@proskauer.com

*Admitted Pro Hac Vice

_Attorneys for Church & Dwight Co., Inc._