UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENUS YAMASAKI,<br><br>Plaintiff,<br><br>v.<br><br>ZICAM LLC, et al.,<br><br>Defendants. | Case No. 21-cv-02596-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 37 |

Pending before the Court is the motion to dismiss filed by Church & Dwight Co., Inc., the successor to Defendants Zicam LLC and Matrixx Initiatives, Inc. ("Defendant"). *See* Dkt. No. 37. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion.

## I.  BACKGROUND

Plaintiff Venus Yamasaki filed this putative class action on April 9, 2021, against Defendant, alleging that it engaged in fraudulent, unfair, deceptive and misleading advertising relating to several of its Zicam cold remedy products. *See* Dkt. No. 1. Plaintiff then filed an amended complaint on June 10, 2021. *See* Dkt. No. 30 ("FAC"). Plaintiff alleges that each of the challenged products is advertised and marketed as "clinically proven to shorten colds." *Id.* at ¶¶ 2–13. Plaintiff further alleges that she purchased Zicam Nasal Spray from a California drugstore in approximately 2019 based on these representations. *See id.* at ¶ 41. However, Plaintiff contends that the products have *not* been clinically proven to impact the duration of the common cold, and that there is not adequate scientific evidence to support this assertion. *Id.* at ¶¶ 9–10, 41. Plaintiff also asserts that recent studies indicate that over-the-counter cold remedies

that contain zinc do not actually shorten the duration of the common cold. *See id.* at ¶ 37. Based on these allegations, Plaintiff brings causes of action for violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"), as well as for breach of warranty. *Id.* at ¶¶ 80–136. Plaintiff also seeks to represent a class of California consumers for seven different Zicam products.[1] *Id.* at ¶¶ 67–68. Defendant now moves to dismiss the complaint. Dkt. No. 37.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the

---

[1] These products include Zicam Original RapidMelts, Zicam ULTRA RapidMelts, Zicam Elderberry Citrus RapidMelts, Zicam Nasal Swabs, Zicam Nasal Spray, Zicam Wild Cherry Lozenges, and Zicam Oral Mist. *See* FAC at ¶ 67.

2

complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**III. DISCUSSION**

**A. Article III Standing**

As a threshold matter, Defendant contends that Plaintiff lacks Article III standing to sue regarding products that she did not purchase and also lacks standing to seek injunctive relief. *See* Dkt. No. 37 at 14–17. To have standing under Article III of the Constitution, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

**i. Unpurchased Products**

It is undisputed that Plaintiff purchased Zicam Nasal Spray. *See* FAC at ¶¶ 41–43. Defendant asserts, however, that Plaintiff lacks standing to challenge the six other products that she did not purchase because she suffered no economic injury as to those products. Dkt. No. 37 at 14–15. In opposition, Plaintiff urges that she still has standing because the unpurchased Zicam products are substantially similar to the product that she did purchase. *See* Dkt. No. 50 at 20–22.

In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012). Although some district courts reserve the issue until a motion for class certification, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* at 869; *see also Papasan v. Dometic Corp.*, 2017 WL 4865602, at *8 (N.D. Cal 2017); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at

3

*12–13 (N.D. Cal. Oct. 2, 2013). If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012). However, "[w]here the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased." *Miller*, 912 F. Supp. 2d at 870.

Courts have found substantial similarity for purposes of standing where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer are the same; and (3) both the products and the legal claims and injury are similar. *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *4–8 (N.D. Cal. Mar. 13, 2014). The Court agrees with Judge Orrick of this district that "the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products." *Id.* at *8. "That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.*

Defendant contends that Plaintiff has not established substantial similarity because the products have distinct formulas. As the complaint recognizes, Zicam Nasal Spray and Zicam Nasal Swabs do not contain zinc. *See* FAC at ¶¶ 3, 11, 25, 38, 48. Rather, they contain the active ingredients galphimia glauca, luffa operculata, and sabadilla. *Id.* at ¶ 25. The other products at issue, however, all contain zinc in the form of zincum aceticum and zincum gluconicum. *See, e.g.*, *id.* at ¶¶ 3, 24. Plaintiff attempts to sidestep these distinctions by emphasizing that the misrepresentations at issue in this case are nevertheless "uniform" across the products because all of the product packaging contains representations that the products are "clinically proven to shorten colds." *See* Dkt. No. 50 at 21; FAC at ¶¶ 30, 35. However, Plaintiff's argument is divorced from the allegations in her complaint and the nature of her claims about *why* the "clinically proven" representation is false or misleading. Plaintiff's argument is premised on the efficacy of the products' active ingredients, which differ across the products. The complaint explains, for example, that "recent studies . . . have indicated that use of over-the-counter cold remedies containing *zinc*, including zinc acetate lozenges, do not shorten the duration of the

4

common cold." *Id.* at ¶ 37 (emphasis added).  Plaintiff further questions the scientific papers referenced on Defendant's website, arguing that they "had uncertain results regarding the ability of *zinc* to shorten the duration of the common cold." *Id.* at ¶ 39 (emphasis added).  Neither the complaint nor Plaintiff's opposition explains how such studies establish that Defendant's "clinically proven" representation is false or misleading as to products that do not contain zinc.[2]  The Court accordingly finds that Plaintiff has failed to establish that Zicam Nasal Spray and Zicam Nasal Swabs, which do not contain zinc, are substantially similar to the other unpurchased products that contain zinc.  *Accord Lytle v. Nutramax Lab'ys, Inc.*, No. EDCV19835JGBSPX, 2019 WL 8060070, at *3 (C.D. Cal. Sept. 26, 2019) (dismissing claims against unpurchased products that contained different key ingredients where claims were based on ineffectiveness of those key ingredients).  Thus, Plaintiff has not alleged sufficient facts to establish that she has standing to pursue claims regarding the products that contain zinc.  The Court **GRANTS** the motion to dismiss on this basis as to all products except Zicam Nasal Spray and Zicam Nasal Swabs.

### ii. Injunctive Relief

Defendant next argues that Plaintiff lacks standing to seek injunctive relief because she fails to allege a likelihood of future harm.  Dkt. No. 37 at 15–16.  More specifically, Defendant urges that "Plaintiff (incorrectly) presumes Zicam lacks clinical studies on its cold remedy products," and "she is now 'aware' of that supposed fact" so cannot be misled in the future.  *See id.* at 15.

To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted).  Therefore, "[o]nce a plaintiff has been wronged, [she] is entitled to injunctive relief only if [she] can show that [she] faces a 'real or immediate threat . . . that [she] will again be wronged in a similar way.'" *Mayfield v. United*

---

[2] To the extent Plaintiff suggests that these products are all the same because Defendant has not affirmatively made public the studies that support its "clinically proven" claims, that is a lack of substantiation argument, which is not cognizable under California law. *See* Section III.B below.

United States District Court
Northern District of California

*States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  In the context of false advertising cases, the Ninth Circuit has confirmed "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).  A plaintiff may establish the risk of future harm in two ways:  (1) "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"; or (2) "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved."  *Id.* at 969–70.

The plaintiff in *Davidson*, for example, sought injunctive relief after learning that the flushable wipes that she purchased were not in fact "suitable for disposal down a toilet."  *Id.* at 961–62 (emphasis omitted).  The plaintiff alleged that she would purchase flushable wipes from the defendant again if they were in fact flushable, but she "ha[d] no way of determining whether the representation 'flushable' [on the product label] is in fact true."  *Id.* at 970–71.  The Court found such allegations sufficient to establish the risk of future harm because if the plaintiff encountered the term "flushable" on the defendant's products in the future, she "could not rely on that representation with any confidence."  *Id.* at 971.

Here, Plaintiff contends in opposition that she has "sufficiently alleged that a real threat exists that she would be wronged again."  *See* Dkt. No. 23.  However, Plaintiff does not explain how she will be harmed again.  Rather, the complaint merely alleges that Plaintiff "has an intention to purchase the Zicam Products in the future if the Zicam Products are truthfully labeled and not misleading, and are actually clinically proven to shorten colds."  *See* FAC at ¶¶ 45, 77.  This generic statement, on its own, does not establish a risk of future harm.  As the Ninth Circuit explained in *Davidson*, Plaintiff may establish future harm by alleging that she will be unable to rely on the Zicam products' advertising or labeling in the future.  *Davidson*, 889 F.3d at 969–70.  And as a result, Plaintiff may either refrain from purchasing Zicam products in the future or may

6

1  purchase Zicam products *incorrectly* assuming that they have been improved and are clinically

2  proven to shorten colds. *Id.* The complaint does not contain such allegations. By contrast, buying

3  an accurately labeled product in the future, without more, would not result in any harm. Though

4  Plaintiff may be able to address this deficiency in an amended complaint, at this stage the Court

5  finds that Plaintiff has not alleged that she faces an imminent or actual threat of future harm

6  caused by Defendant's false advertising. The Court therefore **GRANTS** the motion on this basis.

### B. Claims

#### i. UCL, FAL, and CLRA Claims

Next Defendant argues that Plaintiff has failed to state a false advertising claim under the UCL, FAL, or CLRA because these claims are based on an improper lack of substantiation theory (*i.e.*, that Defendant lacks support for its claim that the products are "clinically proven"). *See* Dkt. No. 37 at 7–13. Throughout the complaint Plaintiff alleges that Defendant has "no adequate scientific evidence" for its "clinically proven" representations. *See, e.g.*, FAC at ¶¶ 5, 11–12, 55. Plaintiff further states that "[t]he only logical conclusion drawn from this complete absence of citations to adequate scientific support is that the Zicam Products are not clinically proven to shorten colds." *Id.* at ¶ 36.

It is well settled that private litigants may not bring false advertising claims based on an alleged lack of substantiation. *Nat'l Council Against Health Fraud Inc. v. King Bio Pharms. Inc.*, 107 Cal. App. 4th 1336, 1345 (2003) ("Private plaintiffs are not authorized to demand substantiation for advertising claims."). The California legislature "has expressly permitted prosecuting authorities, but not private plaintiffs, to require substantiation of advertising claims," and "[t]his limitation prevents undue harassment of advertisers and is the least burdensome method of obtaining substantiation for advertising claims." *Id.*; *see also Aloudi v. Intramedic Rsch. Grp., LLC*, 2015 WL 4148381 (N.D. Cal. July 9, 2015) (granting motion to dismiss UCL, FAL, and CLRA claims premised on lack of substantiation); *Bronson v. Johnson & Johnson*, No. 12-cv-04184-CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) (granting motion to dismiss claims under all three prongs of the UCL premised on lack of substantiation allegations because "[c]laims that rest on a lack of substantiation, instead of provable falsehoods, are not cognizable

7

under the California consumer protection laws"); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012) ("Consumer claims for a lack of substantiation are not cognizable under California law."); *Stanley v. Bayer Healthcare, Inc.*, No. 11-cv-00862-IEG, 2012 WL 1132920, at *6 (S.D. Cal. Apr. 3, 2012) ("Plaintiff's argument that she can assert a UCL 'unlawful conduct' claim based upon violation of [a federal statute that imposes substantiation standards for certain advertising claims] is precluded by the California Court of Appeal's opinion in *King Bio*.").

Throughout the complaint, Plaintiff contends that the "Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the claim that the Zicam Products are 'clinically proven to shorten colds.'" *See, e.g.*, FAC at ¶¶ 55, 58, 61, 64, 66, 126–127, 133. To the extent that Plaintiff intends to argue that the "clinically proven" statements are nevertheless false (and not just unsubstantiated), Plaintiff does not identify any studies in which Defendant's products were evaluated. Nor does she provide any studies about the efficacy of galphimia glauca, luffa operculata, or sabadilla—the active ingredients in Zicam Nasal Spray and Zicam Nasal Swabs. *See* FAC at ¶ 25. As Plaintiff's own authorities make clear, "[i]n the false advertising context, an advertising claim is false if it has actually been disproved, that is, if the plaintiff can point to evidence that directly conflicts with the claim." *Liou v. Organifi, LLC*, 491 F. Supp. 3d 740, 750 (S.D. Cal. 2020) (quotation omitted). In her opposition brief, Plaintiff nevertheless attempts to distance herself from the lack of substantiation theory in two ways.

*First*, Plaintiff contends that Defendant's products are "homeopathic," and as such cannot be "clinically proven." *See* Dkt. No. 50 at 2–3, 7–8, 13. As an initial matter, the Court notes that Plaintiff did not allege this theory in her complaint. Rather, the complaint simply asserts that the Zicam products are labeled "homeopathic," and says that homeopathic products are not approved by the FDA. *See* FAC at ¶¶ 26–27. But even as alleged, Defendant does not claim that its products are FDA approved. Plaintiff also points to language on the bottom of the "products" page of Defendant's website, indicating that certain statements about the products are "based upon traditional homeopathic practice, not accepted medical evidence," and are "[n]ot FDA evaluated."

8

*See id.* at ¶ 29, n.14.[3]  But this language only applies to the Elderberry Citrus RapidMelts, and the Court has found that Plaintiff does not have standing to pursue claims against this unpurchased product.  *See* Section III.A.i above.  In any event, the qualifying language only appears to apply to the representation that Elderberry Citrus RapidMelts "help[] relieve cold symptoms."[4]  Despite Plaintiff's urging, Dkt. No. 50 at 3–5, this does not appear to be a "veiled admission" that the products are not clinically proven to shorten colds.

*Second*, Plaintiff contends that Defendant's "clinically proven" representations are false because there is no "robust scientific support" that Defendant's products shorten colds.  *See* Dkt. No. 50 at 13–14.  Plaintiff asserts that for a claim to be "clinically proven," it must "be widely accepted in its applicable field and have overwhelming evidence supporting it, including a consensus in the scientific community agreeing with the representations."  *Id.* at 11.  In the complaint, Plaintiff alleges that the "clinically proven" language conveys to reasonable consumers "that the state of the science regarding the Zicam Products and their ingredients have reached a level of scientific consensus such that Defendants' claim that the Products are 'clinically proven to shorten colds' is an established truth and statement of fact."  *See* FAC at ¶ 32.  Plaintiff suggests that only studies that are "sufficiently large, randomized, controlled, double-blind" and publicly available can provide such scientific consensus.  Dkt. No. 50 at 11.  And Plaintiff points out that there are no publicly-available studies of Defendant's products.  *See* FAC at ¶¶ 12, 36, 40, 61.

The Court is not persuaded by Plaintiff's conclusory allegations that the words "clinically proven" imply to reasonable consumers that there is a scientific consensus about the efficacy of Defendant's products or that the studies on which Defendant relies have been published and peer-reviewed.  Plaintiff's cases in support of this theory are inapposite.  In *Lytle v. Nutramax Laboratories, Inc.*, for example, the court considered whether the studies at issue in that case were peer-reviewed, published, and controlled because defendant specifically advertised that its canine dietary supplements were "shown to be safe, effective, and absorbable in peer-reviewed,

---

[3] *See* https://www.zicam.com/our-products/cold-shortening/ (last visited October 22, 2021) (cited in complaint).
[4] *See* https://www.zicam.com/our-products/elderberry/rapid-melts-citrus-elderberry (last visited October 22, 2021) (cited in complaint).

published, controlled U.S. veterinary studies." 2019 WL 8060077, at *5 (C.D. Cal., Dec. 6, 2019). The Court accordingly **GRANTS** the motion to dismiss on this basis.

### ii. Breach of Warranty Claims

Lastly, Defendant challenges Plaintiff's breach of express warranty and breach of implied warranty of merchantability claims. *See* Dkt. No. 37 at 12–13. Plaintiff alleges that Defendant expressly and impliedly warranted that the Zicam products were "clinically proven to shorten colds." *See* FAC at ¶¶ 123, 133. She further alleges that Defendant breached this warranty and the products are not fit for their ordinary purpose because "the Products have never been clinically tested to determine whether they impact the duration of the common cold, and there is no scientific support for the claim that the Zicam Products are 'clinically proven to shorten colds.'" *See* FAC at ¶¶ 126, 134; *see also id.* at ¶¶ 134–35.

Defendant argues that Plaintiff's breach of warranty claims should be dismissed because she does not plausibly allege that the Zicam products fail to shorten colds as represented. As explained above, the Court agrees that Plaintiff has not sufficiently alleged that the "clinically proven" representations are false. She does not cite to any studies evaluating the efficacy of Zicam Nasal Spray, Zicam Nasal Swabs, or their active ingredients. Plaintiff may not evade this deficiency by arguing in conclusory fashion that the Zicam products are labeled as homeopathic and have not been tested with sufficient scientific rigor.

Plaintiff appears to suggest that it is enough, however, to allege that Defendant has not affirmatively substantiated its claims. *See, e.g.*, Dkt. No. 50 at 18–20. In the complaint, Plaintiff alleges that "Defendants fail to disclose any valid clinical testing citations or results on the Product packaging, their websites, and in marketing and advertising." *See* FAC at ¶ 36. She infers that "[t]he only logical conclusion drawn from this complete absence of citations to adequate scientific support is that the Zicam Products are not clinically proven to shorten colds." *Id.* In short, Plaintiff suggests that Defendant breached the warranties by failing to disclose the studies on which it relied. But Plaintiff offers no authority for her contention that Defendant has an affirmative duty to disclose such information or that the failure to do so is tantamount to a breach of warranty. The Court therefore **GRANTS** Defendant's motion on this basis.

10

## IV. CONCLUSION

Accordingly, the Court **GRANTS** the motion to dismiss. Any amended complaint must be filed within thirty (30) days of the date of this order. The Court cautions Plaintiff that should she wish to amend the complaint to add other named plaintiffs, she must do so within this timeframe. Given the deficiencies identified in the complaint, the Court finds that there is good cause to extend the current discovery stay until after the pleadings are finalized. *See* Dkt. No. 50.

The Court further **SETS** a telephonic case management conference on November 30, 2021, at 2:00 p.m. The parties should be prepared to discuss how to move this case forward efficiently. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. The joint case management statement is due November 9, 2021.

**IT IS SO ORDERED.**

Dated: 10/25/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

11